PAUL T. FRIEDMAN (SBN 98381)
pfriedman@mofo.com
TIFFANY CHEUNG (SBN 211497)
tcheung@mofo.com
MARGARET MAYO (SBN 259685)
mmayo@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Defendant*
NUANCE COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HOPWOOD and TERESA MARTINEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC., a Delaware corporation, and INFINITY CONTACT, INC., an Iowa corporation,<br><br>Defendants. | Case No. CV-13-2132-YGR<br><br>**REPLY IN SUPPORT OF DEFENDANT NUANCE COMMUNICATIONS, INC.'S PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date: February 4, 2014<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.     PLAINTIFF HOPWOOD DOES NOT DISPUTE HE FAILS TO STATE A CLAIM UNDER 47 U.S.C. § 227(C). ........................................................................ 2

II.    PLAINTIFF MARTINEZ FAILS TO SHOW THAT HER CLAIMS SHOULD NOT BE DISMISSED UNDER RULE 12(B)(1) AND/OR 12(B)(6). ................................................................................................................................ 3

    A.     The Standard for Article III Standing Is Not the Same as Standing Under the TCPA. .......................................................................................... 3

    B.     The "Called Party" of a Landline Call Is the Intended Recipient of the Call. ............................................................................................................. 5

CONCLUSION ............................................................................................................................. 7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cellco P'ship v. Dealers Warranty, LLC*,
   No. 09-1814 (FLW), 2010 U.S. Dist. LEXIS 106719 (D.N.J. Oct. 5, 2010) ....................... 3, 4

*D.G. v. Diversified Adjustment Serv., Inc.*,
   No. 11 C 2062, 2011 WL 5506078 (N.D. Ill. Oct. 18, 2011) ..................................................... 5

*Hamilton v. Spurling*,
   No. 3:11cv00102, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013) .......................................... 6

*j2 Global Commc'ns, Inc. v. Protus IP Solutions*,
   No. CV 06-00566 DDP (AJWx), 2010 U.S. Dist. LEXIS 145369 (C.D. Cal. Oct. 1,
   2010) ...................................................................................................................................... 3, 4

*Kopff v. World Research Group, LLC*,
   568 F. Supp. 2d 39 (D.D.C. 2008) ............................................................................................ 4

*Leyse v. Bank of Am.*,
   No. 09 Civ. 7654 (JGK), 2010 U.S. Dist. LEXIS 58461 (S.D.N.Y June 14, 2010) ..... 3, 4, 5, 6

*Page v. Regions Bank*,
   917 F. Supp. 2d 1214 (N.D. Ala. 2012) ..................................................................................... 6

*Swope v. Credit Mgmt., LP*,
   No. 4:12CV832 CDP, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) ........................................ 6

**STATUTES**

47 U.S.C.
   § 227(b) ............................................................................................................................. 1, 2, 6
   § 227(c) ............................................................................................................................ 1, 2, 6, 8

**OTHER AUTHORITIES**

47 C.F.R.
   § 64.1200(c) ............................................................................................................................ 2, 5
   § 64.1200(c)(2)(ii) ...................................................................................................................... 7
   § 64.1200(d)(3) ........................................................................................................................... 3
   § 64.1200(f)(5) ............................................................................................................................ 2
   § 64.1200(f)(5)(i) ........................................................................................................................ 2

Fed. R. Civ. P.
   Rule 12(b)(1) ..................................................................................................................... 2, 3, 5, 7
   Rule 12(b)(6) ............................................................................................................................ 2, 3, 7

**INTRODUCTION**

Defendant Nuance Communications, Inc. ("Nuance")'s partial motion to dismiss is narrowly tailored to address only two issues: (i) Plaintiff William Hopwood's failure to state a claim under 47 U.S.C. § 227(c) and (ii) Plaintiff Teresa Martinez's lack of standing to assert a claim under 47 U.S.C. § 227(c). In their opposition, Plaintiffs fail to show why these claims should not be dismissed. Indeed, Plaintiffs focus their opposition on arguing that Plaintiff Hopwood's claim under 47 U.S.C. § 227**(b)** is adequately pled, but that argument misses the mark because Hopwood's 227**(b)** claim is not at issue in this motion.

Plaintiff Hopwood does not dispute that he is a Nuance customer and has had an established business relationship with Nuance. His claim under 47 U.S.C. § 227**(c)** fails for this reason alone. Section 227(c) permits calls to phone numbers on the National Do Not Call Registry under certain circumstances, including if the caller has an "established business relationship" with the called party. Plaintiff's opposition, however, merely argues that an "established business relationship" is not an exception to a violation of 47 U.S.C. § 227**(b)**. Plaintiff thus fails to show that his claim under 47 U.S.C. § 227**(c)** can survive.

Plaintiff Martinez fails to establish that she has standing to assert a claim under the TCPA for calls that were made to her residential landline that were intended for her ex-husband, a Nuance customer. Plaintiff Martinez raises two arguments—that there are no limits to standing under the TCPA other than Article III standing, and that Martinez was the "called party" even though the calls were not intended for her. Neither argument has merit. The case law makes clear that there must be limits on standing under the TCPA to prevent exposing businesses to double recovery for a single call. The "called party" for landline claims under section 227**(c)** is the intended recipient of the call. The cases on which Plaintiffs rely that involve cell phone calls and claims under section 227**(b)** are beside the point. For calls to landline phones, others in the household who answer a call intended for another user do not have standing to bring claims that belong to the intended recipient. As Martinez does not dispute that the calls at issue were intended for her ex-husband, she has failed to establish that she has standing for her claim under 47 U.S.C. § 227(c).

All claims brought by Hopwood or Martinez based on section 227(c) should be dismissed.

**ARGUMENT**

**I. PLAINTIFF HOPWOOD DOES NOT DISPUTE HE FAILS TO STATE A CLAIM UNDER 47 U.S.C. § 227(C).**

Nuance's motion to dismiss with respect to Plaintiff Hopwood was limited to Hopwood's claim under 47 U.S.C. § 227(c) for solicitation calls allegedly made to a number on the National Do Not Call Registry. Plaintiff's opposition, however, does not dispute that Hopwood fails to state a claim under section 227(c). Nor could he, as Plaintiff Hopwood concedes that he purchased several Nuance products since 2006, and therefore had an "established business relationship" with Nuance. (First Amended Complaint ("FAC") ¶ 22, Dkt. No. 31.) Rather, Plaintiff Hopwood bases his opposition entirely on the contention that the "established business relationship" exemption does not apply to claims under 47 U.S.C. *§ 227(b)*. Plaintiff Hopwood's claim under section 227(b), however, is not at issue in this motion.[1] Plaintiff Hopwood does not dispute that he fails to allege facts showing that he received a "telephone solicitation" from Nuance. Because Hopwood cannot plead a required element of his section 227*(c)* claim, this claim should be dismissed.[2] *See* 47 C.F.R. § 64.1200(c); (Memorandum of Points and

---

[1] Plaintiffs are incorrect in their assertion that the FCC has "expressly eliminated the EBR exemption altogether, effective October 2013." (Plaintiffs' Opposition to Defendant Nuance Communications, Inc.'s Motion to Dismiss First Amended Complaint ("Opp.") at 4 n.3, Dkt. No. 54.) The new FCC regulations eliminated only the established business relationship exception for *prerecorded* telemarketing calls. Non-prerecorded calls may be placed to a person with whom the caller has an established business relationship because such calls do not constitute a "telephone solicitation." 47 C.F.R. §§ 64.1200(c), (f)(5).

[2] Though Hopwood argues in a footnote that he terminated his established business relationship with Nuance when he "chose not to receive calls from Nuance at the time he purchased Nuance products," his argument is not supported by the case law. (Opp. at 5 n.4.) Hopwood appears to be relying on his allegation that his "communication preferences" in his online account state that he is "interested in receiving communications by email, and not by telephone." (FAC ¶ 24.) An established business relationship, however, is terminated only by a "seller-specific do-not-call request." 47 C.F.R. § 64.1200(f)(5)(i). Even taking Hopwood's allegations in their best light, merely stating that his "preference" is to receive emails does not constitute a specific "do-not-call" request. Further, even if a customer makes a specific do-not-call request, subsequent calls are not in violation of the TCPA if the caller places the number on its do-not-call list within a reasonable time, up to thirty (30) days, of the request. 47 C.F.R. § 64.1200(d)(3).

Authorities in Support of Defendant Nuance Communications, Inc.'s Partial Motion to Dismiss First Amended Complaint ("Nuance Br.") at 3:21-4:15, Dkt. No. 47.)

## II. PLAINTIFF MARTINEZ FAILS TO SHOW THAT HER CLAIMS SHOULD NOT BE DISMISSED UNDER RULE 12(B)(1) AND/OR 12(B)(6).

As set forth in Nuance's opening brief, Plaintiff Martinez does not have standing to assert claims under the TCPA for the phone calls made to her residential phone number because the calls were intended for her ex-husband, Nuance customer Ted Bilich. Her claims must be dismissed under Rule 12(b)(1) or 12(b)(6). (Nuance Br. at 4:19-7:3.) In an attempt to avoid dismissal of her claims, Plaintiff Martinez makes two arguments: (1) that a person need not be the "called party" in order to have standing to assert a claim under the TCPA; and (2) that the "called party" need not be the intended recipient of the call and therefore Martinez was the "called party" for the calls made to her ex-husband. Neither has merit.

### A. The Standard for Article III Standing Is Not the Same as Standing Under the TCPA.

Plaintiff's contention that anyone with Article III standing may assert a claim under the TCPA is incorrect. (Opp. at 6:8-19.) Tellingly, Plaintiff is unable to cite *any* district court case from within the Ninth Circuit on the issue of standing. A court in the Central District of California, however, has considered and rejected the very same theory Plaintiff Martinez attempts to advance here—*i.e.*, that anyone asserting injury sufficient to satisfy Article III may bring suit under the TCPA. *See j2 Global Commc'ns, Inc. v. Protus IP Solutions*, No. CV 06-00566 DDP (AJWx), 2010 U.S. Dist. LEXIS 145369, at *13 (C.D. Cal. Oct. 1, 2010). In *j2 Global*, the court held that "the TCPA's private right of action provision does not expand the zone of interests so as to be coterminous with Article III standing," and that standing to assert a claim under the TCPA is limited to the "person to whom the unlawful phone call or unsolicited fax advertisement is directed." *Id*. at *13, *21-22.

Other district courts have similarly limited standing under the TCPA to the "called party," and for good reason. *See Leyse v. Bank of Am.*, No. 09 Civ. 7654 (JGK), 2010 U.S. Dist. LEXIS 58461, at *16 (S.D.N.Y June 14, 2010); *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-1814

(FLW), 2010 U.S. Dist. LEXIS 106719, at *34 (D.N.J. Oct. 5, 2010); *Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 42 (D.D.C. 2008).  The court's opinion in *Leyse* is directly on point and illustrates the untenable consequences of extending standing to those beyond the "called party." 2010 U.S. Dist. LEXIS 58461.  In that case, the plaintiff shared a residential landline with his roommate, and picked up a phone call that was intended for his roommate.  The roommate for whom the call was intended *also* filed lawsuit asserting a TCPA claim for the *very same phone call*. *Id*. at *1-2.  Accordingly, the defendant there, as here, faced the possibility of paying statutory penalties *twice* for a single call.  Such double recovery, however, is not permitted under the TCPA.  *See Cellco P'ship*, 2010 U.S. Dist. LEXIS 106719, at *26 (the "TCPA limits damages to one award of damages per call") (citation omitted).

As illustrated by the court in *Leyse*, Plaintiff's proposed rule affording *anyone* who alleges harm to assert a claim under the TCPA would result in multiple recoveries for a single violation, as such a rule would permit both the intended recipient *and* the actual but incidental recipient to assert a claim for the same call.  Apparently acknowledging that defendants cannot be exposed to multiple liabilities for the same call, Plaintiff argues that in this case, there would be no double recovery because Ted Bilich purportedly does not have standing to sue for the calls made to him. (Opp. at 8 n.7.)  As the person to whom the calls were directed, however, Mr. Bilich is the only person with standing to sue for those calls.  Though Plaintiff baldly claims that Mr. Bilich was not "subscribed to or an authorized user of the telephone number at the time the calls were received," the evidence shows otherwise.  Mr. Bilich was not only associated with the phone number at issue during the relevant period, but was also listed as the owner of the property at which the residential landline was registered during the relevant period.  (Declaration of Margaret Mayo, Ex. A at 9 (filed under seal), Dkt. No. 48-8.)[3]  Under these facts, Mr. Bilich has standing to sue for the calls that were intended for him and made to his landline—thus potentially resulting in double recovery and double penalties for the *same calls* for which Plaintiff Martinez attempts to claim

---

[3] On a Rule 12(b)(1) motion, extrinsic evidence may be considered in resolving the motion.  Plaintiff Martinez has offered no evidence that disputes the evidence provided by Nuance in conjunction with its motion to dismiss.

1  here. As the TPCA does not permit double recovery, standing under the TCPA must be limited to
2  the "called party."

### B. The "Called Party" of a Landline Call Is the Intended Recipient of the Call.

Plaintiff next argues that "even if" standing is limited to the "called party," the "called party" is not the intended recipient of the call, but the "actual recipient," subscriber, regular user, exclusive user, or joint user. (Opp. at 7:1-8.) In other words, Plaintiff appears to argue that anyone who has a connection to the phone number called has standing to sue for that call, *except* the intended recipient. This argument also fails. Plaintiff suggests a menu of other proposed definitions for the "called party" in a tortured attempt to escape the on-point reasoning of *Leyse*. Plaintiff first argues that the "called party" is the actual recipient of the call, rather than the intended recipient. (Opp. at 7:1-2.) This proposed definition was expressly rejected in *Leyse* as applied to residential landlines. Where, as here, more than one person is associated with a residential landline, only the person that is the *intended* recipient of the call could give his or her permission to be called and/or could have a business relationship with the caller to give rise to allow the call. *See Leyse*, 2010 U.S. Dist. LEXIS 58461, at *16 (finding that the incidental recipient of the call does not have standing because it is the *intended* recipient of the call who could grant permission for the defendant to call her). *Leyse* is the only case cited by either party that is directly on point for a residential landline, and Plaintiff fails to meaningfully distinguish that case. Plaintiff feebly attempts to distinguish *Leyse* on the ground that there was a single phone call in *Leyse*, whereas here there were allegedly "numerous and repeated phone calls." (Opp. at 7 n.5.) Plaintiff does not cite any support for this theory, nor could she, as the frequency and number of calls has no bearing on the issue of standing under the TCPA.

Indeed, the case on which Plaintiff relies is inapposite because it involves calls to a cell phone, not a residential landline, and thus involved an entirely different subsection of the TCPA, specifically 47 U.S.C. § 227(**b**), and its related guidance. *See, e.g., D.G. v. Diversified Adjustment Serv., Inc.*, No. 11 C 2062, 2011 WL 5506078 (N.D. Ill. Oct. 18, 2011) (asserting claim under 47 U.S.C. § 227(b) for calls to the plaintiff's cell phone). Further, in addition to the fact that this case involves a completely different subsection of the TCPA, calls to cell phones are

also inherently different from calls to residential landlines. A cell phone number is typically used (and provided to others) only by a single user, whereas a residential landline number is often used (and provided to others) by anyone who resides in the household. Thus, the case Plaintiff cites involving calls to cell phones is irrelevant to the issue of whether Martinez is the "called party" for the calls made to her residential landline.

Plaintiff's argument that the "called party" should be defined as the "subscriber," the "regular user," the "exclusive user," or the "joint user" is similarly unavailing. (Opp. at 7:2-8.) Again, the cases on which Plaintiff relies involve calls to *cell phones*, not residential landlines, and therefore have no bearing on the issue presented here. *See Swope v. Credit Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) (asserting claim under 47 U.S.C. § 227(b) for calls to the plaintiff's cell phone); *Page v. Regions Bank*, 917 F. Supp. 2d 1214 (N.D. Ala. 2012) (same); *Hamilton v. Spurling*, No. 3:11cv00102, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013) (same).[4] Notably, the TCPA does not prohibit calls to landlines registered on the National Do Not Call Registry when the caller has the permission of the person being called. 47 C.F.R. § 64.1200(c)(2)(ii). Because such calls are permitted regardless of whether the person being called is the "subscriber," businesses are not required to first determine whether the person they are calling is the "subscriber" of the landline. *Leyse*, 2010 U.S. Dist. LEXIS 58461, at *15-16. "To find otherwise would mean that when a business calls a person with a prerecorded message, that business could be liable to any individual who answers the phone despite the fact that the business only intended to call one person." *Id*. The same analysis precludes defining the "called party" as the "regular user," "exclusive user," or "joint user" of a residential landline phone. Standing under the TCPA does not extend to just anyone who happens to pick up a

---

[4] In *Hamilton v. Spurling*, the phone number at issue was a cellular phone that the plaintiff and his wife also effectively used as their residential landline. 2013 WL 1164336, at *2. As such, the plaintiff in that case asserted claims under both section 227(b) and (c). Plaintiff's reliance on this case, however, is misplaced because, in assessing Plaintiff's claim under section 227(c), the court noted that there is a split in authority regarding who has standing to assert a claim under the TCPA, and merely "assume[d]" that the plaintiff had standing before ultimately dismissing the plaintiff's claim on other grounds. *Id*. at *5 n.7.

landline phone.[5]  In addition to the impermissible risk of double recovery (or more), such a rule would also expose businesses to liability for permissible landline calls, as anyone who happened to pick up the phone could assert a TCPA claim for a call made to another user of that phone who had consented or with whom the caller had an established business relationship.

Plaintiff Martinez does not dispute that the calls were intended for her ex-husband Ted Bilich and not for her.  Plaintiff has thus failed to establish standing under the TCPA because she was not the intended recipient of the calls at issue.  Accordingly, her claims should be dismissed for lack of standing under Rule 12(b)(1) and/or 12(b)(6).[6]

## CONCLUSION

For the foregoing reasons, Defendant Nuance Communications, Inc. respectfully requests that the Court dismiss Plaintiff William Hopwood's and Plaintiff Teresa Martinez's claims under 47 U.S.C. § 227(c) in their entirety.

Dated: January 21, 2014         MORRISON & FOERSTER LLP


By:  /s/ Margaret Mayo
     Margaret Mayo

     Attorneys for Defendant
     NUANCE COMMUNICATIONS, INC.

---

[5] Even if Plaintiff's legal argument had any merit, Plaintiff Martinez's bald assertions in the opposition that Martinez is the "subscriber" and "regular user" of the phone number at issue are notably absent from the Complaint, and Martinez has offered no evidence that supports her arguments. (*See* Opp. at 8:14-16.)  As such, Plaintiff cannot rely on those assertions to establish standing.

[6] Plaintiff also argues, without support, that calls made to her after she allegedly informed Infinity that "her ex-husband no longer lived at the residence associated with the number called, that she would be the recipient of any future calls, and that she wanted the calls to stop" were in violation of the TCPA. (Opp. at 8 n.8.)  According to the Complaint, however, the first time Plaintiff informed Infinity that her ex-husband no longer lived there was on April 25, 2013—*i.e., the last call Plaintiff received*.  Thus, Plaintiff Martinez's last-ditch attempt to avoid dismissal is inconsistent with her own allegations and must fail.