PAGES 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM HOPWOOD, ET AL.,    )
                                )
          PLAINTIFFS,   )   NO. C-13-2132 YGR
                                )
  VS.                    )   TUESDAY, MARCH 31, 2015
                                )
NUANCE COMMUNICATIONS, INC. )   OAKLAND, CALIFORNIA
ET AL.,                )
                                )    MOTION FOR PRELIMINARY
         DEFENDANTS.   )  APPROVAL OF CLASS SETTLEMENT
_____)

**BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**        EDELSON, PC
                         350 NORTH LASALLE STREET, STE. 1300
                         CHICAGO, ILLINOIS 60654
              BY:  RAFEY S. BALABANIAN, ESQUIRE

**FOR DEFENDANT**
**NUANCE:**             MORRISON & FOERSTER
                         425 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA 94105
              BY:  TIFFANY CHEUNG, ESQUIRE

**FOR DEFENDANT**
**INFINITY:**           LOCKE LORD LLP
                         44 MONTGOMERY STREET, STE. 4100
                         SAN FRANCISCO, CALIVFORNIA 94104
              BY:  REGINA J. MCCLENDON, ESQUIRE

**REPORTED BY:**         DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                         OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1    <u>TUESDAY, MARCH 31, 2015</u>                          2:55 P.M.

2                        P R O C E E D I N G S

3         **THE CLERK:**  WE WILL DO THE HOPWOOD CASE NEXT.

4      CALLING CIVIL ACTION 13-2132 HOPWOOD VERSUS NUANCE

5    COMMUNICATIONS.

6      COUNSEL, PLEASE STATE YOUR APPEARANCES.

7         **MR. BALABANIAN:**  GOOD AFTERNOON, YOUR HONOR.  RAFEY

8    BALABANIAN OF EDELSON PC APPEARING ON BEHALF OF PLAINTIFF

9    HOPWOOD AND THE PROPOSED SETTLEMENT CLASS.

10        **MS. CHEUNG:**  GOOD AFTERNOON, YOUR HONOR.  TIFFANY

11   CHEUNG OF MORRISON & FOERSTER ON BEHALF OF DEFENDANT NUANCE

12   COMMUNICATIONS.

13        **MS. MCCLENDON:**  GOOD AFTERNOON, YOUR HONOR.  REGINA

14   MCCLENDON OF LOCKE LORD ON BEHALF OF INFINITY CONTACT, INC.

15        **THE COURT:**  I AM SORRY, COUNSEL, YOU SAID YOUR NAME

16   WAS?

17        **MS. MCCLENDON:**  REGINA MCCLENDON.

18        **THE COURT:**  WELL, I PUT YOU LAST BECAUSE I HAVE A LOT

19   OF QUESTIONS.  AND I'M TRYING TO UNDERSTAND HOW THIS CLASS

20   BENEFITS WITHOUT AN EXTREME AMOUNT OF BURDEN.  SO I'M

21   CONCERNED ABOUT HOW YOU HAVE COBBLED SOMETHING TOGETHER HERE.

22      FIRST OF ALL, WHAT JUSTIFIES A TWO AND A QUARTER MILLION

23   DOLLAR ATTORNEY'S FEES PROVISION OR A POTENTIAL AWARD IN THIS

24   CASE?

25        **MR. BALABANIAN:**  WELL, THE FEE AMOUNT IS BASED ON A

1    PERCENTAGE OF THE OVERALL FUND, YOUR HONOR.  OF COURSE THAT

2    AMOUNT IS SUBJECT TO THE COURT'S DISCRETION AND FINAL

3    APPROVAL, AND CERTAINLY CAN BE ADJUSTED.

4         **THE COURT:**  SO YOU'RE ANTICIPATING THAT WHATEVER IT

5    IS THAT ULTIMATELY -- SO THAT'S BASED UPON THE NINE PLUS

6    MILLION DOLLAR AWARD?

7         **MR. BALABANIAN:**  YES.

8         **THE COURT:**  AND THAT IF IT DOESN'T COME IN AT

9    9 MILLION, IT WOULD BE SUBSTANTIALLY LESS THAN THAT?

10        **MR. BALABANIAN:**  I ASSUME THAT IF THE SETTLEMENT

11   DOESN'T YIELD THE RESULT THAT WE HAVE PUT FORTH BEFORE THE

12   COURT, THAT MY FEES ARE GOING TO GET CUT.  YES.

13     THAT'S A REALITY THAT ALL PLAINTIFFS' COUNSEL FACES.  I

14   THINK WHAT'S NICE ABOUT THIS CASE IS THAT WHAT WAS NEGOTIATED

15   AS FAR AS THE FEE IS CONCERNED IS THAT TO THE EXTENT THE

16   COURT, IN ITS DISCRETION, DOES DECIDE TO REDUCE IT, WHICH I AM

17   HOPING DOESN'T TAKE PLACE, I DON'T THINK IT'S JUSTIFIED YET,

18   BUT WE'LL SEE HOW IT PANS OUT, THAT MONEY WOULD GO TO THE

19   CLASS AS WELL, AND IT WOULDN'T REVERT TO THE DEFENDANT, WHICH

20   IS A CAUSE FOR A LOT OF CONCERN OF COURTS NOWADAYS.

21        **THE COURT:**  BUT THAT -- I JUST NEEDED TO MAKE SURE

22   THEN THAT WHAT YOU'RE -- IT SOUNDS LIKE YOU'RE ANTICIPATING

23   THAT IT IS JUST A PERCENTAGE.

24        **MR. BALABANIAN:**  THAT'S RIGHT.  YES, YOUR HONOR.

25        **THE COURT:**  ONE OF THE CONCERNS I HAD WITH THE

1    APPROACH THAT HAS BEEN TAKEN IS THAT YOU ARE ASKING A BUNCH OF

2    CONSUMERS WHO POTENTIALLY RECEIVED THESE PHONE CALLS TO

3    CERTIFY THAT INFINITY MADE THE PHONE CALLS.

4        HOW ARE THEY SUPPOSED TO KNOW THAT?

5            **MR. BALABANIAN:**  I DON'T KNOW WHAT -- WELL, I

6    DON'T --

7            **THE COURT:**  IT IS IN YOUR NOTICES.  SO PERHAPS THAT

8    WASN'T THE INTENT.  BUT YOU ARE ASKING THEM TO CERTIFY THAT

9    EVEN THOUGH THEY RECEIVED A CALL FROM NUANCE IDENTIFIED AS

10   SOMEONE ON BEHALF OF NUANCE, THAT SOMEHOW THEY ARE SUPPOSED TO

11   KNOW THAT THIS -- THAT THE SUBCONTRACTOR INFINITY WAS THE ONE

12   WHO WAS MAKING THE PHONE CALL.

13           **MR. BALABANIAN:**  OKAY.  THAT CERTAINLY IS NOT THE

14   INTENT AND I DON'T THINK THE EFFECT OF HOW THE SETTLEMENT IS

15   SET UP.  BECAUSE IF YOU LOOK AT THE CLAIM FORM, IT SIMPLY

16   COMES DOWN TO THEM IDENTIFYING, WELL, AT LEAST WITH RESPECT TO

17   THE LONG CLAIM FORM, THE PHONE NUMBERS FROM WHICH THEY GOT THE

18   CALLS.

19       AND THAT'S AN ISSUE THAT WE SPOKE TO JUDGE CORLEY ABOUT AT

20   LENGTH.  SHE WAS CONCERNED THAT -- FOR THE SAME REASONS, THAT

21   HOW CAN WE EXPECT CONSUMERS TO COME FORTH AND MAKE A CLAIM

22   IDENTIFYING, YOU KNOW, WHO THEY RECEIVED CALLS FROM, BUT

23   THAT'S NOT HOW THE SETTLEMENT IS SET UP.

24       THERE'S TWO TYPES OF CLAIM FORMS, AS THE COURT I'M SURE

25   KNOWS.  THE SHORT CLAIM FORM IS VERY STRAIGHTFORWARD AND

1    SIMPLY REQUIRES A SIMPLE ATTESTATION AS TO RECEIVING CALLS

2    WITHOUT AUTHORIZATION.  BUT THE LONGER CLAIM FORM DOES REQUIRE

3    SOME IDENTIFICATION OF THE CALLS AND WHEN THEY WERE RECEIVED.

4         BUT THAT INFORMATION IS READILY AVAILABLE IN THE NOTICE

5    DOCUMENTS, INCLUDING THE LONG FORM NOTICE THAT WILL BE POSTED

6    ON THE WEBSITE.  THAT WAS SOMETHING THAT WAS IMPORTANT TO

7    JUDGE CORLEY AS WELL, LISTING THE PHONE NUMBERS, AND THAT IS

8    BEING DONE.

9         SO I'M NOT SURE WHERE THE COURT'S READING THAT FROM.  I'M

10   NOT SAYING IT'S NOT IN THERE, IT MAY BE SLOPPILY DONE.  I

11   APOLOGIZE FOR THAT.  BUT THERE WAS NO ATTEMPT TO PLACE SOME

12   KIND OF BURDEN TO FIGURE OUT WHO THE CALLER WAS.  THAT IS

13   ABSURD.

14             **THE COURT:**  WELL, I THOUGHT SO AS WELL.

15             **MR. BALABANIAN:**  UNDERSTAND.

16             **THE COURT:**  WELL THEN THIS NEEDS A LOT OF CLEANUP.

17        TELL ME WHAT IT IS THAT YOU HAVE IN TERMS OF INFORMATION,

18   THAT IS, WHAT IS IT THAT LEADS YOU TO BELIEVE THERE ARE

19   400,000 POTENTIAL CALLERS?

20        I MEAN YOU ARE ASKING FOLKS TO GO INTO THEIR PHONE RECORDS

21   FROM YEARS PAST.  YOU ARE ASKING PEOPLE TO CLICK THROUGH ON

22   THE INTERNET.  AND PERHAPS THAT'S FINE FOR MANY CLASS MEMBERS.

23   IT IS NOT EXACTLY CLEAR TO ME THAT'S FINE FOR EVERY CLASS

24   MEMBER IN ORDER TO VERIFY OR TO GET THEIR PHONE RECORDS, AND

25   IT SEEMS A BIT ONEROUS.

1     BUT WHY IS IT THAT WE'RE MAKING THIS SO DIFFICULT FOR THE

2     CLASS?

3              MR. BALABANIAN:   SURE.   I'M HAPPY TO ANSWER THAT.

4        I'M A LITTLE DISAPPOINTED THE COURT FINDS IT SO DIFFICULT.

5     I THINK WITH MY EXPLANATION, HOPEFULLY THE COURT WILL CHANGE

6     ITS MIND.

7        WE'RE ACTUALLY -- WE'RE PROUD OF THIS SETTLEMENT BECAUSE

8     IT'S ONE OF THE FIRST EVER THAT AWARDS PEOPLE ON A PER-CALL

9     BASIS.   AND THE RECOGNITION, THOUGH, THAT THERE IS SOME AMOUNT

10    OF EFFORT THAT'S REQUIRED FROM A CLASS MEMBER IS A VALID

11    POINT.   IT'S A VALID POINT TO THE EXTENT OF THE LONG CLAIM

12    FORM.   I THINK YOU PUT ASIDE THE SHORT CLAIM FORM, BECAUSE

13    THAT'S AN INCREDIBLY EASY DOCUMENT TO FILL OUT.   AND I THINK

14    THE BULK OF THE CLAIMS ARE GOING TO COME FROM THAT.

15       WITH RESPECT TO THE LONGER CLAIM FORM -- THE LONG CLAIM

16    FORM --

17             THE COURT:   WHAT IS AN IDENTIFICATION CODE IN THE

18    LONG CLAIM FORM?

19             MR. BALABANIAN:   THOSE WILL BE PROVIDED TO THE CLASS

20    MEMBERS IN THEIR POSTCARD NOTICES.   THAT'S JUST A WAY FOR THE

21    SETTLEMENT ADMINISTRATOR TO KEEP TRACK OF THE NOTICES AND THE

22    CLAIMS THAT COME IN.   IT IS A WAY TO STREAMLINE THE PROCESS.

23       BUT -- AND I HATE TO KEEP BRINGING THIS UP, BUT, FRANKLY,

24    JUDGE CORLEY HAD THE SAME CONCERN, WHICH IS, WHY ARE PEOPLE

25    GOING TO GO GET THEIR PHONE RECORDS TO CLAIM UNDER THIS

1    SETTLEMENT, AT LEAST AS IT RELATES TO PEOPLE WHO FILE THE

2    SHORT -- THE LONG CLAIM FOR.  AND THE REASON IS IS BECAUSE

3    THEY STAND TO GAIN A LOT OF MONEY FROM THE SETTLEMENT.  THEY

4    STAND TO GAIN THOUSANDS OF DOLLARS POTENTIALLY FROM THE

5    SETTLEMENT TO THE EXTENT THEY ARE WILLING TO GO ONLINE AND GET

6    THEIR PHONE BILLS.

7        AND, FRANKLY, WE HAVE ALL DONE IT, YOUR HONOR.  I DON'T

8    THINK IT'S AN INCREDIBLY ONEROUS PROCESS.  MOST PHONE

9    COMPANIES LIST PHONE RECORDS FOR THE PAST 18 MONTHS.  THEY ARE

10   READILY ACCESSIBLE BY JUST GOING TO THE WEBSITE AND CLICKING

11   ON THE PHONE BILL.

12       TO THE EXTENT THE BILLS HAVE BEEN ARCHIVED, YOU CAN ORDER

13   THEM, AND THEY JUST TAKE A COUPLE OF DAYS.  WHEN YOU ARE

14   TALKING ABOUT $65 PER CLAIM IN A CLASS WHERE THERE IS A

15   CERTAINLY A PORTION OF PEOPLE WHO HAVE RECEIVED DOZENS OF

16   CALLS POTENTIALLY, YOU KNOW, 50 CALLS, YOU CAN SEE RIGHT THERE

17   THAT --

18       **THE COURT:**  DO WE THINK THAT THAT -- THAT'S WHY I

19   STARTED THE QUESTION WITH WHAT INFORMATION EXISTS.  YOU

20   OBVIOUSLY HAVE SOME INFORMATION --

21       **MR. BALABANIAN:**  SURE.

22       **THE COURT:**  -- BECAUSE YOU HAVE RECORDS AND YOU'VE

23   IDENTIFIED A POTENTIAL -- THE SIZE OF THE POTENTIAL CLASS.

24       DO WE REALLY THINK THAT THESE PHONE CALLS WERE BEING MADE

25   50 TIMES, 40 TIMES, 30 TIMES?

1          **MR. BALABANIAN:** MY CLIENT, MY CLIENT MARTINEZ

2     RECEIVED ALMOST, I THINK IT WAS 50 CALLS.  SO, YES, MY CLIENT

3     HOPWOOD RECEIVED FIVE TO TEN CALLS.

4          THESE WERE CUSTOMERS OF THE DEFENDANT NUANCE.  THERE IS NO

5     QUESTION ABOUT THAT.  THIS WASN'T A SITUATION WHERE THEY WERE

6     GOING OUT AND JUST BUYING LISTS OF PHONE NUMBERS AND CALLING

7     PEOPLE.

8          BUT, YES, PEOPLE RECEIVED LOTS OF CALLS.  AND SO THAT'S

9     WHY THAT ASPECT OF THE SETTLEMENT WAS EXTREMELY IMPORTANT TO

10    US BECAUSE THERE'S BEEN A LOT OF SETTLEMENTS LATELY IN THE

11    TCPA SPACE -- IT'S NOT AS EXCITING AS THE OTHER CASES THAT

12    WERE UP HERE PERHAPS, BUT THERE'S BEEN A LOT OF SETTLEMENTS

13    WHERE PEOPLE GET MULTIPLE CALLS AND THEY GET TREATED THE EXACT

14    SAME WAY.  AND THAT'S COME UNDER A LOT OF SCRUTINY FROM

15    COURTS.

16         AND JUDGE -- IT'S NOT LOST ON THE COURT.  IT TOOK TWO

17    YEARS TO SETTLE THIS CASE.  THAT WAS A HUGE ISSUE BECAUSE

18    NOBODY REALLY WANTS TO, FROM THE DEFENDANT'S PERSPECTIVE, AND

19    I CREDIT THEM FOR THIS, BUT NOBODY WANTS TO BE THE FIRST TO DO

20    ANYTHING WHEN IT COMES TO THE SETTLEMENT OF A CLASS ACTION.

21    AND I THINK THIS IS A REMARKABLE RESULT.

22         AND WHEN YOU TALK ABOUT THE POTENTIAL THAT SOME CLASS

23    MEMBERS MAY BE ABLE TO REALIZE THROUGH UTILIZING THE LONG

24    CLAIM FORM, I THINK THE COURT WILL SEE THAT IT'S A -- IT'S A

25    TERRIFIC SETTLEMENT FOR THE CLASS.

1      BUT I WILL SAY THIS:  I THINK MOST PEOPLE WILL UTILIZE THE

2   SHORT CLAIM FORM BECAUSE IT'S JUST EASIER.  AND OFTENTIMES IN

3   CLASS ACTIONS OF THIS NATURE, EASIER IS THE WAY THAT PEOPLE

4   GO.  BUT I THINK IT WOULD HAVE BEEN -- I DON'T THINK WE WOULD

5   HAVE REPRESENTED OUR CLIENTS TO THE FULLEST EXTENT POSSIBLE IF

6   WE IGNORED THE FACT THAT THE MULTIPLE CALL ASPECT OF THIS CASE

7   WAS SOMETHING THAT NEEDED TO BE ADDRESSED.

8           **THE COURT:**  WHAT DOES IT MEAN -- I'M ALSO CONCERNED

9   ABOUT THIS PHRASE -- AGAIN, THESE FOLKS ARE ATTESTING UNDER

10  PENALTY OF PERJURY.  WHAT DOES IT MEAN FOR THEM TO SIGN THIS

11  FORM TO SAY THAT THE CALL WASN'T MADE WITH THEIR PRIOR EXPRESS

12  CONSENT.  WHAT DOES THAT MEAN?

13      I UNDERSTAND THE LEGAL ISSUE.  AND THAT'S FREQUENTLY WHERE

14  THE FIGHTS ARE, RIGHT?  THE FIGHTS ARE, OKAY, WELL, YOU KNOW,

15  WHEN YOU CHECKED OUT AND YOU FILLED OUT, YOU PUSHED THAT

16  LITTLE BOX AND YOU SIGNED YOUR NAME, THAT WAS EXPRESS WRITTEN

17  CONSENT OR THAT WAS PRIOR WRITTEN CONSENT.  THAT IS THE FIGHT

18  RIGHT NOW IN THE COURTS.  I HAVE A BUNCH OF THESE CASES.

19          **MR. BALABANIAN:**  SURE.

20          **THE COURT:**  THAT'S THE FIGHT.

21      BUT NOW YOU ARE PUTTING THESE INDIVIDUAL CONSUMERS WHO

22  HAVE NO UNDERSTANDING WITH THE LEGAL ARGUMENTS THAT ARE BEING

23  FOUGHT IN THE COURTS RIGHT NOW.  YOU'RE ASKING THEM TO SIGN

24  THIS UNDER PENALTY OF PERJURY.

25      AND ARGUMENTS CAN BE MADE ON BOTH SIDES.  I DON'T KNOW

1   WHAT THE EVIDENCE IS.  I DON'T KNOW WHAT THE DATA IS.  AND

2   THAT CONCERNS ME THAT WE ARE PUTTING THEM TO PACKAGE THIS

3   CLEARLY -- TO PACKAGE THIS UP.  YOU ARE PUTTING THEM IN WHAT I

4   THINK IS A DIFFICULT POSITION.  SO IF THE SETTLEMENT IS IF YOU

5   CAN IDENTIFY THE PHONE CALLS SPECIFICALLY, YOU GET THE

6   DOLLARS.

7       OKAY.  I'M GOOD WITH THAT.  SETTLEMENTS ARE SAUSAGE.  YOU

8   KNOW, IT'S NEVER PERFECT.  EVERYBODY IS COMPROMISING.  BUT THE

9   PARTIES UNDERSTAND THAT THIS IS AN ISSUE.  SO WHY ARE WE

10  PUTTING CONSUMERS IN THE PREDICAMENT OF HAVING TO SIT THERE

11  AND POTENTIALLY -- YOU KNOW, IF THEY ARE THINKING, WELL, I

12  DON'T REMEMBER WHAT I DID, WHY SHOULD THAT BE A BAR?  WHY

13  SHOULD IT BE A BAR?  WHY SHOULD THERE BE ANY HESITATION AND

14  WHY SHOULD WE BE PUTTING THEM IN THAT POSITION?

15      **MR. BALABANIAN:**  WELL, I DON'T KNOW THAT THERE'S -- I

16  DON'T KNOW THAT THERE IS ANY OTHER WAY TO DO IT --

17      **THE COURT:**  SURE THERE IS.  THIS IS AN AGREEMENT.

18  THIS IS A SETTLEMENT.  THERE'S ALWAYS A WAY.

19      GO AHEAD.

20      **MS. CHEUNG:**  SO THE ONLY ISSUE THERE, YOUR HONOR, IS

21  THAT IT'S IMPORTANT TO US BECAUSE THE -- ESPECIALLY THE SHORT

22  CLAIM FORM IS PRETTY STRAIGHTFORWARD.  YOU PUT YOUR NAME, YOU

23  PUT YOUR NUMBER, YOU CHECK FOUR BOXES, AND YOU GET MONEY.

24      AS YOU KNOW, YOUR HONOR, THIS CASE IS NOT GOING TO BE

25  UNLIKE ALL THE OTHERS WHERE CONSENT IS, IF WE LITIGATED, WOULD

1    BE A (SIC) EXTREMELY CONTENTIOUS ISSUE, TO SAY THE LEAST.

2        THE DEFENDANTS BELIEVE WE HAD CONSENT TO CALL EVERYBODY IN

3    THE CLASS.  PLAINTIFFS OBVIOUSLY DISAGREE.  AND WE COULD

4    LITIGATE THAT AND DECIDE WHO'S RIGHT.  BUT WE BELIEVE WE HAD

5    CONSENT TO CALL EVERYBODY.

6        SO IN ORDER TO PAY A CLAIM, FROM THE DEFENDANTS'

7    PERSPECTIVE, WE FEEL LIKE SOMEBODY HAS TO AT LEAST SAY I

8    DIDN'T CONSENT.  WE UNDERSTAND YOU BELIEVE THAT I CONSENTED,

9    BUT I DIDN'T.  I DIDN'T CONSENT.  AND IF YOU JUST CHECK THE

10   BOX AND YOU FILL IN THE INFORMATION, YOU WILL GET A PAYMENT

11   FROM THIS SETTLEMENT.

12       AND WE HAVE MADE IT, I THINK, AS EASY AS WE CAN, BUT WE

13   CAN'T, I THINK, ELIMINATE THE CONSENT REQUIREMENT BECAUSE FROM

14   THE DEFENDANTS' PERSPECTIVE, EVERYBODY HAD CONSENT.

15   PLAINTIFFS DON'T AGREE, AND IN ORDER TO SORT OUT WHO DESERVES

16   A PAYMENT, THEY NEED TO AT LEAST CHECK A BOX AND SAY THEY

17   DIDN'T.

18           **THE COURT:**  UNDER THIS SETTLEMENT, IT DOESN'T MATTER

19   WHETHER YOU CONSENTED OR NOT.  YOUR CLAIMS ARE BEING

20   EXHAUSTED.  YOUR CLAIMS ARE BEING RELEASED.  WHETHER OR NOT

21   YOU CONSENTED IS NOT RELEVANT TO THE RELEASE.  SO THAT'S WORTH

22   SOMETHING, ISN'T IT?

23       I MEAN IF THE CLASS DOESN'T -- THE CLASS DEFINITION

24   DOESN'T CARVE OUT FOLKS; DOES IT?  LET'S LOOK.

25                   (PAUSE IN THE PROCEEDINGS.)

```
1              MR. BALABANIAN:  NO, IT DOES NOT.

2              THE COURT:  SO THEY ARE -- THEY ARE GIVING UP THEIR

3    CLAIM WHETHER OR NOT -- REGARDLESS.

4              MS. CHEUNG:  PART OF THE ISSUE, THOUGH, HOWEVER --

5              THE COURT:  AM I RIGHT ABOUT WHAT THEY ARE GIVING UP?

6              MS. CHEUNG:  IF THEY -- IF THEY DID CONSENT, THEY

7    HAVE NO CLAIM TO GIVE UP IN ANY EVENT.  THERE'S NO CLAIM TO

8    GIVE UP IF THEY CONSENTED.  THERE'S JUST NO CLAIM TO GIVE UP.

9    THERE'S A COMPLETE DEFENSE.

10        IF THEY DIDN'T CONSENT, THEY CAN CHECK A BOX AND GET

11   MONEY.  BUT WE DON'T KNOW, BECAUSE WE HAVE THIS DISPUTE, WHO

12   CONSENTED AND WHO DIDN'T WITHOUT SOMEBODY AT LEAST CHECKING A

13   BOX AND DECLARING THAT THEY DIDN'T CONSENT.  BECAUSE WE HAVE A

14   DISPUTED ISSUE --

15             THE COURT:  HOW TO THE BEST OF THEIR KNOWLEDGE THEY

16   DIDN'T CONSENT?  IS THAT SUFFICIENT?

17        I COULD NEVER DO THIS BECAUSE I NEVER CONSENT.  THEY ASK

18   ME, I ALWAYS SAY NO.  SO I KNOW THAT I WOULDN'T BE IN THE

19   CLASS BECAUSE I NEVER SAY YES.

20             MS. CHEUNG:  THAT'S BECAUSE YOU DO THESE CASES, YOUR

21   HONOR.

22             THE COURT:  I KNOW.  BUT THAT'S MY POINT.

23             MR. BALABANIAN:  IT'S WEIRD BECAUSE I ALWAYS CONSENT.

24   THAT'S THE WEIRD THING, AND I DO THESE CASES.

25             THE COURT:  MY POINT IS I'M COGNIZANT OF WHAT THE
```

1    ISSUES ARE.  AND WHEN I'M ASKED, I ALWAYS THINK ABOUT IT AND

2    ALWAYS SAY NO.  THAT IS NOT NECESSARILY THE AVERAGE PERSON.

3        AND WHAT GETS CREATED IN THESE SETTLEMENTS ARE FALLACIES,

4    IN A SENSE.  AND YOU ARE PUTTING PEOPLE IN BUCKETS THAT I

5    DON'T -- THAT MAY MAKE YOU FEEL BETTER, BUT PUTS THEM IN A

6    DIFFICULT POSITION.

7        SO, WHAT ARE YOU GOING TO DO?  LET'S SAY SOMEONE THINKS

8    THAT THEY DIDN'T CONSENT, AND THEN YOU'VE GOT SOME PIECE OF

9    EVIDENCE OUT THERE AND YOU COME BACK AND SAY, HEY, I AM GOING

10    TO GO AFTER YOU FOR PERJURY --

11            **MR. BALABANIAN:**  NO.

12            **THE COURT:**  I UNDERSTAND --

13            **MR. BALABANIAN:**  I'M SORRY.

14            **THE COURT:**  -- PROBABLY THE ANSWER IS NO, THAT THAT

15    WOULDN'T HAPPEN.  I AM GOING TO GO AFTER YOU BECAUSE YOU

16    SIGNED THIS FORM AND YOU SAID YOU DIDN'T CONSENT, AND LOOK, I

17    HAVE THIS.

18        OBVIOUSLY THAT IS NOT GOING TO HAPPEN, BUT THEORETICALLY

19    IT COULD.  AND I AM HERE TO MAKE SURE THAT THEORETICALLY THAT

20    DOESN'T HAPPEN.

21        SO, I WOULD LIKE SOME SOFTER LANGUAGE IN THERE TO PROTECT

22    THOSE PEOPLE WHO NO ONE ELSE IS HERE APPARENTLY THINKING

23    ABOUT, MAYBE YOU ARE, BUT I AM CONCERNED ABOUT THEM.  BECAUSE

24    PEOPLE CAN HAVE A GOOD FAITH BELIEF THAT THEY DIDN'T AND CHECK

25    THAT BOX, AND THAT'S DIFFERENT FROM AN EMPHATIC STATEMENT THAT

1    SAYS, WELL, I DIDN'T.

2        WHEN THE ISSUE -- WE ALL KNOW SITTING HERE TODAY, WE ALL

3    KNOW THAT THE ISSUE OF CONSENT IS BEING HEAVILY LITIGATED AND

4    WHAT THAT MEANS.

5            **MS. CHEUNG:**  THE BALANCE THAT NEEDS TO BE STRUCK,

6    YOUR HONOR, AND I THINK YOU RECOGNIZE THAT NOBODY HAS ANY

7    INTENTION OF GOING AFTER AN INDIVIDUAL CLASS MEMBER FOR WHAT

8    THEY MAY CHECK ON A CLAIM FORM, BUT I THINK THE BALANCE THAT

9    NEEDS TO BE STRUCK IS WE ALSO DON'T WANT AN INFLUX OF CLAIMS

10   WHERE PEOPLE ARE NOT TAKING THIS SERIOUSLY AND JUST CHECKING

11   BOXES, AND MAYBE THEY DON'T EVEN BELIEVE THEY -- THAT THEY

12   FAILED TO GIVE CONSENT AND THEY KNOW THAT THEY CONSENTED, BUT

13   THERE'S NOTHING THAT -- THERE'S NO LANGUAGE THAT FORCES THEM

14   TO STOP AND THINK, AM I BEING TRUTHFUL WHEN I AM FILLING THIS

15   OUT.

16            **THE COURT:**  HOW ARE YOU PUBLICIZING THIS?  AGAIN, IT

17   GOES BACK TO MY FIRST QUESTION, WHICH IS, WHAT DO WE HAVE?

18   WHAT EVIDENCE DO WE HAVE?  WHERE DOES THIS 400,000 NUMBER COME

19   FROM?

20        DO YOU HAVE THE LIST?  IF YOU HAVE THE LIST, THEN THE

21   CHANCES OF THAT HAPPENING ARE MUCH LOWER.  IT'S NOT LIKE WE

22   ARE ADVERTISING THIS IN THE *SAN FRANCISCO CHRONICLE* AND *TIME*

23   MAGAZINE.  RIGHT?  IT SEEMS TO ME TO BE A MUCH NARROWER SET OF

24   PEOPLE WHO HAVE A REAL CONNECTION TO YOUR CLIENT.

25        SO WHAT DO WE HAVE?

1          **MR. BALABANIAN:**  WELL, WE DO HAVE A LIST, YES.

2     ABSOLUTELY.

3          **THE COURT:**  IS IT GOING BEYOND THE LIST?

4          **MR. BALABANIAN:**  YES -- CERTAINLY WE HAVE EVIDENCE --

5     BETTER EVIDENCE FOR SOME PEOPLE AS FAR AS LACK OF CONSENT.

6     AND IT VARIES.  BUT, YES, WE HAVE A LIST.

7          SO THERE I S A WAY TO, YOU KNOW, CROSS CHECK IT FROM OUR

8     END AS FAR AS WHO MAKES CLAIMS AND WHETHER OR NOT IT IS A

9     VALID CLAIM OR NOT.

10          WE'RE CLEAR ON WHO WE THINK CONSENTED AND WHO WE THINK

11     DIDN'T.  OF COURSE OUR POSITION IS JUST BECAUSE YOU GIVE THE

12     NUMBER WHEN YOU BUY A PRODUCT DOESN'T MEAN YOU NECESSARILY

13     CONSENTED, BUT THE DEFENDANTS HAVE DEFENSES BEYOND THAT WHERE

14     PEOPLE AFFIRMATIVELY DID ASK TO BE CALLED.

15          **THE COURT:**  SO WHAT HAPPENS WITH THEM?

16          **MS. CHEUNG:**  BUT, YOUR HONOR, CAN I ADDRESS THE FIRST

17     POINT WHICH IS EVERYBODY IN THE CLASS DID VOLUNTARILY GIVE

18     THEIR PHONE NUMBER.  AND AS YOU KNOW, THERE IS A LEGAL DISPUTE

19     OVER WHETHER THAT CONSTITUTES PRIOR EXPRESS CONSENT.

20          **THE COURT:**  WHAT WERE THE CIRCUMSTANCES UNDER WHICH

21     THEY GAVE THEIR PHONE NUMBER?

22          **MS. CHEUNG:**  IT COULD BE WHEN THEY PURCHASED

23     REGISTRATION SOFTWARE, WHEN THEY PURCHASED THEIR SOFTWARE --

24     WHEN THEY REGISTERED THEIR SOFTWARE.

25          **THE COURT:**  WHEN THEY REGISTERED THEIR SOFTWARE, DID

```
1    IT SAY -- DID IT SAY WE -- BY PUTTING YOUR PHONE NUMBER HERE,

2    YOU ARE AGREEING TO ALLOW US TO CONTACT YOU FOR ALL MARKETING

3    OF OTHER PRODUCTS IN OUR COMPANY CELLS?

4           MS. CHEUNG:  THERE WERE -- THERE WERE SOME OPTIONS

5    THAT ALLOWED THEM TO OPT IN TO MARKETING COMMUNICATIONS AND

6    THEY COULD OPT IN AND SAY, YES, I WANT TO RECEIVE MARKETING

7    COMMUNICATIONS BY TELEPHONE, OR I JUST WANT TO RECEIVE

8    MARKETING COMMUNICATIONS.

9        THERE WERE VARIOUS WAYS IN WHICH THEY COULD INDICATE, YES,

10   AFFIRMATIVELY AN OPT IN.  THEY COULD HAVE SPOKEN WITH AN

11   INFINITY REPRESENTATIVE.  THEY COULD HAVE SPOKEN WITH A NUANCE

12   REPRESENTATIVE TO ALSO INDICATE THAT THEY WERE OPTING IN TO

13   CONSENT.

14       BUT EVERYBODY DID GIVE THEIR PHONE NUMBER.  AND THAT IS A

15   LEGAL DISPUTE RIGHT NOW THAT IS BEING CONTESTED IN TERMS OF

16   WHETHER THAT'S ENOUGH.  MANY PEOPLE DID MORE THAN THAT.  SO

17   THERE ARE SEVERAL LAYERS.  BUT AT THE VERY LEAST, EVERYONE

18   VOLUNTARILY GAVE THEIR PHONE NUMBER IN CONNECTION WITH

19   REGISTERING THEIR PRODUCTS OR PURCHASING ONLINE.

20       AND WE HAVE A LEGAL DISPUTE, AS I HAVE SAID, ON WHETHER

21   THAT'S ENOUGH.  BUT IF SOMEBODY CHECKS A BOX AND SAID, LOOK, I

22   DIDN'T VIEW THAT AS CONSENT AND THEY CHECKED THE BOX, AND THEY

23   THINK ABOUT IT AND THEY PAUSE, AND THEY REALLY BELIEVE THEY

24   DIDN'T CONSENT TO THE CALLS, THEN THEY ARE GETTING MONEY.

25   THEY ARE GETTING MONEY AS PART OF THIS SETTLEMENT.
```

1          **MR. BALABANIAN:**  AND JUST TO ADD TO MS. CHEUNG'S

2     POINT, IN THE *ROBERTS VERSUS PAY PAL* CASE, CHIEF JUDGE

3     HAMILTON SPECIFICALLY HELD THAT PROVISION OF A CELL PHONE

4     NUMBER FOR ANY PURPOSE WHATSOEVER IS PRIOR EXPRESS CONSENT FOR

5     PURPOSES OF THE STATUTE.

6          AND I DO BELIEVE THAT THERE IS -- THAT WE DO HAVE TO GUARD

7     AGAINST AT LEAST SOME AMOUNT OF POTENTIALLY FRAUDULENT CLAIMS,

8     AS YOU DO IN ANY TYPE OF SETTLEMENT LIKE THIS.

9          NOW, TO YOUR HONOR'S POINT OF COULD, YOU KNOW, COULD WE

10    HAVE SOME SOFTER LANGUAGE?  CERTAINLY THAT WOULD BE, YOU KNOW,

11    SOMETHING THAT WE WOULD WELCOME.  I'M NOT SURE WHAT DEFENSES'

12    POSITION IS ON THAT, BUT, YOU KNOW, WE'VE SPENT A LOT OF TIME

13    TOGETHER OVER THE LAST COUPLE OF YEARS WITH RESPECT TO THIS

14    SETTLEMENT.  SO I'M SURE THEY DON'T WANT TO SPEAK TO ME ANY

15    MORE, BUT I WOULD BE HAPPY TO HAVE ANOTHER CONVERSATION.

16          **MS. CHEUNG:**  THE COMPROMISE I THINK WE STRUCK, YOUR

17    HONOR, IS THAT THE PLAINTIFF -- WE DO HAVE THE "TRUE AND

18    CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF" THAT THEY

19    WANTED TO TAG ON TO THE END OF THE PENALTY OF PERJURY

20    LANGUAGE.  SO THAT WAS THE COMPROMISE THAT WAS STRUCK IN TERMS

21    OF GUARDING AGAINST FRAUDULENT CLAIMS SO THAT PEOPLE ARE NOT

22    JUST WILLY-NILLY CHECKING BOXES WITHOUT STOPPING TO THINK

23    WHETHER OR NOT IT IS, IN FACT, TRUE, WHILE ADDRESSING YOUR

24    CONCERN, YOUR HONOR, THAT PEOPLE SHOULD NOT ALSO BE UNDULY

25    RESTRICTED OR DETERRED.

1          **MR. BALABANIAN:**  AND -- I DON'T MEAN TO JUMP BACK AND

2     FORTH, BUT, YOUR HONOR, THE IDEA THAT WE DON'T WANT TO HAVE A

3     CHILLING EFFECT ON CLAIMS, OF COURSE.  BECAUSE THAT IS GOING

4     TO -- I HAVE EVERY BIT OF AN INCENTIVE TO HAVE A HIGH CLAIMS

5     RATE AS ANYONE BECAUSE, AS THE COURT RIGHTLY POINTED OUT, IF

6     THE SETTLEMENT DOESN'T MEET THE EXPECTATIONS THAT HAVE BEEN

7     SET, THEN I AM GOING TO HAVE TO ACCOUNT FOR THAT.

8          AND SO I THINK THAT THE QUALIFYING LANGUAGE, AND EXCUSE ME

9     FOR FORGETTING IT, ESSENTIALLY DOES WHAT YOUR HONOR WAS

10    TALKING ABOUT.

11         **THE COURT:**  EXPLAIN TO ME HOW THE FLOW OF MONEY

12    HAPPENS.

13         **MR. BALABANIAN:**  IN TERMS OF?

14         **THE COURT:**  WELL --

15         **MR. BALABANIAN:**  I AM SORRY.

16         **THE COURT:**  THE FUNDING OF THE FUND ITSELF.  I'M

17    NOT -- IT'S NOT EXACTLY CLEAR TO ME HOW IT WORKS GIVEN THAT NO

18    CLAIM IS GOING TO BE PAID UNTIL THERE'S FINAL APPROVAL, AND

19    YET THERE SEEMS TO BE SOME SUGGESTION THAT IT'S ONLY -- THAT

20    IT'S GOING TO BE FUNDED INCREMENTALLY.  SO I'M NOT SURE HOW

21    THAT WORKS BECAUSE THE FUND ALSO GETS DISTRIBUTED

22    PROPORTIONALLY.

23         I AM TRYING TO UNDERSTAND HOW YOU SET THIS UP SO THAT I

24    CAN DETERMINE WHETHER OR NOT THE WORDS THAT ARE IN THE

25    DOCUMENT ACTUALLY MEMORIALIZE YOUR INTENT.

1          **MR. BALABANIAN:**  THE FUND GETS DISTRIBUTED

2    PROPORTIONALLY IF THE NUMBER OF CLAIMS IS SO HIGH SUCH THAT

3    EVERYONE WOULD GET A PRO RATA REDUCTION.  AND IT'S TRUE THAT

4    THERE IS NOTHING TO BE PAID ASIDE FROM NOTICE EXPENSES AND

5    WHATNOT, WHICH WILL HAVE TO BE PAID AT THE OUTSET, TO THE

6    EXTENT THE COURT GRANTS PRELIMINARY APPROVAL, NOTHING IS TO BE

7    PAID UNTIL AFTER FINAL APPROVAL.

8        I JUST -- I DON'T QUITE UNDERSTAND THE ISSUE, THOUGH, AS

9    FAR AS THE INITIAL FUNDING OF THE SETTLEMENT FUND.

10         **THE COURT:**  I DON'T HAVE THAT PROVISION RIGHT IN

11   FRONT OF ME.

12         **MR. BALABANIAN:**  I THINK IT'S ON PAGE 10 OF THE

13   SETTLEMENT AGREEMENT, YOUR HONOR.

14         **THE COURT:**  SO 2 MILLION IS BEING PUT IN INITIALLY

15   AND A NON-REVERSIONARY AMOUNT OF 245,000.  DOES THAT MEAN

16   245,000 GETS USED FIRST?

17         **MR. BALABANIAN:**  IT -- THERE IS NO PRECISION TO IT.

18   NOT NECESSARILY.

19         **THE COURT:**  SINCE IT'S NON-REVERSIONARY AND THE OTHER

20   PIECE OF IT IS -- THE 2 MILLION HAS A REVERSIONARY COMPONENT.

21         **MR. BALABANIAN:**  YES.  THAT'S TRUE.  SO THE 245, I

22   ASSUME, YES, WOULD BE USED INITIALLY TO PAY, YOU KNOW,

23   WHATEVER VALID CLAIMS ARE OUT THERE, OR WHATNOT.  I MEAN,

24   THAT'S GOING TO GET EXHAUSTED RIGHT AWAY.

25         **THE COURT:**  SO THE NEXT SENTENCE TALKS ABOUT HOW AT

```
1    ANY TIME THE SETTLEMENT FUND BALANCE FALLS AT OR BELOW

2    500,000, THEN THE DEFENDANTS ARE GOING TO REPLENISH IT.

3       WELL, THAT'S WHAT LED TO THE CONFUSION.  IF YOU HAVE ALL

4    YOUR CLAIMS IN AND YOU KNOW WHAT YOUR CLAIMS ARE, BECAUSE YOU

5    WON'T GET FINAL APPROVAL UNTIL YOU HAVE IT, AND I WON'T

6    APPROVE ATTORNEY'S FEES UNTIL I KNOW WHAT IT IS, WHY DO WE

7    HAVE THIS INCREMENTAL APPROACH?  WE WILL KNOW WHAT THE NUMBER

8    IS.  I DON'T UNDERSTAND THE POINT.

9            MR. BALABANIAN:  I THINK IT CONTEMPLATED PAYMENT SORT

10   OF ON A ROLLING BASIS.

11           THE COURT:  BUT WHY WOULD THAT BE?

12           MS. CHEUNG:  AND THE ONLY -- THE ONLY I THINK REAL

13   PHASING, YOUR HONOR, IS THAT IT CONTEMPLATES A ROLLING BASIS

14   BECAUSE THE NOTICE COST WILL NEED TO BE DEPOSITED FIRST.  SO

15   THAT'S THE FIRST PAYMENT.  BECAUSE OBVIOUSLY AS SOON AS

16   PRELIMINARY APPROVAL IS ORDERED, IF IT IS, NOTICE WILL HAVE TO

17   BE DEALT WITH.  SO THAT'S THE FIRST DEPOSIT --

18           THE COURT:  NOT TWO MILLIONS.

19           MS. CHEUNG:  HOPEFULLY NOT.  BUT THAT'S NOT THE

20   $2 MILLION, YOUR HONOR, TO BE CLEAR.

21       THE FIRST PAYMENT IS THAT WITHIN 14 CALENDAR DAYS OF ANY

22   ORDER PRELIMINARILY APPROVING THE SETTLEMENT, DEFENDANTS WILL

23   PAY THE CLASS NOTICE AND INITIAL ADMINISTRATION COSTS.  SO

24   THAT'S THE FIRST PAYMENT.

25           THE COURT:  OKAY.
```

1          **MS. CHEUNG:**  THE SECOND PAYMENT IS A BIT ARBITRARY IN

2     THAT WE DID WANT TO PHASE IT SO THAT WE'LL PAY WHATEVER THE

3     CLAIMS -- WHATEVER THE CLAIMS AMOUNT REQUIRES --

4          **THE COURT:**  SO ARE YOU PAYING THE CLAIMS BEFORE FINAL

5     APPROVAL?

6          **MS. MCCLENDON:**  NO.

7          **MS. CHEUNG:**  NO, YOUR HONOR.

8          **MR. BALABANIAN:**  NO.

9          **THE COURT:**  THEN WHY WOULD -- IF I HAVE $5 MILLION

10    WORTH OF CLAIMS AT THE TIME OF FINAL APPROVAL, HOW -- WHO IS

11    GOING TO GET PAID FIRST?  WHO IS GOING TO GET PAID OUT OF THE

12    FIRST 2 MILLION, AND WHY DO THE OTHER FOLKS WHO WEREN'T

13    GETTING PAID FIRST HAVE TO WAIT?

14       I JUST DON'T UNDERSTAND WHY THAT WOULD BE.  IS IT -- YOU

15    CONTEMPLATE DELAYING PAYMENTS TO PEOPLE; IS THAT RIGHT?  OR --

16          **MR. BALABANIAN:**  NO.

17          **MS. MCCLENDON:**  NO, YOUR HONOR.  ALL OF THE CLASS

18    MEMBERS WILL BE PAID AT THE SAME TIME AFTER FINAL APPROVAL,

19    AFTER THE EXPIRATION OF THE APPEAL DEADLINE, ALL OF THAT.

20          **THE COURT:**  ARE YOU BUILDING UP THE FUND?  WHAT IS IT

21    THAT YOU'RE DOING?

22          **MR. BALABANIAN:**  THERE WASN'T MUCH INTENTIONALITY

23    BEHIND EXCEPT THAT THE DEFENDANTS DIDN'T WANT TO PART WITH THE

24    MONEY AT THE OUTSET AND WANTED TO, YOU KNOW, PUT IT IN

25    INCREMENTALLY BECAUSE THEY WANTED TO HANG ON TO THE MONEY,

1   WHICH IS NOT COMPLETELY UNCOMMON.

2      THE REALITY IS THAT THERE WOULD BE NO DIFFERENCE IF WE

3   JUST SAID THEY CAN FUND THE SETTLEMENT FUND 14 DAYS AFTER

4   FINAL APPROVAL, OR THE EFFECTIVE DATE, OR WHATEVER.  IT'S NOT

5   SET UP SUCH THAT SOME PEOPLE GET PAID FIRST AND SOME PEOPLE

6   GET PAID LATER ON, AND WHATNOT.

7          **MS. MCCLENDON:**  FRANKLY, MY MEMORY IS A LITTLE FUZZY

8   ON THIS, BUT I THINK THE IDEA IS, IF IT WERE UP TO THE

9   DEFENDANTS, WE WOULD PAY ALL THE MONEY AS LATE AS POSSIBLE.

10  AND IF IT WERE UP TO THE PLAINTIFFS, WE WOULD PAY ALL THE

11  MONEY AS SOON AS POSSIBLE, AND THIS WAS JUST A COMPROMISE.

12     I WOULD NOTE THAT THERE IS A PROVISION, IT'S ON PAGE 10,

13  ANY INTEREST THAT ACCRUES ON THE SETTLEMENT FUND IS PUT INTO

14  THE -- INTO THE FUND, AND SO THAT WAY IF THERE ARE AN EXCESS

15  NUMBER OF CLAIMS, THEN EVERYBODY IN THE CLASS HAS THE BENEFIT

16  OF THAT ADDITIONAL BUMP.  SO THE POOL IS GOING TO BE A LITTLE

17  BIT GREATER.

18          **THE COURT:**  WHERE DO YOU DEFINE "EFFECTIVE DATE"?

19          **MR. BALABANIAN:**  I THINK IT IS IN THE DEFINITION

20  SECTION.  I WILL FIND IT.  ONE SECOND.

21     IT'S PAGE 5, YOUR HONOR, OF THE SETTLEMENT AGREEMENT.

22          **THE COURT:**  THAT CROSS-REFERENCES 10.1.

23          **MR. BALABANIAN:**  EXCUSE ME.

24          **MS. MCCLENDON:**  PAGE 24, YOUR HONOR.

25          **THE COURT:**  OKAY.

1          "EFFECTIVE DATE MEANS THE FIRST DATE BY WHICH ALL OF

2          THE EVENTS AND CONDITIONS IN SECTION 10.1 HAVE BEEN

3          MET AND OCCURRED."

4          **MR. BALABANIAN:**  YES.

5          **THE COURT:**  SO SUBSECTION E SAYS THAT -- WELL,

6     SUBSECTION F SAYS THAT THE SETTLEMENT AND FINAL JUDGMENT HAVE

7     BECOME FINAL.

8          **MR. BALABANIAN:**  RIGHT.

9          **THE COURT:**  SO THE EFFECTIVE DATE ISN'T UNTIL FINAL

10    APPROVAL.

11         **MR. BALABANIAN:**  IT'S ACTUALLY AFTER FINAL APPROVAL.

12    IT ASSUMES THE COURT GRANTS FINAL APPROVAL AND THEN THE

13    APPEALS PERIOD RUNS WITH NO OBJECTIONS.  OR TO THE EXTENT

14    THERE IS AN APPEAL, TO THE EXTENT -- IF THERE'S A RULING ON

15    THE APPEAL, AND THEN NO FURTHER APPEAL FROM THAT IS TAKEN.

16         **THE COURT:**  AND THEN 14 DAYS AFTER THE DEFENDANTS PUT

17    IN $2 MILLION, THEN THEY WAIT, AND THEN THEY HAVE 21 DAYS

18    AFTER ADVANCE NOTICE TO REPLENISH.  SO YOU'RE PAYING IN WAVES.

19         **MS. CHEUNG:**  THAT WASN'T THE INTENTION, YOUR HONOR.

20    I THINK WE UNDERSTOOD THAT IF THE INITIAL PAYMENT OF CLAIMS

21    WAS GOING TO END UP REPLENISHING OR DEPLETING THE $2 MILLION,

22    THAT THERE WOULD IMMEDIATELY NEED TO BE SUPPLEMENTATION,

23    BECAUSE I THINK EVERYONE ANTICIPATES ONE PAYMENT OF CLAIMS.

24         **THE COURT:**  BUT YOU --

25         **MS. CHEUNG:**  THE PAYMENT OF FEES MAY BE SEPARATE.  SO

1    THERE ARE POTENTIALLY SOME STAGES THERE.

2         **MR. BALABANIAN:**  YES, IT'S NOT CLEAR, JUDGE.  IT

3    SHOULD BE.  BECAUSE IT'S NOT THAT SIGNIFICANT OF A PROVISION.

4    I MEAN, THE --

5         **THE COURT:**  WELL, I DO HAVE TO READ --

6         **MR. BALABANIAN:**  NO, I DIDN'T MEAN IT LIKE THAT.  NOT

7    FROM THE COURT'S PERSPECTIVE.  I MEAN FROM OUR PERSPECTIVE, IT

8    DOESN'T MAKE A DIFFERENCE REALLY.

9         **THE COURT:**  JUST UNDERSTAND YOU'RE COMING INTO COURT

10   ASKING THE COURT TO APPROVE THESE DOCUMENTS.  THEREFORE, WE

11   HAVE TO READ THEM.  THEREFORE THEY MUST MAKE SENSE.  IT MAY

12   NOT BE A BIG DEAL FOR YOU, BUT GUESS WHAT?  I CAN'T READ YOUR

13   MIND.  SO ALL I CAN READ IS THE DOCUMENT.

14        **MR. BALABANIAN:**  I FULLY UNDERSTAND THAT.  AND I KNOW

15   WHAT IT'S LIKE APPEARING IN FRONT OF THIS COURT, AND I AM A

16   LITTLE DISAPPOINTED IN MYSELF FOR NOT BEING MORE PRECISE, BUT

17   I FULLY UNDERSTAND THAT.

18        **THE COURT:**  OKAY.

19      WHAT IS THE TAX REFUND ISSUE THAT'S ON HERE?

20           "AT THE REQUEST OF THE SETTLEMENT COUNSEL, THE

21           SETTLEMENT ADMINISTRATOR SHALL APPLY FOR ANY TAX

22           REFUND."

23      WHAT IS THAT?  AND WHERE DOES THAT MONEY COME FROM?

24      AND WHO'S IN THE BACK LAUGHING?  SOMEONE'S BACK THERE

25   LAUGHING.

1          **UNIDENTIFIED SPEAKER:**  NO ONE OF CONSEQUENCE, YOUR

2     HONOR.

3          **MR. BALABANIAN:**  I'M SORRY, WHERE ARE YOU READING

4     FROM, YOUR HONOR?

5          **THE COURT:**  SAME PAGE, LINE 25.

6       I DIDN'T MEAN LAUGHING IN A BAD WAY, JUST CHUCKLING, COMIC

7     RELIEF.  IT HAS BEEN A LONG MONTH ALREADY.  IT IS THE 31ST.

8          **MS. MCCLENDON:**  IT IS ALMOST OVER, YOUR HONOR.

9          **THE COURT:**  IT CAN'T BE OVER QUITE YET.  I STILL HAVE

10    A LOT TO DO.

11         **MS. MCCLENDON:**  YOUR HONOR, THE IDEA I THINK BEHIND

12    THAT PROVISION IS IF -- THE FUNDS THAT THE SETTLEMENT

13    ADMINISTRATOR SETS UP WILL BE INTEREST BEARING, AND IF

14    INTEREST IS PAID, THAT CREATES INCOME TAX LIABILITY.  SO THE

15    SETTLEMENT ADMINISTRATOR IS CHARGED WITH FILING THE

16    APPROPRIATE TAX RETURN AND IF AVAILABLE, APPLYING FOR A

17    REFUND.

18         **THE COURT:**  IS THERE SOME PROVISION IN HERE THAT

19    PROTECTS A CONSUMER WHO THINKS THEY MAY HAVE A GREAT LONG FORM

20    CLAIM, IT TURNS OUT THEY CAN ONLY JUSTIFY TWO OF THE TEN AND,

21    THEREFORE, THEY COME IN UNDER THE 170 TO GIVE THEM THE BASE

22    AMOUNT OF 170?

23         **MR. BALABANIAN:**  THERE IS NOT.  THERE IS NOT THAT

24    PROTECTION.  IT'S -- YOU CAN EITHER CLAIM THE 170 OR YOU CAN

25    CLAIM THE LONG CLAIM FORM.

1      I WILL SAY THAT THEY DO HAVE AN APPEAL RIGHT, SO TO SPEAK.

2   TO THE EXTENT THE SETTLEMENT ADMINISTRATOR NOTIFIES THEM THAT

3   THEIR CLAIM IS REJECTED IN WHOLE OR IN PART, THEY WILL BE

4   GIVEN AN OPPORTUNITY TO CORRECT THAT CLAIM.  BUT THERE IS NOT

5   A -- THERE'S NOT A PROVISION IN THERE THAT WOULD ALLOW THEM TO

6   DEFAULT TO THE 170.

7          **THE COURT:**  ALL RIGHT.  THE EXHIBIT 2, WHICH IS THE

8   NOTICE --

9          **MR. BALABANIAN:**  YES, YOUR HONOR.

10         **THE COURT:**  -- WHO IS GETTING THIS NOTICE?

11         **MR. BALABANIAN:**  THIS NOTICE WILL BE POSTED ON THE

12  SETTLEMENT WEBSITE.  THE DIRECT MAIL NOTICE --

13         **THE COURT:**  WILL THERE BE A DIRECT MAIL OR NOT?

14         **MR. BALABANIAN:**  YES, OF COURSE.

15         **THE COURT:**  WHO GETS --

16         **MR. BALABANIAN:**  EVERYONE.

17         **THE COURT:**  OR JUST THE POSTCARD?

18         **MR. BALABANIAN:**  I MEANT THE POSTCARD.  THAT'S WHAT I

19  MEANT.  THAT'S THE DIRECT MAIL NOTICE IS THE POSTCARD.

20      AND THEN THAT WILL DIRECT THE SETTLEMENT CLASS MEMBERS TO

21  THE WEBSITE WHICH WILL INCLUDE THE LONG FORM NOTICE AND HAVE

22  ALL THE MORE DETAILED INFORMATION.  AND WE --

23         **THE COURT:**  EXHIBIT 2 THEN IS JUST BEING POSTED ON

24  THE WEBSITE?

25         **MR. BALABANIAN:**  CORRECT, YOUR HONOR.

1        **THE COURT:**  DO I HAVE AN EDITABLE VERSION OF THIS

2   DOCUMENT?

3        **MR. BALABANIAN:**  YOU DO NOT.  I CAN CERTAINLY PROVIDE

4   IT TO THE COURT RIGHT AWAY.

5        **THE COURT:**  YOU DON'T END SENTENCES WITH

6   PREPOSITIONS, JUST A FYI.

7        **MR. BALABANIAN:**  DULY NOTED.

8        **THE COURT:**  SO HERE, LOOKING AT PARAGRAPH 5, HOW DO I

9   KNOW IF I'M IN THE SETTLEMENT CLASS?  HERE IS AN INSTANCE OF

10  WHERE I THINK YOU HAVE CONFUSION OR WHERE YOU CREATE

11  CONFUSION.  BECAUSE IT SAYS THAT IT'S ALL INDIVIDUALS WHO

12  RECEIVED A CALL FROM INFINITY.

13     YOU SEE THAT?  SECOND LINE.

14        **MR. BALABANIAN:**  YES.

15        **MS. MCCLENDON:**  YES, YOUR HONOR.

16        **MR. BALABANIAN:**  WELL, I WOULD SAY THAT THE WAY THAT

17  GETS CLARIFIED IS JUST BY SIMPLY LOOKING AT THE NUMBERS.  THE

18  NUMBERS THEMSELVES WILL SHOW YOU WHETHER YOU GOT A CALL FROM

19  INFINITY, AND THOSE NUMBERS WILL BE LISTED HERE BECAUSE THERE

20  ARE DIFFERENT -- NUANCE DOES UTILIZE OTHER CALLERS.

21     GO AHEAD.

22        **MS. MCCLENDON:**  I WAS GOING TO SAY IN ADDITION, YOUR

23  HONOR, IF YOU LOOK AT PARAGRAPH 6 BELOW, IT DOES EXPLAIN THE

24  PURPOSE OF THE CALL WAS TO SELL NUANCE SOFTWARE, IT IDENTIFIES

25  THAT SOFTWARE, AND IT GOES ON TO SAY THAT THE CALLER WOULD

1    HAVE IDENTIFIED ITSELF ON THE PHONE CALLS AS COMING FROM OR ON

2    BEHALF OF NUANCE.

3          **THE COURT:**  RIGHT.  BUT FROM THERE, AGAIN, THIS IS

4    WHERE YOU GUYS ARE BEING LAWYERS AND THESE MEMBERS OF THE

5    CLASS ARE CONSUMERS.

6       THEY THINK THEY ARE RECEIVING A CALL FROM NUANCE BECAUSE

7    THAT'S WHAT THEY WERE TOLD.  RIGHT?  THEY WERE TOLD, WHEN

8    INFINITY CALLED THEM, THEY DIDN'T SAY THIS IS INFINITY CALLING

9    YOU TO SELL YOU NUANCE'S PRODUCTS.  NO.  THEY TOLD THEM WE ARE

10   CALLING ON BEHALF OF NUANCE.

11      I AM NOT -- LOOK, I DON'T THINK THIS IS A PARTICULARLY BIG

12   DEAL, BUT IT IS AN EXAMPLE OF THINGS THAT NEED TO BE

13   CLARIFIED.  BECAUSE THAT IS IMPORTANT TO YOU ALL, RIGHT?

14      THIS IS THE SUBCONTRACTOR THAT'S AT ISSUE, NOT SOME OTHER

15   SUBCONTRACTOR.  IT'S NOT REALLY IMPORTANT TO THEM BECAUSE ALL

16   THEY CARE ABOUT IS THE FACT THAT THEY GOT THE CALL FROM

17   NUANCE.  RIGHT?  AND YOU HAVE THESE RECORDS THAT THEY NEED TO

18   CHECK THAT YOU'RE GOING TO GIVE THEM THE LINKS TO, RIGHT, TO

19   CHECK ALL THEIR PHONE RECORDS?

20          **MR. BALABANIAN:**  I'M SORRY?

21          **THE COURT:**  YOU'RE GOING TO GIVE THEM THE LINKS SO

22   THEY CAN CHECK THE RECORDS TO SEE IF IT'S THE RIGHT ONE?

23          **MR. BALABANIAN:**  YES.  RIGHT.

24      YES.  I UNDERSTAND THE COURT'S VIEW ON THAT.

25          **THE COURT:**  I MEAN, PRESUMABLY, RIGHT, EVERYBODY WHO

1    GETS THAT POSTCARD WILL HAVE RECEIVED A PHONE CALL.

2         **MR. BALABANIAN:**  CORRECT.

3         **THE COURT:**  RIGHT?

4         **MS. CHEUNG:**  WE WERE TRYING TO BE PRECISE, YOUR

5    HONOR, IN DEFINING THE CLASS.  THAT'S ALL THAT WAS.  AND WE

6    WERE HOPING THAT PARAGRAPH 6 WOULD CLARIFY AND INDICATE TO

7    CLASS MEMBERS THAT THE CALLER WOULD HAVE IDENTIFIED ITSELF AS

8    COMING FROM NUANCE.

9         **THE COURT:**  YOU CAN EASILY SAY "FROM INFINITY ON

10   BEHALF OF NUANCE", OR SOMETHING LIKE THAT.  YOU HAVE TO HAVE

11   THAT IN THERE BECAUSE THEY DON'T KNOW INFINITY FROM A HOLE IN

12   THE WALL.

13     THERE ARE A NUMBER OF TIMES THAT HAPPENS IN THIS NOTICE,

14   SO THAT HAS TO BE CLEANED UP.

15     PARAGRAPH 11, I WOULD USE THE WORD "HIRE" A LAWYER, NOT

16   PAY A LAWYER.  THESE KINDS OF CASES, AS WE KNOW, ARE USUALLY

17   DONE ON CONTINGENCY.

18         **MR. BALABANIAN:**  YES, YOUR HONOR.

19         **THE COURT:**  THE LANGUAGE THAT'S IN YOUR RELEASE, I

20   HAVE NOT COMPARED IT TO THE CIVIL CODE.  WHERE DOES IT COME

21   FROM?

22         **MS. MCCLENDON:**  YOUR HONOR, IS THE COURT REFERRING TO

23   PARAGRAPH 1.26 OR THE LANGUAGE -- SOME LANGUAGE IN THE CLASS

24   NOTICE?

25         **THE COURT:**  I AM FLIPPING BACK BECAUSE WHEN I SAW IT

```
1    IN THE NOTICE, IT REMINDED ME THAT I NEEDED TO DISCUSS THAT.

2        SO DOES THIS LANGUAGE TRACK THE CIVIL CODE OR IS IT

3    SOMETHING ELSE?  THE GENERAL RELEASE LANGUAGE.

4            MS. CHEUNG:  YOU MEAN 1.39, YOUR HONOR, ON PAGE 11?

5    THE GENERAL RELEASE LANGUAGE IS INTENDED TO TRACK THE CIVIL

6    CODE.

7            THE COURT:  SO HOW COME IN 1.39 IT'S NOT LIMITED TO

8    INFINITY?  IT'S GIVEN THAT NUANCE USES MULTIPLE CONTRACTORS.

9            MR. BALABANIAN:  WELL, IT REFERS TO THE SETTLEMENT

10   CLASS, WHICH LIMITS IT TO INFINITY, I BELIEVE.

11           THE COURT:  IS THERE -- IS THAT AGREED?

12           MS. CHEUNG:  THAT'S TRUE, YOUR HONOR.

13       TO BE CLEAR, YOUR HONOR, WE ARE ACTUALLY NOT REPRESENTING

14   THAT WE USE MULTIPLE CONTRACTORS, BUT -- SUBCONTRACTORS, BUT

15   WE ARE TRYING TO BE CLEAR THAT THE CALLS MADE BY INFINITY ARE

16   THE ONLY ONES AT ISSUE IN THIS CASE.  AND IT IS TRUE THAT THE

17   SETTLEMENT CLASS LIMITS THE CALLS AT ISSUE TO THOSE MADE BY

18   INFINITY.

19           THE COURT:  SO GOING BACK THEN TO PAGE 8, WHAT DOES

20   IT MEAN THAT THEY ARE RELEASING NOT JUST ANYTHING THAT ARISES

21   OUT OF OR RELATES TO THE ISSUES BUT THAT IT DOES SO DIRECTLY

22   OR INDIRECTLY.

23       WHAT DOES "OR INDIRECTLY" MEAN?  IT SEEMS UNNECESSARILY

24   BROAD, "OR INDIRECTLY".  THERE IS A LOT OF CASE LAW THAT

25   DEFINES WHAT IT MEANS TO ARISE OUT OF OR RELATE TO.
```

```
1              (PAUSE IN THE PROCEEDINGS.)

2         MR. BALABANIAN:  I WISH I COULD HAVE A GOOD ANSWER

3    FOR THAT, BUT THE -- I DON'T SEE IT AS BROADENING IT ANY

4    FURTHER THAN WITH RESPECT -- THAN THE WORDS ARISE OUT OF OR

5    RELATE IN ANY WAY, IN WHOLE OR IN PART.

6       I DON'T KNOW THE SITUATION WHERE WE WOULD INDIRECTLY

7    RELEASE THE CLAIM.  I CAN'T EVEN THINK OF ONE.

8         MS. CHEUNG:  WE DO WANT TO MAKE CLEAR, YOUR HONOR,

9    THAT THE RELEASE DOES APPLY TO ANYTHING RELATED TO, WHICH IS

10   WHY PERHAPS THE PHRASE "DIRECTLY OR INDIRECTLY" IS JUST TO

11   EMPHASIZE IT HAS TO RELATE IN ANY WAY TO THE CALLS AT ISSUE.

12      SO THERE'S NO CONFUSION THAT IT RELATES ONLY DIRECTLY, IT

13   RELATES OR IT DOESN'T, BUT IT RELEASES EVERYTHING WITH RESPECT

14   TO THE CALLS AT ISSUE.

15        THE COURT:  IS THERE SOME REASON, GOING BACK TO YOUR

16   NOTICE, YOU ARE NOT GIVING THEM AN OPT-OUT FORM?

17        MR. BALABANIAN:  NO.  WE'VE -- I'VE DONE AN OPT-OUT

18   FORM IN ONE OTHER CASE.  SOMETIMES --

19        THE COURT:  WHAT IS THE CONCERN?  BECAUSE, AGAIN, YOU

20   SEEM TO BE MAKING IT AWFULLY DIFFICULT FOR SOMEONE TO OPT OUT.

21   I'M NOT SURE THAT THEY WOULD, BUT IF THEY DO NOTHING, THEN

22   THEY NOT ONLY GET -- THEN THEY NOT ONLY WAIVE THEIR RIGHT TO A

23   PAYMENT, BUT THEY'VE RELEASED ALL THEIR CLAIMS, AND THE

24   ABILITY TO OPT OUT HAS BEEN MADE ONEROUS AGAIN.

25      THEY ARE SUPPOSED TO PROVIDE YOU WITH CITATIONS.  I DON'T
```

1   EVEN KNOW WHAT THAT IS, AND SUPPORTING EVIDENCE.

2         **MR. BALABANIAN:**  THAT'S WITH RESPECT TO OBJECTIONS,

3   YOUR HONOR.  OPT OUTS ARE JUST A SIMPLE STATEMENT WHICH IS,

4   I'M A CLASS MEMBER IN THIS CASE AND I WANT TO OPT OUT OR

5   EXCLUDE MYSELF.

6      LIKE I SAID, I HAVE DONE ONE OTHER CASE WHERE WE DID AN

7   OPT-OUT FORM.  IT HAD ZERO EFFECT ON THE NUMBER OF OPT OUTS.

8   I THINK IT WAS ACTUALLY LOWER.  BUT IT IS NOT SOMETHING THAT

9   WE ARE AVERSE TO IN ANY WAY.

10     IT CAN BE CONSTRUED AS SOMEWHAT CONFUSING WHEN YOU'VE GOT

11  TWO CLAIM FORMS AND THEN YOU'VE GOT AN OPT-OUT FORM.  BUT

12  THERE'S NO REQUIREMENT TO SUBMIT EVIDENCE, OR ANYTHING LIKE

13  THAT.

14         **THE COURT:**  WHAT ARE CITATIONS?

15         **MR. BALABANIAN:**  OR CITATIONS.

16         **MS. CHEUNG:**  THERE IS NO REQUIREMENT TO OPT OUT.

17         **THE COURT:**  ALL RIGHT.  I HAVE MOVED ON.

18     THE OBJECTIONS TO THE SETTLEMENTS.  WHAT IS A CITATION?

19  YOU ARE TELLING THEM THEY HAVE TO PROVIDE CITATIONS.  I DON'T

20  KNOW WHAT THAT MEANS MYSELF, SO I'M NOT EXACTLY SURE HOW THEY

21  CAN COMPLY.

22         **MR. BALABANIAN:**  WELL --

23         **THE COURT:**  WHAT IS IT?

24         **MR. BALABANIAN:**  A CITATION TO LEGAL AUTHORITY THAT

25  SUPPORTS THEIR OBJECTION.

1    AND IN THIS CASE, IN ALL CASES NOWADAYS, WE KNOW WHO IS

2    GOING TO COME OUT OF THE WOODWORK AS FAR AS, YOU KNOW, THE

3    PROFESSIONAL OBJECTORS --

4         **THE COURT:**  AND YOU ARE EXPECTING THEM IN THIS CASE?

5         **MR. BALABANIAN:**  NO, NO, I'M NOT, ACTUALLY, BUT, YOU

6    KNOW, THEY HAVE A WAY OF TURNING UP HERE AND THERE.

7    WE CAN CLARIFY THAT IT SHOULD BE CITATION TO LEGAL

8    AUTHORITY, TO THE EXTENT THAT'S CONFUSING FROM THE COURT'S

9    PERSPECTIVE.  I UNDERSTAND THAT.

10        **THE COURT:**  OKAY.  MOVING TO YOUR SHORT FORM.  WE

11   HAVE THE SAME ISSUE AGAIN WITH INFINITY AND THE REFERENCE

12   THERE.

13   ONE THING I DIDN'T MENTION WITH RESPECT TO THE LONG CLAIM

14   FORM; PROBABLY NEED TO PUT IN THERE SOMEWHERE THAT IF THEY

15   HAVE MORE THAN FOUR CALLS -- WAIT, I SEE.

16   SO YOU HAVE TWO -- YOU HAVE SPACES FOR 12.  AND YOUR

17   CLIENT GOT 50.  YOU MAY WANT TO MAKE A NOTE THAT THEY CAN

18   ATTACH ADDITIONAL SHEETS, IF NECESSARY.

19        **MR. BALABANIAN:**  YES, YOUR HONOR.

20        **THE COURT:**  OKAY.  THE SAME ISSUES WITH RESPECT TO

21   THE POSTCARD, THAT IS, THE INFINITY/NUANCE ISSUE.

22        **MR. BALABANIAN:**  UH-HUH.

23        **THE COURT:**  WITH RESPECT TO THE PROSPECTIVE RELIEF,

24   AM I RIGHT THAT THERE IS NO REAL ENFORCEMENT MECHANISM HERE?

25   IF I'M GOING TO MAINTAIN JURISDICTION OVER THIS, WHAT AM I

1    SUPPOSED TO BE MAINTAINING JURISDICTION OVER?

2          **MR. BALABANIAN:**  THAT'S A FAIR POINT, OF COURSE.  IT

3    COMES UP A LOT.

4       IT WAS ACTUALLY JUDGE CORLEY BROUGHT THAT UP SORT OF IN A

5    DIFFERENT CONTEXT AS FAR AS THE PREVIOUS RELIEF THAT WAS

6    CONTEMPLATED UNDER THE SETTLEMENT, WHICH WE DID AWAY WITH

7    AFTER WE SETTLED WITH THE CARRIERS.

8       THERE'S NO ENFORCEMENT MECHANISM.  THERE'S NO, YOU KNOW,

9    PREVAILING PARTY GETS ATTORNEY'S FEES TYPE PROVISION, BUT I

10   WILL BE HONEST; IN A PRACTICAL SENSE, IF THEY JUST GO OUT

11   AFTER THIS SETTLEMENT IS DONE AND DO THE SAME THING AS FAR AS

12   MAKE PHONE CALLS BECAUSE THEY HAVE GOTTEN A NUMBER FROM A

13   CONSUMER THROUGH A TRANSACTION, THEY RUN THE RISK OF GETTING

14   SUED AGAIN.

15      LIKE WHY WOULD THEY DO THAT?  IT'S TRUE THERE IS NOT AN

16   ENFORCEMENT MECHANISM TO MAKE SURE THEY ARE DOING A BETTER JOB

17   OF KEEPING UP TO DATE THEIR CUSTOMER PROFILING PREFERENCES,

18   BUT THEY HAVE EVERY INCENTIVE TO DO THAT.  BECAUSE,

19   UNFORTUNATELY, YOU KNOW, DEPENDING ON HOW YOU LOOK AT IT, THEY

20   ARE GOING TO GET SUED AGAIN IF THEY REVERT TO THE SAME

21   PRACTICES.  I DON'T SEE THAT AS BEING AN ISSUE.

22          **THE COURT:**  JUST ASKING.

23          **MR. BALABANIAN:**  I UNDERSTAND.

24          **THE COURT:**  BACK ON THE LINK THAT YOU'RE GIVING THEM

25   TO THE PHONE NUMBERS.  ARE THEY GOING -- WHAT ARE THEY GOING

```
1   TO SEE WHEN THEY CLICK ON THAT LINK?

2            MR. BALABANIAN:  IT HASN'T BEEN SET UP FULLY YET, BUT

3   JUST A LISTING OF THE PHONE NUMBERS IS WHAT I UNDERSTOOD THEY

4   WOULD SEE.

5            THE COURT:  THEY ARE GOING TO SEE A LISTING OF WHICH

6   PHONE NUMBERS?

7            MR. BALABANIAN:  THE PHONE NUMBERS THAT CALLED THEM,

8   SO THE NUMBERS THAT THEY RECEIVED THE CALLS FROM.  BECAUSE IT

9   VARIED.

10            THE COURT:  AND IS THERE GOING TO BE A DESIGNATION

11   THAT THOSE PHONE NUMBERS WERE FROM INFINITY?  I'M JUST --

12            MR. BALABANIAN:  IT WOULDN'T MATTER.  IT'S IF YOU GOT

13   A CALL FROM THESE NUMBERS, THEN YOU GOT THE RIGHT CALL.  SO IT

14   WOULDN'T MATTER IF IT WAS FROM INFINITY OR NUANCE, THE LINK

15   WILL SAY IF YOU RECEIVED A CALL FROM ONE OF THESE NUMBERS --

16            THE COURT:  SO YOU WANT THEM TO GO GET THEIR OWN OLD

17   PHONE BILLS WITH ALL OF THEIR PHONE NUMBERS.

18            MR. BALABANIAN:  WELL, ALL OF THEIR PHONE BILLS WILL

19   SHOW THE NUMBERS.  THEY SHOW THE NUMBERS.

20            THE COURT:  I AM JUST TRYING TO UNDERSTAND MORE

21   PRECISELY WHAT YOU'RE ASKING THEM TO DO.

22        SO THEY ARE GOING TO GET THE -- THEY HAVE TO GO ON THEIR

23   OWN TO GET THEIR OWN PHONE BILLS.

24            MR. BALABANIAN:  YES.

25            THE COURT:  AND THEN THEY ARE GOING TO
```

1  CROSS-REFERENCE THEIR PHONE BILLS WITH THIS LINK THAT HAS ALL

2  THE PHONE NUMBERS FROM INFINITY; IS THAT WHAT THEY ARE

3  SUPPOSED TO DO?

4          **MR. BALABANIAN:**  YES.

5      I WILL JUST -- THE COURT DOESN'T NEED MORE NARRATIVE, BUT

6  I WILL SAY THAT WHEN WE EXPLAINED THE ISSUE TO JUDGE CORLEY,

7  HER RESPONSE WAS, "MAN, I WONDER IF I'M A CLASS MEMBER.  I

8  WOULD CERTAINLY LIKE TO GET A FEW THOUSAND DOLLARS FOR SOME

9  PHONE CALLS."

10      I THINK THAT'S -- THAT IS AN ABSOLUTELY TRUE STATEMENT,

11  JUDGE, BECAUSE THERE HAS NEVER BEEN A SITUATION WHERE A

12  SETTLEMENT HAS BEEN SET UP IN SUCH A WAY WHERE YOU ACTUALLY

13  COMPENSATE PEOPLE -- I'M TALKING ABOUT A TCPA SETTLEMENT --

14  COMPENSATE PEOPLE FOR AN EXACT HARM THEY SUFFERED, WHICH IS

15  NOT JUST A CALL, BUT A NUMBER OF CALLS.  AND THAT WAS THE

16  NATURE OF THIS CASE.

17      THAT'S WHY WE THINK IT'S A TERRIFIC SETTLEMENT.  AND BACK

18  TO MY EARLIER POINT THAT I DON'T EXPECT PROFESSIONAL

19  OBJECTORS, I WASN'T JUST SAYING THAT BECAUSE THEY ARE AFRAID

20  OF ME OR SOMETHING LIKE THAT, NO ONE IS AFRAID OF ME IN THIS

21  WORLD, BUT I THINK IT'S A TERRIFIC SETTLEMENT.  I REALLY DO.

22  AND I THINK THE COURT WILL HAVE EVERYTHING THAT IT NEEDS TO

23  MAKE THAT EVALUATION AT FINAL APPROVAL, TO THE EXTENT WE GET

24  PASSED TODAY.

25      AND SO WE WERE VERY HAPPY TO GET THIS RIDICULOUSLY LONG

```
 1    PROCESS DONE, AND WE APPRECIATED THE COURT'S PATIENCE WITH IT.
 2              THE COURT:  WHAT IS AN ESTABLISHED BUSINESS
 3    RELATIONSHIP WITH NUANCE?  WHAT DOES THAT MEAN?
 4              MS. CHEUNG:  SO, YOUR HONOR, UNDER THE RELEVANT
 5    REGULATIONS, IF SOMEONE PURCHASED A PRODUCT WITHIN 18 MONTHS
 6    OF RECEIVING A CALL, AN ESTABLISHED BUSINESS RELATIONSHIP IS A
 7    DEFENSE TO THE "DO NOT CALL" CLAIMS.
 8       SO THERE ARE CLAIMS POTENTIALLY BY PEOPLE WHO ARE SAYING
 9    WE WERE ON THE "DO NOT CALL" LIST AND WE SHOULD NOT HAVE
10    RECEIVED A CALL, HOWEVER, THE REGULATIONS ALLOW FOR CALLS TO
11    BE MADE IF YOU HAD A PURCHASE TRANSACTION WITH THE CALLER
12    WITHIN 18 MONTHS PRECEDING THE CALL.
13              THE COURT:  SO THAT'S WHAT YOU ARE GOING TO DO,
14    YOU'RE GOING TO CROSS-REFERENCE AGAINST YOUR SALE REFERENCE?
15              MS. CHEUNG:  FOR THOSE PEOPLE WHO ARE ASSERTING --
16    MAKING CLAIMS FOR THE "DO NOT CALL" PORTION OF THE CLAIMS.
17    THEY CAN EITHER CLAIM THAT THEY WERE ON THE "DO NOT CALL"
18    REGISTRY OR THEY CAN CLAIM THAT THEY RECEIVED CALLS ON THEIR
19    CELL PHONE WITHOUT CONSENT.
20              THE COURT:  WHAT IF THEY CLAIM BOTH?
21              MS. CHEUNG:  THEN THE ESTABLISHED BUSINESS
22    RELATIONSHIP DEFENSE DOES NOT APPLY TO THE CALLS MADE TO CELL
23    PHONES WITHOUT CONSENT --
24              MR. BALABANIAN:  RIGHT.
25              MS. CHEUNG:  -- IF THEY CLAIM BOTH.
```

```
1         THE COURT:  SO I'M LOOKING THEN AT YOUR SHORT FORM.

2      NUMBER 1 SAYS THAT YOU RECEIVED AT LEAST ONE CALL

3   REGARDING AN OFFER ON A PRODUCT, SO THAT PUT YOU INTO THE

4   CLASS PERIOD.  RIGHT?  SO THAT'S BUCKET ONE.

5      OKAY.  I SEE WHAT YOU ARE DOING.  OKAY.

6      NOW, ALL OF THIS, GOING BACK TO THE SETTLEMENT AGREEMENT,

7   7.2, THE DEFENDANTS CAN ELECT TO TERMINATE IF 200 PEOPLE

8   REQUEST TO EXCLUDE?

9         MR. BALABANIAN:  YES, YOUR HONOR.

10        THE COURT:  IT'S LIKE .05 PERCENT OF THE ANTICIPATED

11  CLASS?

12        MR. BALABANIAN:  THAT'S A HIGH NUMBER.  I'LL BE

13  HONEST, USUALLY YOU GET LIKE ONE OR TWO OPT OUTS.

14     AND I WILL GIVE THE COURT AN EXAMPLE.  IN MY NETFLIX

15  SETTLEMENT THERE WERE 62 MILLION CLASS MEMBERS.  THERE WERE

16  2,000 OPT OUTS.  THAT WAS DIRECT NOTICE TO EVERYBODY.

17     I EXPECT THERE WILL PROBABLY BE ABOUT FIVE OPT OUTS IN

18  THIS CASE, AND THAT'S BECAUSE SOME PEOPLE JUST AUTOMATICALLY

19  OPT OUT.  THEY DON'T LIKE THESE TYPES OF THINGS, AND THAT

20  HAPPENS.

21        THE COURT:  IN MY APPLE CASE, I HAD PRISONERS SENDING

22  NOTICES SAYING THEY WANTED TO OPT OUT.

23        MS. CHEUNG:  SOMETIMES WE GET OPT OUTS, YOUR HONOR,

24  BECAUSE THEY LIKE THE PRODUCT AND THEY ARE HAPPY TO GET THE

25  CALLS.
```

1        **MR. BALABANIAN:**  IT SOUNDS LIKE A JOKE, BUT IT'S

2   ACTUALLY TRUE.  WE GET OBJECTIONS WHERE THE OBJECTION IS ME

3   HAVING A BUSINESS MODEL OF SUING A COMPANY THAT THEY THINK IS

4   A TERRIFIC COMPANY.

5        **THE COURT:**  I GOT THOSE, TOO, IN THE *APPLE* CASE.

6        **MR. BALABANIAN:**  WELL, WE GOT A CRAZY OPT -- WE GOT A

7   CRAZY COMMUNICATION IN ONE SETTLEMENT FROM FIVE OF THE MOST

8   NOTORIOUS MASS MURDERERS IN THE LAST DECADE.

9        I WOULDN'T SAY MASS MURDERERS BECAUSE RICHARD REID, THE

10  SHOE BOMBER, THE AURORA SHOOTER IN COLORADO, AND SOME OTHERS,

11  THEY HAVE GONE AROUND AND FILED PAPERS IN CLASS ACTIONS ACTING

12  OUT, OR -- IT, YOU KNOW, WAS A LITTLE NERVE RACKING AT FIRST

13  TO GET A COMMUNICATION ON MY CASE FROM THOSE INDIVIDUALS, BUT

14  WE DID A LITTLE RESEARCH, AND THEY DID IT IN A BUNCH OF CASES.

15  IT WAS IN FRONT OF JUDGE DAVILA.

16       **THE COURT:**  THAT'S SURPRISING.  I HADN'T SEEN THAT

17  BEFORE.  I WON'T BE SURPRISED THE NEXT TIME.

18       OKAY.  DO WE HAVE A PROVISION IN HERE REGARDING THE TIMING

19  REQUEST FOR ATTORNEY'S FEES, ET CETERA?

20       **MR. BALABANIAN:**  YES.  IN ACCORDANCE WITH *BLUE TOOTH*,

21  YOUR HONOR, THE FEE REQUEST, I BELIEVE, WE HAVE IT SET WHERE

22  WE WOULD BE FILING OUR PAPERS TWO WEEKS IN ADVANCE OF THE

23  OBJECTION DEADLINE.

24       **THE COURT:**  OKAY.

25       **MR. BALABANIAN:**  WE WILL POST THAT TO THE SETTLEMENT

1    WEBSITE UPON FILING.

2            **THE COURT:**  ALL RIGHT.

3        WELL, I FEEL BETTER ABOUT IT THAN I DID WHEN WE STARTED.

4    I DO NEED THE NOTICES CLEANED UP.  TENTATIVELY INCLINED TO

5    APPROVE IT, BUT I DO WANT THOSE ISSUES ADDRESSED THAT I WENT

6    THROUGH IN TERMS OF THE ATTACHMENTS AND THE NOTICES TO THE

7    CLASS.

8            **MR. BALABANIAN:**  YES, YOUR HONOR.

9            **THE COURT:**  SO ONCE YOU DO THAT, THEN I WILL TAKE A

10   LOOK AT IT AGAIN.  MAKE SURE TO SEND IT TO ME IN AN EDITABLE

11   FORM.

12       IT'S ONE THING WHEN IT COMES FROM YOU.  IT'S QUITE ANOTHER

13   THING WHEN IT COMES FROM ME.  AND SOME OF THESE NOTICES ARE

14   VIEWED AS COMING FROM THE COURT.

15           **MR. BALABANIAN:**  UNDERSTOOD.

16           **THE COURT:**  WE WILL DO THAT.  AND APPRECIATE YOU

17   BEING UPFRONT ABOUT WHERE ALL THIS CAME FROM AND WHAT THE

18   ISSUES ARE.

19           **MR. BALABANIAN:**  WELL, WE, AGAIN, I HAVE TO SAY, WE

20   APPRECIATE THE COURT'S PATIENCE.  THIS CASE HAS BEEN STAYED

21   FOR A LONG, LONG TIME.  AND I KNOW --

22           **THE COURT:**  I KNOW.  LET ME TELL YOU, WHEN, AS I SAT

23   UP HERE NOT BEING A HUNDRED PERCENT SATISFIED GIVEN WHAT I WAS

24   READING, I WAS ALSO NOT VERY HAPPY ABOUT THE PROSPECT OF NOT

25   HAVING A SETTLEMENT EITHER, GIVEN HOW LONG THIS THING HAS BEEN

1    AROUND.

2              **MR. BALABANIAN:**  UNDERSTOOD.

3        I WOULD LIKE TO ACKNOWLEDGE JUDGE LARSON AND JUDGE

4    CORLEY'S CONTRIBUTION.  THEY WERE INTEGRAL TO THE PROCESS AND

5    COULDN'T HAVE GOT IT DONE WITHOUT THEM.

6              **THE COURT:**  I WILL LET THEM KNOW THAT.  I KNOW JUDGE

7    LARSON WORKED FOR A VERY LONG AND HARD TIME, AND THEN WAS GLAD

8    TO BRING IN JUDGE CORLEY TO CLOSE IT UP.

9              **MS. CHEUNG:**  YES.  ABSOLUTELY TRUE.

10             **THE COURT:**  OKAY.  GOOD ENOUGH.

11             **MS. MCCLENDON:**  THANK YOU.

12             **MR. BALABANIAN:**  THANK YOU, YOUR HONOR.

13             **MS. CHEUNG:**  THANKS VERY MUCH, YOUR HONOR.

14             **MR. BALABANIAN:**  THANK YOU FOR YOUR TIME.

15             **THE COURT:**  THANK YOU.

16             (PROCEEDINGS CONCLUDED AT 4:06 P.M.)

17                    **<u>CERTIFICATE OF REPORTER</u>**

18        I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

19    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

20    CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

21    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

22

23                    _Diane E. Skillman_

24          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

25               THURSDAY, APRIL 2, 2015