Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

[Additional counsel appear on signature page.]

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HOPWOOD, individually and on behalf of all others similarly situated, | Case No. 4:13-cv-02132-YGR |
| *Plaintiff,* | **PLAINTIFF'S RENEWED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
| *v.* | |
| NUANCE COMMUNICATIONS, INC., a Delaware corporation, and INFINITY CONTACT, INC., an Iowa corporation, | Judge: Hon. Yvonne Gonzalez Rogers<br>Date: May 12, 2015<br>Time: 2:00 p.m. |
| *Defendants.* | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on May 12, 2015 at 2:00 p.m., or at such other time as may be set by the Court, Plaintiff William Hopwood will appear, through counsel, before the Honorable Yvonne Gonzalez Rogers, or any Judge sitting in her stead, in Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California 94612, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the proposed, revised class action settlement reached between himself and Defendants Nuance Communications, Inc. and Infinity Contact, Inc.

Plaintiff Hopwood's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Parties' proposed, revised class action settlement agreement and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

**WILLIAM HOPWOOD**, individually and on behalf of all others similarly situated,

Dated: April 24, 2015

By: /s/ Rafey S. Balabanian
     One of Plaintiff's attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 2

        A.      Plaintiff's Allegations ......................................................................... 2

        B.      The Litigation ....................................................................................... 4

        C.      The Related Insurance Litigation ...................................................... 5

        D.      The Parties' Settlement Discussions ................................................. 5

        E.      The Stipulation to Dismiss Plaintiff Martinez's Claims ................. 7

        F.      Plaintiff's Initial Motion for Preliminary Approval, the Court's
                Concerns, and the Parties' Modifications to the Settlement
                Agreement and Notice Documents ..................................................... 7

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ............................. 8

        A.      Class Definition .................................................................................... 8

        B.      Settlement Fund ................................................................................... 8

        C.      Monetary Relief ................................................................................... 9

        D.      Prospective Relief ................................................................................ 9

        E.      Class Representative Incentive Award .............................................. 9

        F.      Attorneys' Fees and Costs .................................................................. 9

        G.      Release ................................................................................................. 10

IV.     THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR
        SETTLEMENT PURPOSES ....................................................................... 10

        A.      The Proposed Class Meets the Requirements of Rule 23 ............... 10

                1.      The proposed Settlement Class is sufficiently numerous ................... 11

                2.      Settlement Class members share common questions of law
                        and fact ............................................................................................ 12

                3.      Plaintiff's claims are typical of the Settlement Class members'
                        claims ............................................................................................... 13

                4.      Plaintiff and Class Counsel will adequately represent the
                        Settlement Class ............................................................................... 14

                5.      The proposed Settlement Class satisfies the requirements of Rule
                        23(b)(3) ............................................................................................ 15

             **i.**       *Common questions of law and fact predominate* ........................ 16

             **ii.**      *A class action is the superior method of resolving the controversy* ................................................................................ 16

**V.**     **PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL** ......... 17

**VI.**    **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL** ......... 18

    **A.**    **The Settlement is the Product of Arm's-Length, Informed, and Non-Collusive Negotiations Amongst Experienced Counsel** ........................ 19

    **B.**    **The Settlement is Clear of Defects and Provides Real, Immediate Relief** ..... 20

    **C.**    **The Settlement Treats Settlement Class Members Fairly** ............................... 22

    **D.**    **The Settlement Falls Squarely Within the Range of Possible Approval** ........ 23

**VII.**   **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN** ............... 24

**VIII.**  **CONCLUSION** ........................................................................................................ 26

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**:

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 10, 11, 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................... 24

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) ........................................ 16

*Mims v Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ......................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................................... 12

**United States Circuit Court of Appeals Cases**:

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ............................................ 11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................................... 19

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ....................................... 12

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) .................................................. 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................... 13, 14, 15, 19

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................... 20

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ................................................... 19

*Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) ......................................... 11 n.4

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ................................................. 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........................................... 24

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982)................................................................................ 19

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ....................................................... 12

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ..................................... 3, 18

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .................................. 13, 16, 17

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) .................................... 16

*Zinser v. Accufix Research Institute*, 253 F.3d 1180 (9th Cir. 2001) ........................................ 17

**United States District Court Cases**:

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ..................................... 13, 14

*Arthur v. Sallie Mae, Inc.*, No. 10-cv-198 (W.D. Wash. 2012) ............................................ 2 n.2

*Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205 (C.D. Cal. Jan. 8, 2014) ........................ 22

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ...................... 11 n.5

*Ching v. Siemens Indus., Inc.*,
    No. 11-cv-04838, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .................................. 23

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ............................... 23

*Cordy v. USS-Posco Indus.*,
    No. 12-cv-00553, 2014 WL 212587 (N.D. Cal. Jan. 17, 2014) .................................. 24

*Ellison v. Steven Madden, Ltd.*, No. 11-cv-5935 (C.D. Cal. 2012)........................................ 15, 18

*Flores v. Velocity Exp., Inc.*,
    No. 12-cv-05790, 2013 WL 2468362 (N.D. Cal. June 7, 2013) .................................. 10

*Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485 (C.D. Ill. 2007) ......................... 11 n.4

*Grannan v. Alliant Law Grp., P.C.*,
    No. 10-cv-02803, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) .................................. 16

*Gutierrez, et al. v. Barclays Grp., et al.*, No. 10-cv-1012 (S.D. Cal. 2012) ............................ 2 n.2

*Harris v. Vector Mktg. Corp.*,
    No. 08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................. 19

*Heffelfinger v. Elec. Data Sys. Corp.*,
    No. 07-cv-00101, 2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) .................................. 10

*In re Google Referrer Header Privacy Litig.*,
    No. 10-cv-04809, 2014 WL 1266091 (N.D. Cal. Mar. 26, 2014).................................. 12

*In re High-Tech Employee Antitrust Litig.*,
    No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)................................... 19

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261 (S.D. Cal.) .............................. 2 n.2

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
    282 F.R.D. 486 (C.D. Cal. 2012) ................................................................... 17

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) ............................... 12

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................... 19, 20, 23

*In re TD Ameritrade Account Holder Litig.*,
    No. 07-cv-2852, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) .................................. 18

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008)................................................... 15

*Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142 (N.D. Cal. 2012) ................................ 2 n.2

*Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722 (N.D. Cal. 2012)............................... 18, 21 n.8

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ......................... 11 n.5

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) .............................................. 13

*Lee v. Stonebridge Life Ins. Co.*, No. 11-cv-43 (N.D. Cal.) .......................................................... 15

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344 (N.D. Ill. 2011) .................. 21 n.8

*Ma v. Covidien Holding, Inc.*,
  No. 12-cv-02161, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................... 24

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) .......................................... 14

*Newman v. AmeriCredit Fin. Servs., Inc.*, No. 11-cv-3041 (S.D. Cal.) .................................. 21, 22

*Onley v. Job.com, Inc.*,
  No. 12-cv-01724, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013)............................. 11 n.4

*Pimental, et al. v. Google Inc., et al.*, No. 11-cv-2585-YGR (N.D. Cal.)........................ 13, 15, 18

*Roberts v. Paypal, Inc.*,
  No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013) ...................................... 22

*Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.)..................................... 18

*Ryabyshchuck v. Citibank (S.D.) N.A.*,
  No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) ...................................... 22

*Satchell v. Fed. Exp. Corp.*,
  No. 03-cv-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................................... 20

*Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010) .............. 18, 21 n.8

*Simon v. Toshiba Am.*,
  No. 07-cv-06202, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) .................................... 23

*State of California v. eBay, Inc.*,
  No. 12-cv-05874, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ................................... 19

*The Phoenix Insurance Company, et al. v. Infinity Contact, Inc., et al.*,
  No. 13-cv-5905-BLF (N.D. Cal.). ................................................................................... 5

*Tijero v. Aaron Bros.*,
  No. 10-cv-01089, 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013)............................... 19, 20

*Villegas v. J.P. Morgan Chase & Co.*,
  No. 09-cv-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................... 20, 23, 24

*Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484 (N.D. Ill. 2008).......................... 21 n.8

**Statutes & Miscellaneous**:

47 C.F.R. § 64.1200 ..................................................................................................................... 3

47 U.S.C. § 227 ................................................................................................................... *passim*

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) ....................... 19, 24

1

Charles Wright, et al., Federal Practice and Procedure (3d ed. 2005) ......................................... 17

2

Fed. R. Civ. P. 23 .................................................................................................................*passim*

3

*In re Dish Network*, CG11-50, 28 F.C.C.R. 6574 (F.C.C. May 9, 2013) ...................................... 4

4

Manual for Complex Litigation (Fourth) (2004) ............................................................. 10, 18, 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.      INTRODUCTION

On March 31, 2015, the Court held a preliminary approval hearing to determine whether the Parties' proposed class action settlement was within the range of possible approval. During the hearing, the Court raised concerns regarding the phrasing of certain terms within the Agreement itself and the need for additional clarity in certain aspects of the proposed notice documents. Accordingly, on April 2, 2015, the Court entered an Order specifically identifying each of those concerns and instructing the Parties on how to modify their settlement documents to address them. (*See* Dkt. 98 [the "April Order"].)

As it relates to the Settlement Agreement, the Court directed the Parties to, *inter alia*, revise the terms regarding (i) the amount of Settlement Administration Expenses, (ii) the identity of the party placing the alleged telephone calls at issue, (iii) the timing of the individual settlement payments to Settlement Class Members with Approved Claims, (iv) the timing of any challenges to any Settlement Class Member claims, (v) the timing of any amendments to the settlement agreement itself, and (vi) on whose behalf certain representations and warranties are made. Using the Court's Order as guidance, the Parties have revised Provisions 1.26, 1.31, 1.36, 1.39, 2.2, 6.5, 8.1, 8.3(f), 11.2, 11.13, and 11.16 of the Settlement Agreement to address each of the Court's stated-concerns. (*See* Stipulation and Agreement of Settlement, attached hereto as Exhibit 1.)[1]

As to the proposed notice documents, the Court directed the Parties to, *inter alia*, include further detail regarding (i) the fact that the telephone calls at issue were allegedly made by Defendant Infinity on behalf of Nuance, (ii) the total number of Settlement Class Members, (iii) their rights to object solely to proposed Class Counsel's request for an award of attorneys' fees, (iv) their rights to claim either a flat payment of up to $170 or $65 per call, and (v) whether inclusion of so-called "Personal Claim Numbers" with the submission of a claim form is required. (*See* April Order at 2–3.) The Parties have since made those changes as well, as reflected in the revised notice documents attached as Exhibits 1-4 to the Settlement Agreement.

---

[1]      For ease of reference, in addition to attaching a copy of the Parties' fully-executed revised Agreement (and its exhibits), Plaintiff has also attached redlined copies of the original Agreement and its exhibits, which clearly identify each of the specific changes the Parties made. (*See* Redline Settlement Agreement, attached hereto as Exhibit 2.)

With those revisions having been made to the proposed Settlement Agreement and notice documents, and given the substantial relief afforded to the Settlement Class, the Court should have no doubt now that the proposed Settlement is fundamentally fair, reasonable and adequate, and well within the range of possible approval. Indeed, as Plaintiff previously explained, this Settlement is one of the first to provide class members the opportunity to recover for TCPA claims based upon the number of allegedly offending calls they received. And beyond that, the amount of the individual payments available to Settlement Class Members here—flat payments of up to $170 or $65 per call—is more than what has been traditionally recovered under similar TCPA settlements.[2]

For all of these reasons and as described in detail below, Plaintiff Hopwood respectfully requests that the Court grant the instant motion, certify the Settlement Class for settlement purposes, appoint him as Class Representative and his counsel as Class Counsel, approve the Notice Plan, and preliminarily approve the Settlement.

## II.   BACKGROUND

### A.   Plaintiff's Allegations

Nuance is a multinational computer software company that makes a variety of software applications for consumers and businesses, including popular speech recognition and document management products such as Dragon and PaperPort. (Dkt. 92 ¶ 1.) In an effort to promote and sell its products, Nuance engaged Infinity, a telemarketing services provider, to make thousands of allegedly unsolicited phone calls to consumers' cell phones. (*Id.* ¶¶ 2–4, 15.)

Plaintiff received several calls to his cell phone from Infinity promoting Nuance's products between November 2012 and February 2013. (*Id.* ¶¶ 25–29.) Plaintiff alleges he and other putative class members did not expressly consent to receive calls, that his cellular telephone number was

---

[2] That is, where (like here) settlement class members are in a direct relationship with the defendant, typical per class member recoveries range from less than $25 in cash or vouchers to at most a $100 payment. *See, e.g.*, *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher or $15 cash to each class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198, Dkt. 266 (W.D. Wash. 2012) (providing for a $20-40 cash payment to each class member); *Gutierrez, et al. v. Barclays Grp., et al.*, No. 10-cv-1012, Dkt. 58 (S.D. Cal. 2012) (providing for a $100 cash payment to each class member).

listed on the national Do Not Call Registry, and that while Plaintiff had previously purchased products from and registered those products with Nuance, he expressed his "communication preference[]" as email, not phone. (*Id.* ¶¶ 18, 23–24, 39–40, 51.)

Plaintiff alleges that Defendants' aggressive telemarketing campaign violated two provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a consumer protection statute enacted more than two decades ago to protect the privacy of individuals on their telephones. The first provision makes it unlawful to place calls to cellular telephones without the recipient's consent using equipment the statute defines as an automatic telephone dialing system, or "ATDS":

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party ) using any automatic telephone dialing system . . . to any telephone number assigned to . . . a cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)–(B). The second provision makes it unlawful to place more than one telephone call within a 12-month period to persons whose cellular telephone numbers are listed on the national Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c), (e). According to Plaintiff, Defendants violated the TCPA when (i) they used hardware and software falling under the statutory definition of an ATDS to place the calls at issue (Dkt. 92 ¶¶ 19, 30, 41), and (ii) placed calls to persons whose cellular telephone numbers are listed on the national Do Not Call Registry. (*Id.* ¶¶ 51–57.)

Defendants' intrusive calls, Plaintiff alleges, are exactly the type contemplated by the TCPA, which was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy." *Id.*; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that the statute's purpose is to protect significant privacy interests). Reflecting the importance of telephone subscribers' privacy, the TCPA sets statutory damages in

the amount of $500 per violation (which may be trebled if conduct is willful) and also provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C); 47 U.S.C. § 227(c)(5)(B). Today, in an age where companies frequently engage third-party telemarketers to generate business, both courts and the Federal Communications Commission (the regulatory body charged with interpreting the statute) have held that defendants can be held responsible for calls made by third-party callers under vicarious liability principles. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–79 (9th Cir. 2014); *In re Dish Network*, CG11-50, 28 F.C.C.R. 6574 (F.C.C. May 9, 2013). Based on the calls that Infinity allegedly placed on Nuance's behalf, Plaintiff seeks both monetary and injunctive relief under the TCPA against both Defendants.

**B.     The Litigation**

Plaintiff Hopwood, along with former plaintiff Teresa Martinez, initiated this action against Nuance on May 8, 2013. (Dkt. 1.) Plaintiff's initial complaint alleged that Nuance violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), when it made unsolicited calls to his cellular telephone without his consent using an ATDS. (Dkt. 1, ¶¶ 45–50.) The complaint also alleged that Nuance's repeated telemarketing calls to residential landlines and cellular telephones violated the TCPA's provisions relating to the national Do Not Call Registry, 47 U.S.C. § 227(c)(5). (*Id.* ¶¶ 54–63.)

Plaintiff and Nuance exchanged initial disclosures in October 2013, and based on information Nuance provided, Plaintiff filed a First Amended Complaint naming Infinity as an additional party-defendant. (Dkt. 31 ¶¶ 50–55, 59–68.) The Parties thereafter engaged in formal discovery with Hopwood and Martinez, Nuance and Infinity all having propounded and responded to their respective written discovery requests, including the production of certain relevant and responsive documents. (Declaration of Rafey S. Balabanian ["Balabanian Decl."] ¶ 19, a copy of which is attached as Exhibit 3.) On December 16, 2013, Infinity answered Plaintiff's first amended complaint (Dkt. 46), and Nuance moved to dismiss it. (Dkt. 47.) In addition to arguing that plaintiff Martinez lacked standing and failed to state a claim, Nuance argued that it was exempt from liability under the TCPA because it had an established business relationship with Plaintiff Hopwood. (*Id.* at 3–4.) Plaintiff countered that recent case law and FCC decisions establish that the exemption does not apply to calls made to cellular telephones. (Dkt. 54.) The

issue, however, remains unresolved, as the Parties requested that the fully briefed motion not be ruled upon given their ongoing settlement discussions. (Dkts. 47, 54, 57.)

### C.     The Related Insurance Litigation

On December 19, 2013, and in response to Plaintiff's Action, The Phoenix Insurance Company and The Travelers Indemnity Company brought a coverage action against Nuance and Infinity seeking a declaratory judgment that the insurers had no obligation under policies issued to Infinity to defend or otherwise cover any claims for the allegedly unauthorized calls at issue in the Action. *See The Phoenix Insurance Company, et al. v. Infinity Contact, Inc., et al.*, No. 13-cv-5905-BLF (N.D. Cal.). Defendants counter-claimed, seeking, among other forms of relief, a declaratory judgment that The Phoenix Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of Connecticut, and Travelers Property Casualty Company of America (collectively, the "insurance carriers" or "insurers") have a duty to defend and cover the claims in the Action.

### D.     The Parties' Settlement Discussions

On December 18, 2013, the Parties participated in a formal mediation session with the Honorable James Larson (ret.) of JAMS, a former Magistrate Judge in this District and mediator with extensive experience in resolving class action disputes. (Balabanian Decl. ¶ 3.) Although the Parties were unable to reach an agreement that day, they exchanged a great deal of information and made substantial progress towards settlement. (*Id.*) As such, they agreed to convene a subsequent mediation session with Judge Larson on February 26, 2014. (*Id.*) In the interim, the Parties also continued to exchange information relevant to both their substantive positions on the claims and defenses at issue, as well as the potential resolution of the Action. (*Id.* ¶ 4.) While they were again unable to reach an agreement during the second mediation session, with Judge Larson's ongoing assistance, they continued to engage in arm's-length negotiations in the months that followed and ultimately executed a memorandum of understanding in July 2014, which included, *inter alia*, Defendants' agreement to assign certain rights under Infinity's insurance policies to Plaintiff for the benefit of the Settlement Class. (*Id.*)

As the Parties worked through drafting the actual settlement agreement, several points of

1   contention arose, one of which related to the assignment to Plaintiff and the Class under Infinity's

2   insurance policies. (*Id.* ¶ 5.) In particular, Infinity reached a settlement with its insurance carriers

3   that Plaintiff believed undercut his and the Settlement Class's assignment rights. (*Id.*)  At that

4   point, settlement discussions once again began to break down.

5          In October 2014, the Parties reached an impasse, and Plaintiff requested a return to

6   litigation. (*See* Dkt. 70.) At that point, the Court ordered that the Parties appear for a case

7   management conference to explain the status of the case. (Dkt. 72.) The Parties appeared before

8   the Court and explained their respective positions on the outstanding issues and their interest in

9   proceeding with a settlement conference before Magistrate Judge Corley. (Dkt. 79.) Accordingly,

10  the Court referred the Parties and Infinity's insurance carriers to a mandatory settlement

11  conference with Judge Corley. (Dkt. 80.)

12         On November 18, 2014, the Parties and insurers appeared before Judge Corley for their

13  first telephonic settlement conference, during which they discussed their respective positions

14  related to any assignment of rights under the relevant insurance policies. During the conference,

15  Judge Corley directed the Parties to exchange the relevant terms of their settlement agreements—

16  i.e., the proposed class settlement of this Action and the agreement reached in the *Phoenix* action.

17  (Balabanian Decl. ¶ 8.)

18         On December 12, 2014, counsel for Hopwood, Nuance, and Infinity appeared before Judge

19  Corley in San Francisco for an in-person settlement conference. (Dkt. 83.) With the assistance of

20  Judge Corley, the Parties made progress in their discussions, including with respect to certain non-

21  insurance terms for which Judge Corley requested clarification, but were ultimately unable to

22  resolve their differences. As a result, Judge Corley set a further telephonic settlement conference

23  with Defendants' counsel for January 5, 2015 (Dkt. 83), and thereafter, another settlement

24  conference with all Parties and the insurance carriers for January 20, 2015. (Dkts. 84, 85.)

25         Between the settlement conference on January 5, 2015 and the settlement conference

26  scheduled for January 20, 2015, the Parties and insurance carriers continued the discussions that

27  had begun with Judge Corley and agreed that in lieu of assigning any rights under the policies, the

28  insurance carriers would instead contribute $245,000 in cash directly to the Settlement Fund.

(Balabanian Decl. ¶ 10.) Thus, on January 20, 2015, the Parties informed Judge Corley that they resolved the outstanding assignment issues and discussed the timeframe for finalizing a written settlement agreement in the Action and seeking preliminary approval from the Court. (*Id.* ¶ 11.)

### E.   The Stipulation to Dismiss Plaintiff Martinez's Claims

Throughout their settlement negotiations, the Parties engaged in extensive formal and informal discovery, both voluntarily and at the request of the Court. (Balabanian Decl. ¶ 19.) Based on information received during the settlement process, former plaintiff Martinez determined to dismiss her individual claims against Defendants with prejudice, and the claims of the putative class related to calls to landline numbers without prejudice. (Dkt. 90.) Neither Martinez nor her counsel received any payment in connection with the dismissal. (*Id.*) Plaintiff Hopwood then filed his Second Amended Complaint, which alleges claims related only to alleged calls made to cellular telephones. (Dkt. 92.)

### F.   Plaintiff's Initial Motion for Preliminary Approval, the Court's Concerns, and the Parties' Modifications to the Settlement Agreement and Notice Documents

On February 18, 2015, Plaintiff Hopwood filed his original motion for preliminary approval of the Parties' proposed class action settlement. (Dkt. 95.) On March 31, 2015, the Court held a hearing on the motion to determine whether the settlement was fair, reasonable and adequate and whether preliminary approval should be granted. (*See* Dkt. 97; April Order.) During the hearing, the Court expressed concern about certain aspects of the agreement and proposed notice, and thus requested that the Parties make revisions to their proposed agreement and notice documents. (*See* April Order.)

As it relates to the Settlement Agreement, the Court directed the Parties to, *inter alia*, revise terms regarding (i) the amount of Settlement Administration Expenses, (ii) the identity of the party placing the alleged telephone calls at issue, (iii) the timing of the individual settlement payments to Class Members with Approved Claims, (iv) the timing of any challenges to claims submitted by Settlement Class Members, (v) the timing of any amendments to the settlement agreement itself, and (vi) on whose behalf certain representations and warranties are made. (April Order at 1–2.) With the Court's Order for guidance, the Parties have revised Provisions 1.26, 1.31,

1.36, 1.39, 2.2, 6.5, 8.1, 8.3(f), 11.2, 11.13, and 11.16 of their Settlement Agreement to address each of the Court's identified concerns. (*See* Exhibit 1; April Order.)

As to the proposed notice documents, the Court directed the Parties to, *inter alia*, include further detail regarding (i) the fact that the telephone calls at issue were allegedly made by Defendant Infinity on behalf of Nuance, (ii) the total number of Settlement Class Members in question, (iii) their rights to object solely to proposed Class Counsel's request for an attorneys' fee award, (iv) their rights to claim either a flat payment of up to $170 or a payment of up to $65 per call under the Settlement, and (v) the optional nature of including "Personal Claim Numbers" on claim forms submitted.[3] (*See* April Order at 2–3.) The Parties have made those changes as well, which are reflected in the revised notice documents attached as Exhibits 1-4 to the Settlement Agreement.

## III.   THE TERMS OF THE SETTLEMENT AGREEMENT

A copy of the settlement agreement ("Settlement Agreement" or "Agreement") is attached hereto as Exhibit 1. The key terms of the Agreement are briefly set forth below:

**A.    Class Definition:** The Settlement Class is defined as all individuals who received a call on a United States wireless telephone number from Infinity for the purpose of offering one or more Nuance products between May 8, 2009 and the date of the Court's preliminary approval of the Settlement Agreement. (Agreement ¶ 1.33.)

**B.    Settlement Fund:** Defendants and their insurers have agreed to establish a Settlement Fund totaling $9,245,000 (the "Settlement Fund" or "Fund"). (*Id.* ¶ 1.36.) The Fund

---

[3]    With respect to the claim forms, the Court instructed the Parties to "indicate [in both forms that] the 'Personal Claim Number' is optional, consistent with the Settlement Agreement." (April Order at 3.) For its part, the Settlement Agreement provides that the Personal Claim Number is optional for Settlement Class Members who received neither a postcard or e-mail notice. (*See* Agreement ¶¶ 1.17, 1.37.)  For those Settlement Class Members who do receive postcard or e-mail notice, the Personal Claim Number is included in the notice and, per the Settlement Agreement, should be included on the claim form. (*See id.*) To be clear, the Personal Claim Number is intended to streamline the claims administration process and protect against potentially fraudulent claims (e.g., the settlement administrator can use it to ensure that submitted claims are paid to the correct person). (Balabanian Decl. ¶ 14.) Notwithstanding and irrespective of whether a Personal Claim Number is included, all claim forms submitted will be reviewed by the Settlement Administrator to determine whether the claim should be approved for payment, and will not be rejected simply because they lack a Personal Claim Number. (*See* Agreement ¶ 6.2.)

shall be used to pay (1) Settlement Class member claims, (2) notice and administration costs, (3) attorneys' fees and costs, and (4) a class representative incentive award. (*Id.*)

**C.     Monetary Relief:** Each Settlement Class member who submits a valid claim form will have the option of receiving from the Settlement Fund either (1) a flat payment of $170 or (2) a payment of $65 for each violative call received. (*Id.* ¶ 2.2(a).) In the event that the total amount claimed by Settlement Class members exceeds the amount remaining in the Settlement Fund after payment of notice and administration costs, attorneys' fees and unreimbursed case expenses, and a class representative incentive award, each Settlement Class member's recovery will be reduced *pro rata*. (*Id.*)

**D.     Prospective Relief:** Defendants have agreed (i) to perform bi-annual audits of their procedures to ensure that they do not place autodialed marketing calls to the cellular phones of Nuance customers without first receiving prior express consent and to correct any deficiencies identified in the audits, and (ii) to perform bi-annual audits of their procedures to ensure they do not place marketing calls to cellular phone numbers on the national Do Not Call Registry without first receiving prior express consent. (*Id.* ¶ 2.3.) Defendants have agreed that these procedures shall remain in effect for two years after the effective date provided for in Section 1.11 of the Agreement.

**E.     Class Representative Incentive Award:** In recognition of his efforts on behalf of the Settlement Class, Defendants have agreed not to oppose a request for an incentive award for Hopwood of up to $1,500 (in addition to any relief to which he is otherwise entitled by virtue of his Settlement Class membership), to be paid from the Settlement Fund. (*Id.* ¶ 9.3.) To the extent this Court orders an incentive award of less than $1,500, the difference shall be distributed *pro rata* to Settlement Class members who have submitted a valid claim. (*Id.*)

**F.     Attorneys' Fees and Costs:** Subject to the Court's approval, Defendants have agreed to pay Class Counsel attorneys' fees and to reimburse reasonable expenses from the Settlement Fund in an amount up to $2.25 million. (*Id.* ¶ 9.1.) To the extent this Court orders attorneys' fees and costs in an amount less than $2.25 million, the difference shall be distributed *pro rata* to Settlement Class members who have submitted a valid claim. (*Id.*)

1     **G.     Release:** In exchange for the relief described above, Settlement Class members

2     agree to release all claims arising out of or relating in any way to the cell phone calls made to them

3     by or on behalf of Nuance, including calls made by Infinity, for the purpose of offering one or

4     more Nuance products between May 8, 2009 and the date of preliminary approval. (*Id.* ¶¶ 1.26,

5     1.27, 3.)

6     **IV.     THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT
        PURPOSES.**

7

8     Before granting preliminary approval, the Court must determine that the proposed

9     Settlement Class is appropriate for certification by ensuring that it meets the requirements of Rule

10    23. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); Manual for Complex

11    Litigation (Fourth) § 21.633 (2004). Although the proposed Settlement Class definition differs

12    from those which Plaintiff Hopwood originally submitted in his amended complaint, an amended

13    class definition is permissible in conjunction with a motion to certify. *See Heffelfinger v. Elec.*

14    *Data Sys. Corp.*, No. 07-cv-00101, 2008 WL 8128621, at *10 (C.D. Cal. Jan. 7, 2008) (noting that

15    "the court has discretion either to redefine the class or to afford plaintiffs an opportunity to do so"

16    and collecting cases), *aff'd and remanded*, 492 F. App'x 710 (9th Cir. 2012); *Flores v. Velocity*

17    *Exp., Inc.*, No. 12-cv-05790, 2013 WL 2468362, at *8 (N.D. Cal. June 7, 2013) (granting motion

18    for conditional class certification in FLSA collective action based on amended class definition).

19    As explained below, the Settlement Class described in the amended definition is well suited for

20    certification.

21    **A.     The Proposed Class Meets the Requirements of Rule 23.**

22    Plaintiff respectfully requests that the following class (the "Settlement Class") be certified

23    for settlement purposes:

24        All individuals who received a call on a United States wireless telephone number
          from Infinity for the purpose of offering one or more Nuance products between
25        May 8, 2009 and the date of the Court's preliminary approval of the Agreement.[4]

26    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [4]     The proposed Settlement Class has been revised from what was included in the first
27    amended complaint. In particular, given the dismissal of former plaintiff Martinez's claims related
      to calls to her residential landline in violation of the TCPA's Do-Not-Call provisions, the amended
28    class definition properly reflects only those claims which Plaintiff Hopwood is poised to
      represent—i.e., alleged calls to cellular telephone numbers made with an ATDS (in violation of 47
      U.S.C. § 227(b)(1)(iii)) and alleged calls to cellular telephone numbers listed on the national Do

To be certified, a proposed class must satisfy the criteria set forth in Federal Rule of Civil

Procedure 23(a) and fit into one of the three categories described in Rule 23(b). *Amchem*, 521 U.S.

at 614; *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted).

Rule 23(a) requires that (1) the proposed class is so numerous that joinder of all individual class

members is impracticable (numerosity), (2) there are questions of law or fact common to the

proposed class (commonality), (3) plaintiff's claims are typical of those of the class (typicality),

and (4) plaintiff and his counsel will adequately protect the interests of the class (adequacy). Fed.

R. Civ. P. 23(a)(1)–(4). In addition, where, as here, certification is sought under Rule 23(b)(3), the

proponent of certification must show that (1) the common questions of law or fact predominate

over questions affecting only individual class members (predominance), and (2) that a class action

is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P.

23(b)(3). Here, the proposed Settlement Class satisfies all of these requirements and should

therefore be certified.[5]

### 1. The proposed Settlement Class is sufficiently numerous.

The first requirement of Rule 23(a)—numerosity—is satisfied where "the class is so

---

Not Call Registry (in violation of 47 U.S.C. 227(c)(5)).

The Settlement Class definition also avoids any "fail-safe" class issues—i.e., where class membership depends on liability being established. *See generally Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) (describing a "fail-safe" class as one in which "the class itself is defined in a way that precludes membership unless the liability of the defendant is established"); *see also Onley v. Job.com, Inc.*, No. 12-cv-01724, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (quoting *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007)) (internal quotations omitted) (describing a fail-safe class as one in which "class members either win or are not in the class"). The *Onley* matter, a similar TCPA class action, is particularly instructive here. In *Onley*, the plaintiff originally proposed a class limited to persons who received telephone calls from the defendant without their consent. *See* 2013 WL 5476813, at *11. After recognizing that the "lack of consent" requirement in the class definition posed a fail-safe problem, the court allowed the plaintiff to amend the class definition to avoid the issue. *Id.*

[5] In addition to the Rule 23 requirements, some courts require that "the class must be adequately defined and clearly ascertainable before a class action may proceed." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (collecting cases and requiring that "it must be administratively feasible to determine whether a particular person is a class member"). Here, Defendants have agreed to produce a list of the cellular phone numbers called during the relevant time period, including the names, email addresses, and mailing addresses associated with those numbers. (*See* Agreement ¶ 1.6.) Consequently—and as a result of the amended class definition—it is completely feasible to determine whether any particular person is a Settlement Class member, and the Settlement Class is thus definite and ascertainable. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292,1303 (D. Nev. 2014) (holding class ascertainable where cellular telephone company agreed to provide a list of subscribers that would identify individual class members).

---

1   numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No specific

2   number of class members is required for numerosity, nor is Plaintiff required to state the exact

3   number of potential class members. *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350

4   (N.D. Cal. 2005). Numerosity is generally satisfied where the number of class members exceeds

5   forty, and particularly where class members number in excess of one hundred. *In re Google*

6   *Referrer Header Privacy Litig.*, No. 10-cv-04809, 2014 WL 1266091, at *3 (N.D. Cal. Mar. 26,

7   2014) (citation omitted). Here, the Settlement Class list includes approximately 400,000 persons,

8   thus easily satisfying the numerosity requirement. (Balabanian Decl. ¶ 16); *see also In re Google*

9   *Referrer Header Privacy Litig.*, 2014 WL 1266091, at *3 ("Where the exact size of the class is

10  unknown but general knowledge and common sense indicate that it is large, the numerosity

11  requirement is satisfied.") (citation and internal quotations omitted).

12          **2.      Settlement Class members share common questions of law and fact.**

13          The second requirement of Rule 23(a)—commonality—is satisfied where "there are

14  questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists

15  "[w]here the circumstances of each particular class member vary but retain a common core of

16  factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th

17  Cir. 2008). The standard is "construed permissively," *id*. at 978, and "[i]t is not necessary that

18  members of the proposed class share every fact in common." *Evon v. Law Offices of Sidney*

19  *Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotations omitted). As the Supreme Court

20  has noted, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

21  2541, 2556 (2011) (internal quotations and alterations omitted).

22          Here, several questions of law and fact are common to the proposed Settlement Class, such

23  as: (i) whether Infinity used an ATDS to make the telemarketing calls at issue; (ii) whether there is

24  a relationship between Infinity and Nuance with respect to the telemarketing campaign, and what

25  the scope and character of that relationship is; (iii) whether Nuance is vicariously liable for the

26  calls made by Infinity; and (iv) whether the TCPA requires consent when a call is placed to a

27  cellular telephone and the person being called either stands in an established business relationship

28  with the caller or has at some point provided the caller his or her cellular phone number. These

questions—whose answers depend solely on Defendants' identical conduct towards every member of the Settlement Class—are sufficient to establish commonality. *See, e.g., Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (finding commonality satisfied in text messaging case with parallel factual and legal issues, including: (1) whether defendant's text messaging equipment qualified as an ATDS, (2) whether one defendant controlled, participated in, or authorized the text-message campaign carried out by another, (3) whether a defendant could be held vicariously liable for the placement of the text message calls, and (4) whether an established business relationship is a valid defense to placing text message calls to cellular telephones under the TCPA); *Pimental, et al. v. Google Inc., et al.*, No. 11-cv-2585-YGR, Dkt. 97 at 1 (N.D. Cal.) (finding that "there are questions of law and fact common to the [c]lass" in a TCPA action); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D. Cal. 2013) (finding that defendants in a TCPA action did not to point to any "question of law or fact that [was] not suitable for disposition on a class-wide basis" and that issues of liability "can be made as to the class as a whole.").

### 3. Plaintiff's claims are typical of Settlement Class members' claims.

The third requirement of Rule 23(a)—typicality—is satisfied where "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Like commonality, typicality is viewed "permissive[ly]," and the standard is satisfied if the class representative's claims "are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, although only reasonable co-extensiveness is required, Hopwood's claims are essentially identical to the claims of the absent Settlement Class members. He alleges that he was called on his cellular phone by Infinity as part of a marketing campaign for Nuance that employed an ATDS in violation of the TCPA and that he was called in spite of the fact that his number was listed on the national Do Not Call Registry, further violating the TCPA. (Dkt. 92 ¶¶ 24–31.)

Having received the same calls, allegedly made by the same Defendants, in the same manner, Hopwood's claims are unquestionably typical of those of the Settlement Class and his pursuit of his claims will necessarily advance the interests of the absent Settlement Class members. (*Id.* ¶ 34); *see Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (finding typicality met where all class members were called by defendant on their cell phones using an ATDS); *Agne*, 286 F.R.D. at 569 (finding typicality satisfied where "[plaintiff's TCPA] claims, like all class members' claims, arise from text marketing campaigns commissioned by [defendants] and executed by the same marketing vendor."). Thus, the typicality requirement is satisfied as well.

### 4.   Plaintiff and Class Counsel will adequately represent the Settlement Class.

The fourth and final requirement of Rule 23(a)—adequacy—is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy has two components: (i) whether the named plaintiff and his counsel have any conflicts of interest with other class members, and (ii) whether plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, there are no conflicts of interest between Hopwood (or his counsel) and the other members of the Settlement Class, as they are all seeking recovery under the same law for the same kind of injury. *Cf. id.* at 1020–21 (noting that intra-class conflicts can arise where class members have suffered different injuries or seek relief under different state laws).

In addition, Hopwood and his counsel have vigorously pursued this Action on behalf of the Settlement Class and will continue to do so. (Balabanian Decl. ¶ 17.) The Parties have been engaged in contentious litigation for almost two years now, which has included both formal and informal discovery and motion practice, including briefing on a potentially dispositive motion to dismiss. (Dkts. 47, 54, 57.) As explained more fully below, *see infra* Section V, Plaintiff's counsel are well qualified and experienced members of the plaintiffs' bar who have extensive experience in class actions of similar size, scope, and complexity as the instant Action, particularly in the TCPA arena. (*See* Balabanian Decl. ¶ 18.) Indeed, this Court has previously found Plaintiff's

1   counsel at Edelson PC to be adequate representatives of a settlement class of individuals who

2   received unsolicited text message calls in violation of the TCPA. *See Pimental*, No. 11-cv-2585-

3   YGR, Dkt. 97 at 1 (appointing Class Counsel and "find[ing] that [Jay Edelson and Rafey

4   Balabanian of Edelson PC] are competent and capable of exercising the responsibilities of Class

5   Counsel…."); *see also Pimental*, Dkt. 107 at 2 (finally approving class action settlement and

6   finding that "[t]he Class Representatives and Class Counsel adequately represented the Settlement

7   Class for purposes of entering into and implementing the Settlement Agreement."); *Ellison v.*

8   *Steven Madden, Ltd.*, No. 11-cv-5935, Dkt. 45 (C.D. Cal. 2012) (finding Class Counsel adequate

9   because the attorneys at "Edelson [PC] ha[ve] no apparent conflict with the class and ha[ve] acted

10  as plaintiff's counsel in other consumer class action lawsuits of similar size and scope, including

11  class actions involving text message violations under the TCPA.") (citations omitted); *Lee v.*

12  *Stonebridge Life Insurance Co.*, No. 11-cv-43, Dkt. 161 (N.D. Cal. 2014) (appointing Hopwood's

13  counsel as class counsel in TCPA action).

14          Additionally, Plaintiff's counsel have already dedicated substantial resources to the

15  prosecution of this Action—by, for example, investigating the claims of Hopwood and the

16  Settlement Class, working to understand the technology at issue, and maintaining an ongoing

17  dialogue with Defendants—and they will continue to do so throughout the Action's pendency.

18  (Balabanian Decl. ¶ 19.) Rule 23(a)'s adequacy requirement is therefore met as well. *See, e.g.,*

19  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (finding adequacy met where

20  named plaintiffs "demonstrated their commitment to the action" and their attorneys were

21  "qualified to represent the class").

22                  **5.      The proposed Settlement Class satisfies the requirements of Rule
                              23(b)(3).**

23

24          In addition to meeting all four of Rule 23(a)'s prerequisites for certification, the proposed

25  Settlement Class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and

26  superiority. *See* Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual

27  interests of the parties can be served best by settling their differences in a single action." *Hanlon*,

28  150 F.3d at 1022. As detailed below, both requirements of Rule 23(b)(3) are satisfied.

### i.     *Common questions of law and fact predominate.*

"While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate." *Wolin*, 617 F.3d at 1172. That is, Rule 23(b)(3) tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.* (citing *Amchem*, 521 U.S. at 623–24). Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *see also Grannan v. Alliant Law Grp., P.C.*, No. 10-cv-02803, 2012 WL 216522, at *5 (N.D. Cal. Jan. 24, 2012) (finding common issues predominate over individualized issues in TCPA class action).[6]

Here, the common factual and legal questions detailed in Section IV.A.2, *supra*—e.g., whether Infinity used an ATDS to make the alleged calls, whether the relationship between Defendants is such that Nuance is vicariously liable for Infinity's conduct, whether Defendants systematically placed calls to phone numbers on the national Do Not Call Registry and whether the established business relationship exemption or direct relationship defense can shield Defendants from liability—are the pillars of Plaintiff's and the Settlement Class members' TCPA claims. And, given that the Settlement Class members all allegedly received the same calls, made by the same entities, in the same manner, the main individual issue likely to be presented is the amount of damages each Settlement Class member is entitled to based on the number of calls he or she received. But that issue in no way detracts from the core questions of liability that predominate here. *See Leyva*, 716 F.3d at 514 (holding that common questions predominated when issues of individual damages could be "feasibly and efficiently" calculated based on defendant's evidence); *Yokoyama*, 594 F.3d at 1094.

### ii.     *A class action is the superior method of resolving the controversy.*

Finally, a class action is superior to other methods for resolving this controversy. *See* Fed.

---

[6]     It is also well established that even where individual damage calculations may be necessary in a case, common issues may still predominate. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (noting that individual damages calculations do not detract from an action's suitability for class certification).

R. Civ. P. 23(b)(3). This requirement, rooted in a concern for judicial economy, ensures "that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citing Charles Wright, et al., Federal Practice and Procedure § 1779 (3d ed. 2005)). When the expense of litigating on an individual basis would completely subsume any recovery an individual could hope for, this factor weighs in favor of certification. *Id.* (citing *Zinser v. Accufix Research Institute*, 253 F.3d 1180, 1189 (9th Cir. 2001)). This is certainly the case here, where statutory damages are $500 per call received or, at most, $1,500 if Defendants' conduct was found to be willful. *See* 47 U.S.C. § 227(b)(3)(C); 47 U.S.C. § 227(c)(5)(B). By comparison, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief. By providing swift resolution of common claims in a way that would not be possible on an individual basis, a class action is the superior method of adjudication.

Accordingly, the requirements of both Rule 23(a) and 23(b)(3) are satisfied, and the Court should certify the proposed Settlement Class for settlement purposes.

## V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.

When certifying a class, a court must also appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law; and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see, e.g.*, *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 492 (C.D. Cal. 2012) (finding criteria of Rule 23(g) satisfied where proposed class counsel had researched, prepared, and filed cases, dedicated their careers to class action litigation, and demonstrated "extensive experience" in this realm).

Proposed Class Counsel readily satisfy the criteria of Rule 23(g). First, they have devoted—and will continue to devote—a significant amount of time and effort to this litigation,

beginning with their initial investigation of Plaintiff Hopwood's allegations. (*See* Balabanian Decl. ¶¶ 17, 19.) Through both formal and informal discovery, they have tirelessly sought the information needed to develop his claims and represent the Settlement Class. (*Id.* ¶ 19.) Second, proposed Class Counsel have extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many of them in this District and one before this Court. (*See* Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit 3-A to the Balabanian Declaration); *see also Pimental*, No. 11-cv-2585-YGR, Dkt. 97 (appointing Plaintiff's counsel as class counsel in $6 million text spam settlement); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722 (N.D. Cal. 2012) (serving as lead counsel in $12.2 million text spam settlement); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.) (serving as lead counsel in $10 million text spam settlement); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010) (serving as co-lead counsel in $10 million text spam settlement). They have developed an in-depth understanding of the TCPA and have successfully litigated emerging issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield*, 569 F.3d at 946 (securing ruling applying the TCPA to text messages, a decision that reshaped the TCPA litigation landscape); *see also Ellison*, No. 11-cv-5935, Dkt. 73 at 9 ("[Edelson PC] specialize[s] in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue.").

Accordingly, the Court should appoint Jay Edelson, Rafey S. Balabanian, and Benjamin H. Richman of Edelson PC as Class Counsel.

## VI.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlement approval follows a well established two-step process, beginning with a preliminary evaluation of the settlement's fairness. *In re TD Ameritrade Account Holder Litig.*, No. 07-cv-2852, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); Manual for Complex Litigation (Fourth) § 21.632. Once preliminary approval is granted, a court will order notice to be disseminated and then carry

out the second step of the process—the final fairness determination. *Id.*; Fed. R. Civ. P. 23(e)(2). Whether a settlement should be approved rests within the sound discretion of the court. *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). However, deference should be afforded to the private consensual decision of parties to resolve disputes between them. *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice*, 688 F.2d at 625). Indeed, the Ninth Circuit recognizes a strong judicial policy in favor of the voluntary settlement of class action litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Although the Ninth Circuit has not articulated a particular standard for evaluating whether preliminary approval of a class settlement should be granted, courts within this District typically grant preliminary approval when: "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted); *see also State of California v. eBay, Inc.*, No. 12-cv-05874, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (citation omitted); *Tijero v. Aaron Bros.*, No. 10-cv-01089, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013) (citation omitted). The Agreement easily satisfies all of these factors and thus is deserving of preliminary approval.

### A.     The Settlement is the Product of Arm's-Length, Informed, and Non-Collusive Negotiations Amongst Experienced Counsel.

First, the settlement is the product of serious, informed, non-collusive negotiations. While the other three factors also support preliminary approval, settlements that are the result of arm's-length negotiations among experienced counsel, such as this one, are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citing Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)) (internal quotations omitted); *see also Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). The involvement of a third-party neutral tends to support a finding that the process used to reach the

settlement was not collusive. *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citing *Satchell v. Fed. Exp. Corp.,* No. 03-cv-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Here, the Court should have great confidence in the fact that the settlement is the product of arm's-length negotiations, as it was only reached with the assistance of two third-party neutrals. (*See* Balabanian Decl. ¶¶ 3–4, 7–11, 21.) The Parties first began their formal negotiations in December 2013, under the guidance of Judge James Larson (ret.) of JAMS, a neutral experienced in mediating class actions. (*Id.* ¶ 3.) And when the Parties were unable to reach an agreement after two mediation sessions with him, they were referred to Magistrate Judge Corley to continue their settlement efforts, with the additional participation of Infinity's insurance carriers.  It was only with the continued assistance of—and multiple settlement conferences before—Judge Corley that the Parties were able to finally broker a compromise to which Hopwood, Defendants, and Defendants' insurers could all agree.

Ultimately, the negotiations were never collusive, which alone warrants preliminary approval of the Settlement. *See Villegas*, 2012 WL 5878390, at *6 (citation omitted).

**B.      The Settlement is Clear of Defects and Provides Real, Immediate Relief.**

Second, the Settlement is free of any obvious defects. A court is likely to find a settlement agreement free from obvious deficiencies when it provides a real, immediate monetary benefit to the class despite numerous risks. *See In re Tableware*, 484 F. Supp. 2d at 1080 (finding settlement providing a $500,000 fund free of obvious defects in light of "the anticipated expense and complexity of further litigation"); *see also Tijero*, 2013 WL 6700102, at *8 (granting preliminary approval to settlement agreement that conferred "tangible monetary benefits to the class" via an $800,000 fund); *Villegas*, 2012 WL 5878390, at *6 (citing *In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000)) (holding that the fairness and adequacy of a settlement are assessed "relative to [the] risks of pursuing the litigation to judgment.").

Here, the proposed Settlement provides real, immediate, and essentially unprecedented monetary relief to the Settlement Class members. Not only does the Settlement require Defendants and their insurers to create a substantial $9,245,000 Settlement Fund from which Settlement Class

1  members' claims will be paid, but it is one of the first of its kind to allow class members to

2  recover payments based upon the number of allegedly unlawful calls they received—i.e., $65 *per*

3  *call. See Newman v. AmeriCredit Fin. Servs., Inc.*, No. 11-cv-3041, Dkts. 35, 48 (S.D. Cal.) (twice

4  denying preliminary approval of proposed TCPA settlement because it did not account for the fact

5  that certain class members received multiple, and varying numbers of, calls).[7] The monetary relief

6  available under the Settlement is also notable in that it exceeds the typical recoveries obtained by

7  plaintiffs in similar TCPA settlements. *See supra* n. 2 (collecting cases to show that where, like

8  here, a direct relationship exists between the defendant and the class members, the typical per

9  class member recoveries range from less than $25 in cash or vouchers to $100 in cash).[8]

10       Monetary relief aside, the Settlement also requires Defendants to provide substantial

11  prospective relief. In particular, the audits Defendants have agreed to perform will ensure the

12  privacy of Settlement Class members—and other consumers—who do not consent to receive

13  Defendants' phone calls, including those who intentionally exclude themselves from telemarketing

14  calls by listing their cellular telephone numbers on the national Do Not Call Registry. (Agreement

15  ¶ 2.3.) This strong combination of monetary and prospective relief will undoubtedly compensate

16  Settlement Class members who received unwanted calls made with an ATDS as well as those with

17  numbers on the national Do Not Call Registry.

18       While Plaintiff is confident that he would ultimately prevail at trial, the risks of further

19  litigation are significant—making the substantial relief obtained all the more approvable.

20  (Balabanian Decl. ¶ 22.) For instance, if the Settlement is not approved and the stay is lifted,

21  Nuance will almost certainly reassert the defenses outlined in its motion to dismiss, including the

22  contention that it stands in an established business relationship with Plaintiff Hopwood and that it

---

23  [7]      Settlement Class members may also elect to recover a flat payment of $170 by simply
24  submitting their contact information on a claim form, rather than providing more detailed
    information about the number of calls they received.

25  [8]      The Settlement is also on par with settlements reached in cases—unlike this one—where
    no direct relationship is alleged (which are generally viewed as stronger on the facts). *See, e.g.,*
26  *Kramer*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (providing for a cash payment of $100 to
    each class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill.
27  2008) (providing for a cash payment of $150 to each class member); *Satterfield*, No. 06-cv-2893,
    Dkt. 132 (N.D. Cal. 2010) (providing for a cash payment of $175 to each class member); *Lozano*
28  *v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a
    cash payment of $200 to each class member).

is therefore exempt from liability under the TCPA. (Dkt. 47; *see also* Balabanian Decl. ¶ 22.) It would also likely raise the "direct relationship" defense—or the defense that each Settlement Class member consented to receive calls placed by or on behalf of Nuance when they voluntarily provided it with their cellular phone numbers at some point in the past—which courts in both this District and Circuit have upheld. *See, e.g., Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.) N.A.*, No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 8, 2014). Even if Plaintiff cleared those initial—not to mention, potentially dispositive—hurdles, Defendants would undoubtedly challenge a motion for class certification, further delaying the possibility of relief to the class. (Balabanian Decl. ¶ 22.) Further still, if the case proceeded to trial, other roadblocks—such as the need for expert testimony to establish whether Infinity's equipment meets the definition of an ATDS—would stand between the class and any ultimate recovery. (*Id.*) And given the amount at stake and their reputational interests, Defendants are nearly certain to appeal any judgment in favor of the class, thus further delaying recovery. (*Id.*)

In the end, when the settlement is viewed in light of those risks, it should be clear that Plaintiff obtained a substantial result for the Settlement Class. The settlement is free of any deficiencies and thus warrants preliminary approval.

C.    **The Settlement Treats Settlement Class Members Fairly**.

Third, the Settlement treats Settlement Class members fairly by giving them the option to claim either (i) a flat $170 cash payment by providing only minimal contact information, *or* (ii) a cash payment of $65 *per call* by providing some additional information regarding the number of phone calls they received. In doing so, the Settlement not only accounts for individual Settlement Class members' relative injuries (by allowing them to recover based upon the number of calls they received), but also allows them to determine the amount of effort they wish to expend obtaining it. *See Newman*, No. 11-cv-3041, Dkt. 72 (S.D. Cal.) (preliminarily approving settlement that provided payments relative to the number of calls received after twice denying preliminary

approval when class members would have received the same payment regardless of the number of unlawful calls received). As a result, the Settlement ultimately allows individuals to value the harm they suffered in receiving Defendants' calls and obtain a payment relative to that harm, rendering the Settlement undoubtedly fair.

Additionally, Plaintiff Hopwood's requested incentive award of $1,500 is both fair—in that it rewards him for his efforts in bringing, litigating, and ultimately settling the Action—and modest in comparison to the $5,000 incentive awards courts in this District consider "presumptively reasonable." *See, e.g.*, *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838, 2014 WL 2926210, at *9 (N.D. Cal. June 27, 2014); *Simon v. Toshiba Am.*, No. 07-cv-06202, 2010 WL 1757956, at *5 (N.D. Cal. Apr. 30, 2010); *see also Villegas*, 2012 WL 5878390, at *7 (noting that an incentive award of $10,000 did not render a settlement unfair). And finally, the Agreement provides for a *pro rata* distribution of Settlement funds in the event that the Court awards an incentive or fee award that is less than the amount requested, which further reflects the non-collusive nature of the Settlement and the fair and equal treatment of all Settlement Class members under it. (Agreement ¶¶ 9.1, 9.3.)

### D.  The Settlement Falls Squarely Within the Range of Possible Approval.

Finally, this Settlement falls well within the range of possible approval. "To determine whether a settlement falls within the range of possible approval a court must focus on substantive fairness and adequacy, and consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting *In re Tableware,* 484 F. Supp. 2d at 1080) (internal quotations omitted).

As described above, the value of the Settlement—in terms of tangible monetary relief and improved telemarketing practices going forward—is strong compared to the risks of litigation. Each Settlement Class member who submits a valid claim form can receive *at least* $170—or $65 for each call received. Given that the TCPA provides for damages of $500 "for each such violation" of the statute, 47 U.S.C. § 227(b)(3)(B); 47 U.S.C. (c)(5)(B), the $65 per call payments represent 13% of the recovery that would be available under the statute, and the $170 flat payment represents 34%. A recovery of 13–34% of available damages falls squarely "within the range of

possible approval." *See, e.g.*, *Ma v. Covidien Holding, Inc.*, No. 12-cv-02161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (citing *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998)) (approving 9.1% potential recovery as within the range of possible approval); *Villegas*, 2012 WL 5878390 at *6–7 (approving 15% potential recovery as within the range of possible approval); *Cordy v. USS-Posco Indus.*, No. 12-cv-00553, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) (approving 16–26% potential recovery as within the range of possible approval); *see also supra* n.2 (collecting cases and showing that 4-20% potential recovery is within the range of possible approval).

In the end, when viewed in comparison with other similar settlements, and in light of the substantial risks of ongoing litigation, the immediate monetary recovery the Agreement affords to Settlement Class members is within the range of possible approval.

## VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN.

Once a class has been certified, Due Process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is, whenever possible "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Likewise, Rule 23(e)(1) provides that after settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Pursuant to Rule 23(c)(2)(B), the notice must describe the action, define the class, inform class members that they may enter an appearance through an attorney or, if desired, request exclusion. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Notice is adequate when it provides the information necessary to make a decision in language that can be readily understood by the average class member. Newberg on Class Actions § 11:53 (4th ed. 2002). This is the case here, where the format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. All forms of notice are attached to the Agreement as Exhibits 1-1, 1-2, 1-3, and 1-4.

To ensure that the requirements of Due Process and Rule 23 are met, the Parties have agreed to a comprehensive four-part Notice Plan developed by Garden City Group ("GCG"), a well respected class action settlement administrator. First, relying on the Settlement Class list provided by Defendants—an electronic record containing the names, contact information, and call information of persons comprising the Settlement Class—GCG will send direct notice to the mailing addresses of Settlement Class members via postcard. The notice will direct Settlement Class members to the settlement website, www.SoftwareCallSettlement.com, which contains electronic versions of claim forms that can be submitted online, important court documents, and answers to frequently asked questions. If Defendants are not in possession of a valid mailing address or a postcard is returned as undeliverable, GCG will transmit the notice via email if possible, which will similarly direct recipients to the settlement website.

Second, if the direct notice detailed above reaches any less than 70% of the Settlement Class, GCG will launch an online media campaign that will strategically place banner ads on high-visibility websites. The online ads, like the direct notice, postcards and emails, will direct potential Settlement Class members to the settlement website.

The settlement website will serve as the central hub for potential Settlement Class members to gather information on the Settlement and, if they qualify for Settlement Class membership, to submit the appropriate claim form online. The website will include copies of the Agreement, notice, claim forms, and other relevant documents.

Finally, no later than ten days after filing the Agreement with the Court, GCG will serve upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials, notice of the proposed Agreement in accordance with the requirements set forth in 28 U.S.C. § 1715(b)(1)–(8).

Through postcards and emails sent directly to Settlement Class members, a robust online media campaign, and a dedicated settlement website, the Notice Plan will reach as many members of the Settlement Class as possible under the circumstances. The Court should therefore approve the proposed Notice Plan.

**VIII.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) certify the Settlement Class for settlement purposes, (2) appoint William Hopwood as Class Representative, (3) appoint Jay Edelson, Rafey S. Balabanian, and Benjamin H. Richman of Edelson PC as Class Counsel, (4) grant preliminary approval of the proposed Settlement Agreement, (5) approve the proposed Notice Plan, and (6) grant such other and further relief that the Court deems reasonable and just.

Respectfully Submitted,

**WILLIAM HOPWOOD,** individually and on behalf of all others similarly situated

Dated: April 24, 2015

By: /s/ Rafey S. Balabanian
      One of Plaintiff's attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.212.9300
Fax: 415.373.9435

Stefan Coleman (Admitted *Pro Hac Vice*)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333-9427