Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

[Additional counsel appear on signature page.]

*Counsel for Plaintiff and the Settlement Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HOPWOOD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC., a Delaware corporation, and INFINITY CONTACT, INC., an Iowa corporation,<br><br>*Defendants.* | Case No. 4:13-cv-02132-YGR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>Judge:   Hon. Yvonne Gonzalez Rogers<br>Date:    September 8, 2015<br>Time:    2:00 p.m. |

1

**NOTICE OF MOTION**

2    NOTICE IS HEREBY GIVEN that on September 8, 2015 at 2:00 p.m., or at such other

3  time as may be set by the Court, Plaintiff William Hopwood will move the Court, pursuant to

4  Federal Rule of Civil Procedure 23(e), and in accordance with this Court's May 12, 2015 Order

5  Granting Preliminary Approval of Class Action Settlement Agreement and Approving Notice Plan

6  (dkt. 104), to grant his Motion for Reasonable Attorneys' Fees, Expenses, and Incentive Award, in

7  Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California 94612, before the Honorable

8  Yvonne Gonzalez Rogers, or any Judge sitting in her stead.

9    The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities,

10  the exhibits attached thereto, oral argument of counsel, all documents in the record, the Northern

11  District of California's Procedural Guidance for Class Action Settlements, and any other matter

12  that may be submitted in connection therewith.

13                                        Respectfully Submitted,

14                                        **WILLIAM HOPWOOD**, individually and on behalf
                                          of the Settlement Class,
15
Dated: July 20, 2015                      By:  /s/ Rafey S. Balabanian
16                                              One of Plaintiff's Attorneys

17                                        Jay Edelson (Admitted *Pro Hac Vice*)
                                          jedelson@edelson.com
18                                        Rafey S. Balabanian (Admitted *Pro Hac Vice*)
                                          rbalabanian@edelson.com
19                                        Benjamin H. Richman (Admitted *Pro Hac Vice*)
                                          brichman@edelson.com
20                                        EDELSON PC
                                          350 North LaSalle Street, Suite 1300
21                                        Chicago, Illinois 60654
                                          Tel: 312.589.6370
22                                        Fax: 312.589.6378

23                                        Samuel Lasser (SBN – 252754)
                                          slasser@edelson.com
24                                        Edelson PC
                                          1394 Divisadero Street
25                                        San Francisco, California 94115
                                          Tel: 415.212.9300
26                                        Fax: 415.373.943

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND .................................................................................. 2

       A.     Nature of the Litigation ........................................................ 2

       B.     The Litigation History and Work Performed for the Settlement
              Class's Benefit ...................................................................... 4

       C.     The Parties' Settlement Efforts and Negotiations ................. 5

       D.     The Settlement Achieves Unprecedented Relief for the Settlement Class ...... 7

       E.     Class Counsel's Efforts to Ensure Settlement Class Members Secure
              Relief Continue ..................................................................... 7

III.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES
       AND EXPENSE AWARD ................................................................. 8

       A.     The Fee is Reasonable Under the Percentage-of-the-Fund Method ........... 9

              1.     Class Counsel Achieved Exceptional Relief for The Class ......... 10

              2.     There Were Significant Risks Involved in the Litigation ......... 13

              3.     Class Counsel Skillfully Prosecuted this Action ..................... 14

              4.     The Contingent Nature of the Fee Supports its Approval ......... 15

              5.     Class Counsel's Fee Request is Consistent with Awards in
                     Similar Cases ................................................................... 16

       B.     The Requested Fee is Equally Reasonable Under the Lodestar Method ....... 17

IV.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE
       AWARD ............................................................................................ 20

V.     CONCLUSION ................................................................................. 21

## **TABLE OF AUTHORITIES**

**United States Supreme Court Cases**:

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ............................................................... 10, 19

*Mims v. Arrow Fin. Servs. LLC,*
    132 S. Ct. 740 (2012) ................................................................. 3

**United States Circuit Court of Appeals Cases**:

*Florida v. Dunne,*
    915 F.2d 542 (9th Cir. 1990).......................................................... 9

*Gonzalez v. City of Maywood,*
    729 F.3d 1196 (9th Cir. 2013) ...................................................... 17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................... 19

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011)................................................*passim*

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015)................................................ 8, 9, 10, 12

*In re Pac. Enterprises Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995)......................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994)....................................................... 15

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ........................................................ 19

*Morris v. Lifescan, Inc.,*
    54 Fed. Appx. 663 (9th Cir. 2003) ...............................................12-13

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ...................................................... 20

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009)......................................................... 3

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301, 1311 (9th Cir. 1990).............................................. 9

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003).................................................... 17, 20

*Steiner v. Am. Broad. Co.,*
    248 Fed. Appx. 780 (9th Cir. 2007) .............................................. 19

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ........................................................ 9, 13, 18, 19

*Williams v. MGM-Pathe Commc'ns Co.,*
    129 F.3d 1026 (9th Cir. 1997) ........................................................................ 9

**United States District Court Cases**:

*Adams v. AllianceOne Receivables Mgmt., Inc. et al.,*
    No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012) ................................................ 20

*Arthur v. Sallie Mae, Inc.,*
    No. 10-cv-198 (W.D. Wash. 2012) ............................................................... 11

*Baird v. Sabre Inc.,*
    No. 13-cv-999, 2014 WL 320205 (C.D. Cal. Jan. 8, 2014) .......................... 14

*Bayat v. Bank of the West,*
    No. 13-cv-2376, 2015 WL 174434 (N.D. Cal. Apr. 15, 2015) ..................... 21

*Buccellato v. AT&T Operations, Inc.,*
    No. 10-cv-00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................. 19

*Cicero v. DirecTV, Inc.,*
    No. 07-cv-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) .................... 13

*Cohorst v. BRE Props., Inc.,*
    No. 10-cv-2666, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ................... 15

*Craft v. Cty. of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................................... 13

*Fernandez v. Victoria Secret Stores, LLC,*
    No. 06-cv-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) .................. 13

*Gutierrez, et al. v. Barclays Grp., et al.,*
    No. 10-cv-1012 (S.D. Cal. 2012) ........................................................... 11, 20

*Hartless v. Clorox Co.,*
    273 F.R.D. 630 (S.D. Cal. 2011) ................................................................. 20

*Hopkins v. Stryker Sales Corp.,*
    No. 11-cv-02786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..................... 16

*In re Heritage Bond Litig.,*
    No. 02-ml-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ................... 15

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.,*
    No. 11-md-2261 (S.D. Cal. 2013) .......................................................... 11, 20

*In re Magsafe Apple Power Adapter Litig.,*
    No. 09-cv-01911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ............... 17, 18

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal 2008) ...................................................14-15

*Kazemi v. Payless Shoesource, Inc.,*
    No. 09-cv-5142 (N.D. Cal. 2012)............................................................................. 11

*Kramer v. Autobytel, Inc., et al.,*
    No. 10-cv-2722 (N.D. Cal. 2012)......................................................11, 16, 19-20

*Kulesa v. PC Cleaner, Inc.,*
    No. 12-cv-725 (C.D. Cal. 2014) ............................................................................. 18

*Lofton v. Verizon Wireless (VAW) LLC,*
    No. 13-cv-05665-YGR, 2015 WL 1254681 (N.D. Cal. Mar. 18, 2015) ..................... 3

*Lozano v. Twentieth Century Fox Film Corp.,*
    No. 09-cv-6344 (N.D. Ill. 2011) ............................................................................. 11

*Martin v. AmeriPride Servs., Inc.,*
    No. 08-cv-440, 2011 WL 2313604 (S.D. Cal. June 9, 2011).................................... 13

*McClintic v. Lithia Motors, Inc.,*
    No. 11-cv-00859 (W.D Wash. Oct. 23, 2012) ........................................................ 20

*Nwabueze v. AT&T, Inc.,*
    No. 09-cv-01529, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ........................... 21

*Pimental v. Google, Inc.,*
    No. 11-cv-02585-YGR (N.D. Cal. June 26, 2013) .................................................. 16

*Roberts v. Paypal, Inc.,*
    No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013) .............................. 14

*Robles v. Lucky Brand Dungarees, Inc.,*
    No. 10-cv-04846 (N.D. Cal. May 10, 2013) ..................................................... 16, 18

*Rose v. Bank of Am. Corp.,*
    No. 11-cv-02390, 2014 WL 427338 (N.D. Cal. Aug. 29, 2014) ............................. 21

*Ryabyshchuck v. Citibank (S.D.) N.A.,*
    No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) .............................. 14

*Satterfield v. Simon & Schuster, Inc., et al.,*
    No. 06-cv-2893 (N.D. Cal. 2010).................................................................... 11, 16

*Singer v. Becton Dickinson and Co.,*
    No. 08-cv-821, 2010 WL 2196104 (S.D. Cal. June 1, 2010)................................... 13

*The Phoenix Ins. Co., et al. v. Infinity Contact, Inc., et al.,*
    No. 13-cv-5905 (N.D. Cal.)....................................................................................... 4

*Thieriot v. Celtic Ins. Co.,*
    No. 10-cv-04462, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ........................... 17

*Weinstein v. The Timberland Co., et al.,*
    No. 06-cv-00484 (N.D. Ill. 2008)............................................................................ 11

*Wren v. RGIS Inventory Specialists*,
    No. 06-cv-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................. 17, 20

*Young v. Polo Retail, LLC*,
    No. 02-cv-4546, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)........................................ 17

**<u>Statutes & Miscellaneous</u>**:

47 C.F.R. 64.1200 ............................................................................................................. 3

47 U.S.C. § 227 ............................................................................................................. 1, 3

Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* (3d ed. 1992) .............................................................. 19

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*,
    108 F.R.D. 237 (1986) ................................................................................................ 8

*In re Dish Network*,
    CG11-50, 28 F.C.C.R. 6574 (F.C.C. May 9, 2013) ......................................... 3

*Manual for Complex Litigation*,
    § 14.121 (4th ed. 2004) ............................................................................................. 9

*Procedural Guidance for Class Action Settlements*,
    U.S. Dist. Court for the N.D. Cal. (July 15, 2015),
    http://www.cand.uscourts.gov/ClassActionSettlementGuidance..................................... 17

## I. INTRODUCTION

Plaintiff William Hopwood ("Plaintiff" or "Hopwood") brought this case seeking redress for the telemarketing calls he received from Defendant Infinity Contact, Inc. ("Infinity") promoting Defendant Nuance Communications, Inc.'s ("Nuance") (together, "Defendants")[1] software products, which he alleged violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). After more than two years, multiple mediations and settlement conferences with both The Honorable James Larson (ret.) of JAMS and Magistrate Judge Jacqueline Scott Corley, and months of additional negotiations, Plaintiff and Class Counsel were able to secure a Settlement that is one of the first of its kind in TCPA class actions and an exceptional result for the Settlement Class. It's that Settlement that forms the basis for the instant request for an award of reasonable attorneys' fees, expenses, and an incentive award to Plaintiff as Class Representative.

In particular, under the terms of the proposed Settlement, Settlement Class Members have the opportunity to recover *based upon the number of allegedly offending calls they received*. In virtually no other TCPA class action has there been a settlement that compensates consumers on a *per call* basis; rather, the model most often utilized in TCPA cases has been to make a single, flat rate payment to each claimant regardless of the breadth of his or her injury. As a result, in cases such as this where the members of the class are customers of the defendant—who often provided their phone numbers to the defendant in the first place—the typical per class member recoveries range from less than $25 in cash or vouchers to at most a $100 payment. Here, however, Settlement Class Members have the option to select either a flat payment of $170 or $65 *per call*. And, given that there are certain Settlement Class Members that received several hundred calls each, some stand to receive over $20,000. Also noteworthy, the Settlement provides meaningful prospective relief requiring Defendants to conduct bi-annual audits of their procedures to ensure they remain in compliance with the TCPA and that these sorts of allegedly unauthorized calls do not continue in the future.

With the relief secured for the Settlement Class and the efforts that preceded it as the

---

[1] Except as otherwise stated herein, defined terms used in this Memorandum shall have the same meanings as ascribed to them in the Parties' Stipulation and Agreement of Settlement.

backdrop, Plaintiff now respectfully moves the Court to approve the requested attorneys' fees of $2.25 million (which includes reimbursable expenses of $45,301.83) and a modest incentive award of $1,500 to Plaintiff as Class Representative. With respect to the former, the requested fees and expenses collectively amount to just 25% of the Settlement Fund[2]—the Ninth Circuit's benchmark attorneys' fee amount in common fund cases—and are likewise supported by Class Counsel's adjusted lodestar. This is especially true given the time and effort expended on the case, the contingent nature of the representation, and the risk that Plaintiff (and thereby, Class Counsel) would recover nothing at all. Similarly, Plaintiff's requested incentive award is consistent with— and in fact, less than—awards in similar cases in this District, and is entirely appropriate given his efforts on behalf of the Settlement Class and in securing the Settlement for their benefit.

For these reasons, and as explained more fully below, Plaintiff requests that the Court approve his requested attorneys' fees and incentive award.

## II.     BACKGROUND

A brief summary of the underlying facts and law involved in the litigation, which lends context to the reasonableness of the requested fee award and incentive award, is outlined below.

### A.     Nature of the Litigation.

Nuance is a multinational computer software company that makes a variety of software applications for consumers and businesses, including popular speech recognition and document management products such as Dragon and PaperPort. (Dkt 1 ¶ 1.) In an effort to promote and sell its products, Nuance engaged Infinity, a telemarketing services provider, to make the allegedly unsolicited phone calls to consumers' cell phones. (Dkt. 31 ¶¶ 2-4, 15.)

Plaintiff's first amended complaint asserts claims alleging that Defendants' telemarketing campaign violated two provisions of the TCPA. (Dkt. 31 ¶¶ 49-57, 58-70.) The first provision makes it unlawful to place calls to cellular telephones without the recipient's consent using equipment the statute defines as an automatic telephone dialing system, or "ATDS":

---

[2]     Although the Settlement Fund is $9,245,000 total, Plaintiff agreed not to seek attorneys' fees based upon the $245,000 contributed to the Fund by Infinity's insurers.

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to . . . a cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A)(iii). The second provision makes it unlawful to place more than one telephone call within a 12-month period to persons whose cellular telephone numbers are listed on the national Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c), (e). Here, Plaintiff alleges that Defendants violated the TCPA when (i) they used an ATDS to place the calls at issue (*see* dkt. 92 ¶¶ 19, 30, 41), and (ii) placed calls to persons whose cellular telephone numbers are listed on the national Do Not Call Registry. (*Id.* ¶¶ 51-57.)

Defendants' intrusive calls, Plaintiff alleges, are exactly the type contemplated by the TCPA, which was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy." *Id.*; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that the statute's purpose is to protect significant privacy interests). Reflecting the importance of telephone subscribers' privacy, the TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if conduct is willful) and also provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)-(C); 47 U.S.C. § 227(c)(5)(B). Today, in an age where companies frequently engage third-party telemarketers to generate business, both courts and the Federal Communications Commission (the regulatory body charged with interpreting the statute) have held that defendants can be held responsible for calls made by third-party callers under vicarious liability principles. *See Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR, 2015 WL 1254681, at *4 (N.D. Cal. Mar. 18, 2015); *In re Dish Network*, CG11-50, 28 F.C.C.R. 6574 (F.C.C. May 9, 2013). Based on the calls that Infinity allegedly placed to promote Nuance's software, Plaintiff seeks monetary and injunctive relief under the TCPA against both Defendants. (Dkt. 92 at 11.)

**B.    The Litigation History and Work Performed for the Settlement Class's Benefit.**

Plaintiff Hopwood, along with former plaintiff Teresa Martinez ("Martinez"), initiated this Action against Nuance on May 8, 2013. (Dkt. 1.) Plaintiff and Nuance then exchanged initial disclosures in October 2013, which led to Plaintiff filing his first amended complaint naming Infinity as an additional party-defendant. (Dkt. 31 ¶¶ 50-55, 59-68.) The Parties thereafter engaged in formal discovery during which all Parties propounded and responded to their respective written discovery requests, including the production of certain relevant and responsive documents. (Declaration of Rafey S. Balabanian ["Balabanian Decl."] ¶ 4, a copy of which is attached hereto as Exhibit 1.) On December 16, 2013, Infinity answered Plaintiff's first amended complaint (dkt. 46), and Nuance moved to dismiss it. (Dkt. 47.) In addition to arguing that plaintiff Martinez lacked standing and failed to state a claim, Nuance argued that it was exempt from liability under the TCPA because it had an established business relationship with Plaintiff Hopwood. (*Id.* at 3-4.) Plaintiff countered that recent case law and FCC decisions establish that the exemption does not apply to calls made to cellular telephones. (Dkt. 54.) The issue, however, remains unresolved, as the Parties requested that ruling on the fully briefed motion be stayed given their ongoing settlement discussions. (*Id.* at dkts. 47, 54, 57.)

Meanwhile, on December 19, 2013, and as a result of Plaintiff's Action, The Phoenix Insurance Company and The Travelers Indemnity Company brought a coverage action against Nuance and Infinity seeking a declaratory judgment that the insurers had no obligation under policies issued to both Infinity and Nuance to defend or otherwise cover any claims for the allegedly unauthorized calls at issue. *See The Phoenix Ins. Co., et al. v. Infinity Contact, Inc., et al.*, No. 13-cv-5905 (N.D. Cal.). Defendants counter-claimed, seeking, among other forms of relief, a declaratory judgment that The Phoenix Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of Connecticut, and Travelers Property Casualty Company of America (collectively, the "insurance carriers" or "insurers") have a duty to defend and cover the claims in the Action. (*Id.*, Dkts. 47-48.)

### C. The Parties' Settlement Efforts and Negotiations.

As detailed in Plaintiff's Motion for Preliminary Approval (dkt. 101), the Parties' path to settlement was by no means an easy one. It included two formal mediations—both requiring extensive pre-mediation briefing—with the Honorable James Larson (ret.) of JAMS, telephonic and in-person settlement conferences with Magistrate Judge Corley—again requiring detailed pre-conference memoranda of understanding, and later a settlement conference statement briefing the outstanding issues—and numerous arm's-length rounds of negotiations between counsel.

On December 18, 2013, the Parties participated in their first formal mediation session with Judge Larson, a former Magistrate Judge in this District and private mediator with extensive experience in resolving class action disputes. (Balabanian Decl. ¶ 8.) The Parties exchanged a significant amount of information and made substantial progress towards settlement, but were unable to reach an agreement that day. (*Id.*) As such, they agreed to convene a subsequent mediation session with Judge Larson on February 26, 2014. (*Id.*) In the interim, the Parties also continued to exchange information relevant to both their substantive positions on the claims and defenses at issue, as well as the potential resolution of the Action. (*Id.* ¶ 9.) While they were again unable to reach an agreement during the second mediation session, with Judge Larson's ongoing assistance they continued to engage in arm's-length negotiations in the months that followed and ultimately executed a memorandum of understanding in July 2014, which included, *inter alia*, Defendants' agreement to assign certain rights under Infinity's insurance policies to Plaintiff for the benefit of the Settlement Class. (*Id.*)

As the Parties worked through drafting the actual Settlement Agreement, several points of contention arose, one of which related to the assignment to Plaintiff and the Settlement Class under Infinity's insurance policies. (*Id.* ¶ 10.) In particular, Infinity reached a settlement with its insurance carriers that Plaintiff believed may undercut his and the Settlement Class's assignment rights. (*Id.*) At that point, settlement discussions once again began to break down. By October 2014, the Parties reached an impasse, and Plaintiff requested a return to litigation. (*Id.* ¶ 11; *see also* dkt. 70.) Thereafter, the Court ordered that the Parties appear for a case management conference to explain the status of the case and ultimately referred the Parties and Infinity's

insurance carriers to a mandatory settlement conference with Magistrate Judge Corley. (Balabanian Decl. ¶ 11-12; *see also* dkts. 72, 80.)

On November 18, 2014, the Parties and Infinity's insurers appeared telephonically before Judge Corley, at which time Judge Corley directed them to exchange the relevant terms of their settlement agreements—i.e., the proposed class settlement of this Action and the agreement reached in the *Phoenix* action. (Balabanian Decl. ¶ 12; *see also* dkt. 101 at 6.) Then, on December 12, 2014, counsel for each party to this Action appeared before Judge Corley in San Francisco for an in-person settlement conference. (Balabanian Decl. ¶ 13; *see also* dkt. 83.) With the assistance of Judge Corley, the Parties made progress in their discussions, including with respect to certain non-insurance terms for which Judge Corley requested clarification, but were ultimately unable to resolve their differences. As a result, Judge Corley set a further telephonic settlement conference with Defendants' counsel for January 5, 2015 (*see* Balabanian Decl. ¶ 13), and thereafter, another settlement conference with all Parties and the insurance carriers for January 20, 2015. (*Id.*; *see also* dkts. 84, 85.)

After the settlement conference on January 5, 2015, Class Counsel submitted full briefing on the issues of the case—including the insurance litigation—to Judge Corley in anticipation of the upcoming settlement conference scheduled for January 20, 2015. (Balabanian Decl. ¶ 14.) Following the submission of Plaintiff's settlement conference statement, the Parties and insurance carriers continued the discussions that began with Judge Corley and agreed that in lieu of assigning any rights under the policies, the insurance carriers would instead contribute $245,000 in cash directly to the Settlement Fund. (*Id.*; *see also* dkt. 101 at 6.) Thus, on January 20, 2015, the Parties informed Judge Corley that they resolved the outstanding assignment issues and discussed the timeframe for finalizing a written settlement agreement in the action and seeking preliminary approval from the Court. (Balabanian Decl. ¶ 15.)[3]

---

[3] Based on discovery exchanged during the settlement process, the Parties stipulated that former plaintiff Martinez would voluntarily dismiss her individual claims against Defendants with prejudice, and the claims of the putative class related calls to landline numbers without prejudice. (Dkt. 90.) Plaintiff Hopwood then filed his Second Amended Complaint, which alleges claims related only to alleged calls made to cellular telephones. (Dkt. 92.)

On February 18, 2015, Plaintiff filed his original motion for preliminary approval of the Parties' proposed class action settlement. (Dkt. 95.) During the March 31, 2015 hearing on that motion, the Court requested clarification about certain aspects of the agreement and proposed notice, and further requested that the Parties make revisions to their proposed agreement and notices. (*See* Dkt. 97, 98.) The Parties instituted the Court's requested changes, and the Court granted preliminary approval of the Settlement and notice plan on May 12, 2015. (Dkt. 104.)

### D. The Settlement Achieves Unprecedented Relief for the Settlement Class.

The fruit of Class Counsel's effort is a Settlement that creates a $9,245,000 common fund, from which all Settlement Class Member claims will be paid. (Dkt. 101-1 ¶ 1.36.) After settlement administration and notice expenses, a reasonable incentive award, and attorneys' fees have been paid, each Settlement Class Member who submits an approved claim will receive from the Settlement Fund, at their election, either (i) a flat payment of $170, or (ii) a payment of $65 for each call received. (*Id.* ¶ 2.2(a).) In the event that the total amount claimed by Settlement Class Members exceeds the amount remaining in the Settlement Fund, each Settlement Class Member's recovery will be reduced *pro rata*. (*Id.*)

In addition, the Settlement includes wide-ranging prospective relief requiring Defendants to (i) perform bi-annual audits of their procedures to ensure that they do not place autodialed marketing calls to the cellular phones of Nuance customers without first receiving prior express consent and to correct any deficiencies identified in the audits, and (ii) to perform bi-annual audits of their procedures to ensure they do not place marketing calls to cellular phone numbers on the national Do Not Call Registry without first receiving prior express consent. (*Id.* ¶ 2.3.) Defendants have agreed that these procedures shall remain in effect for no less than two years. (*Id.*)

### E. Class Counsel's Efforts to Ensure Settlement Class Members Secure Relief Continue.

In an effort to maximize the benefit to the Settlement Class, Class Counsel continue to expend significant time, effort and other resources to ensure that Settlement Class members secure the relief available under the Settlement. (Balabanian Decl. ¶ 34.) By way of example, Class Counsel have been in communication with hundreds of Settlement Class Members throughout the

claims period—answering questions regarding the claims process, assisting Settlement Class Members with completing both Short and Long Claim Forms and the like. (*Id.*)[4]

That process has involved, *inter alia*, interfacing with the Settlement Administrator to ensure that Settlement Class Members would have the time necessary to obtain records of the telephone calls they received and submit them with their Long Claim Forms (*see* Agreement ¶ 6.4), obtaining the necessary letters of consent from each Settlement Class Member for the release of their records from certain wireless carriers, and continually communicating with the wireless carriers themselves to ensure that they are timely complying with subpoenas issued to obtain those records. (*Id.*)

In sum, Class Counsel continues to work diligently to ensure the best relief possible for the Settlement Class. (*Id.* ¶ 35.)

## III. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND EXPENSE AWARD.

When, as here, a settlement creates a common fund that benefits the entire class, courts have discretion to use either the percentage-of-recovery or lodestar methods to determine a reasonable attorneys' fee award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in [the Ninth C]ircuit, the benchmark percentage is 25%." *Id.* at *9 (citing *In re Bluetooth*, 654 F.3d at 942). Conversely, the "lodestar method requires 'multiplying the number of hours [class counsel]… reasonably expended on the litigation …by a reasonable hourly rate for the region and for the experience of the lawyer.'" *Id.* (quoting *In re Bluetooth*, 654 F.3d at 941). Although the requested amount of fees and expenses is reasonable under either approach, criticisms and inefficiency of the lodestar method favor the application of the common fund method here. *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 262 (1986) (finding that the lodestar method results in judicial inefficiency by forcing courts to engage in the analysis and calculation of attorneys' timesheets, while at the same

---

[4] Specifically, Class Counsel has spoken to and assisted 149 Class members in preparing their Long Claim Forms. (Balabanian Decl. ¶ 34.)

time discouraging settlement and incentivizing attorneys to pursue litigation to "run up" legal costs); *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases…"); *Manual for Complex Litigation* § 14.121 (4th ed. 2004) ("in practice, the lodestar method is difficult to apply, time consuming to administer, inconsistent in result, ... capable of manipulation, ... [and] creates inherent incentive to prolong the litigation"). The most common, but not exclusive, way "that a court may demonstrate that … the amount awarded is reasonable is by conducting a cross-check using the other method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949; *see also In re Bluetooth*, 654 F.3d at 945 (noting that regardless of the primary method used to determine the amount of fees, the reasonableness of that award should be "cross-checked" against the other method).

Here, as explained more fully below, the requested attorneys' fees of 25% of the Settlement Fund is in line with the Ninth Circuit's benchmark under the common fund approach. The reasonableness of the requested fee award is further confirmed through application of the lodestar method, either as a cross-check or as the primary method of calculation.

**A.  The Fee is Reasonable Under the Percentage-of-the-Fund Method.**

"[T]he benefit to the class is easily quantified in common-fund settlements, [therefore, courts may]…award attorneys as a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. Typically courts use 25% as the "benchmark" for a reasonable fee award when utilizing this calculation method, and can justify a departure by providing adequate explanation in the record of any "special circumstances." *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The percentage is measured against the total amount of the common fund established by the settlement. *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

As the Ninth Circuit recently confirmed, the non-exhaustive list of factors it set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–50 (9th Cir. 2002), guides the assessment of a request for attorneys' fees calculated using the percentage-of-fund method: "the extent to which

class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law [], . . . the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55 (internal quotation marks omitted). Applying these factors, it is evident that the requested $2,250,000, constituting 25% of the Settlement Fund, is reasonable and should be approved.

### 1.    *Class Counsel Achieved Exceptional Relief for the Class.*

The benefit obtained for the Settlement Class is foremost among the factors in determining a proper fee, which, given the monetary relief available to Settlement Class Members here—to say nothing of the prospective relief—weighs in favor of a finding of reasonableness. *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983)). Here, the Settlement provides real, immediate, and essentially unprecedented monetary relief to the Settlement Class. Not only does the Settlement require Defendants and their insurers to create a substantial $9,245,000 Settlement Fund from which Settlement Class Members' claims will be paid, but it is one of the first of its kind in TCPA cases to allow class members the option to recover payments based upon the number of allegedly unlawful calls they received—i.e., $65 per call[5]—or to accept a flat payment of $170.

A review of other settlements in the TCPA space makes the contrasts in relief readily apparent. For example, in cases where (as here) a direct relationship exists between the defendant and class members—who often provided their phone numbers to the defendant as in this case—the typical per class member recoveries range from less than $25 in cash or vouchers to at most a $100

---

[5]    Based on Defendants' records, it appears that some Settlement Class Members received hundreds of calls and, thus, could recover tens of thousands of dollars under the settlement. (Balabanian Decl. ¶ 22.) And although the total amount of payments to be made to the Settlement Class is not yet known—the claims deadline passed only yesterday, many Settlement Class Members have exercised their right to a 30-day extension of the deadline in order to obtain their phone records (*see* Agreement ¶ 6.4), and a final review of the validity of the claims submitted has not yet been completed—it is clear that tens of thousands of claim forms (both Short and Long Claim Forms) have been submitted, totaling several millions of dollars in potential payments to the Settlement Class. (Balabanian Decl. ¶ 22.) Class Counsel will, of course, apprise the Court of the total number of Approved Claims and the amount to be paid to Settlement Class Members before the Final Fairness Hearing.

payment.[6] *See, e.g.*, *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher or $15 cash to each class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198, Dkt. 266 (W.D. Wash. 2012) (providing for a $20-40 cash payment to each class member); *Gutierrez, et al. v. Barclays Grp., et al.*, No. 10-cv-1012, Dkt. 58 (S.D. Cal. 2012) (providing for a $100 cash payment to each class member). Similarly, in settlements reached in cases where no direct relationship is alleged (which are generally viewed as stronger on the facts), the typical recoveries range from $100 to $200 per class member.[7] *See, e.g.*, *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) (providing for a cash payment of $150 to each class member); *Satterfield*, No. 06-cv-2893, Dkt. 132 (N.D. Cal. 2010) (providing for a cash payment of $175 to each class member); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a cash payment of $200 to each class member). By contrast, the proposed Settlement here not only affords Settlement Class members the option of receiving a one-time flat payment on the high end of the range in other TCPA settlements, it also allows Settlement Class Members to claim potentially more than *one thousand times* that much.[8]

Further the only potential "red flag" with respect to the settlement structure and in particular, the requested fee award—i.e., the partial reversionary nature of the Settlement Fund—should not call any aspect of the Settlement into question. Indeed, the Ninth Circuit recently confirmed that the 25% benchmark in cases where a common fund is created applies "as a helpful starting point" in the fee analysis and is appropriate even in cases such as this where unpaid portions of the fund revert to the defendant. *In re Online DVD-Antitrust Litig.*, 779 F.3d at 955.

---

[6]    To be clear, these settlements do not (as in the proposed settlement here) provide class members the option of recover based on each individual call they received.
[7]    Again, these settlements typically have not included an option to claim relief based on the number of calls received.
[8]    That is, many Settlement Class Members here received hundreds of calls each (some upwards of 400 calls total). Thus, for example, by submitting a Long Claim Form to receive $65 *per call* a Class member that received more than 400 calls stands to recover more than $20,000 and over *one thousand times* the recoveries under the typical TCPA settlements.

Notwithstanding, Plaintiff recognizes that one of the Court's primary concerns in any fee analysis under such a settlement is whether the settlement fund has been artificially inflated. *See In re Bluetooth*, 654 F.3d at 945. Here, there is no credible argument that could be made that the settlement fund was artificially inflated, and that bears out when a number of factors are taken into account.

In particular, in negotiating the Settlement Fund amount, Plaintiff and Class Counsel specifically accounted for (i) the size of the Settlement Class (approximately 400,000 persons); (ii) the individual payment amounts available under the Settlement (either a flat payment of $170 through the submission of an approved Short Claim Form or $65 *per call* through the submission of an approved Long Claim Form); (iii) the typical rate of class member claims in TCPA settlements (between 2% and 10% of the settlement class); (iv) the fact that many Settlement Class Members here are large stakeholders inasmuch as they each received as many as several hundred calls and thus stand to recover tens of thousands of dollars under the Settlement; and (v) the fact that certain portions of the Settlement Fund are guaranteed to be paid out to claiming Settlement Class Members—i.e., the difference (if any) between the actual attorneys' fees awarded by the Court and Plaintiff's request of $2.25 million in fees, the $245,000 contribution by Infinity's insurers, and the costs of notice and administration of the Settlement (approximately $290,000). (Balabanian Decl. ¶ 17.) Ultimately and based on that analysis, it is clear that at least $6.5 million—and potentially more—of the Settlement Fund will be exhausted. (*Id.* ¶ 23.)[9]

Further, even if the Court chose to look only to the amount of the fund actually exhausted—i.e. $6.5 million—then the requested $2.25 million fee award would still be appropriate. That is, in the Ninth Circuit it is common to award attorneys' fees in excess of the 25% benchmark and upwards of 1/3 of a common fund where class counsel achieves an exceptional result for the class. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming 33 1/3% fee of $12 million fund); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 663 (9th Cir. 2003) (affirming 33% fee of $14.8 million fund); *Fernandez v. Victoria Secret*

---

[9]    Again, it is not yet clear what the total amount paid out to Settlement Class Members submitted approved claims will be. (Balabanian Decl. ¶ 23.)

*Stores, LLC*, No. 06-cv-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) (granting fee award of 34% of the $8.5 million fund); *Singer v. Becton Dickinson and Co.*, No. 08-cv-821, 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (granting fee award of 33.33% of the $1 million fund). That's true even with settlements that create common funds of less than $10 million. *See, e.g., Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (finding that settlements that create funds of less than "$10 million will often result in fees above 25%."). "Indeed, California cases in which the common fund is small, tend to award attorneys' fees above the 25% benchmark." *Cicero v. DirecTV, Inc.*, No. 07-cv-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) (citation omitted); *Martin v. AmeriPride Servs., Inc.*, No. 08-cv-440, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (noting that the typical fee award for common fund cases is 30%-50% of the fund where the total recovery is "relatively small").[10]

## 2. There Were Significant Risks Involved in the Litigation.

The second factor commonly considered is the possibility that continued litigation may result in a lesser or no benefit to the Class, particularly where the case involves complicated legal and factual issues. *See Vizcaino*, 290 F.3d at 1048. Achieving the result in this case was by no means a "slam dunk," which is usually what courts require before awarding fees less than the 25% benchmark established by the Ninth Circuit. *See id.* (discussing the riskiness of the litigation as a key factor in determining class counsel's fee award).

If litigation had continued in this case, Nuance would have almost certainly reasserted the defenses outlined in its motion to dismiss, including the contention that it stands in an established business relationship with Plaintiff and that it is therefore exempt from liability under the TCPA. (Balabanian Decl. ¶ 5; *see also* dkt. 47.) It would also likely have raised the "direct relationship" defense—i.e., that each Settlement Class Member consented to receive calls placed by or on

---

[10] Finally, while Plaintiff's attorneys' fee request is not based on the prospective relief obtained under the Settlement, that relief is equally important given the objectives of this case: to ensure that the unauthorized calls at issue would cease and not continue in the future. Specifically, Defendants have agreed to perform bi-annual audits that will ensure the privacy of the Settlement Class—and other consumers—who did (and do) not consent to receive Defendants' phone calls, including those who intentionally exclude themselves from telemarketing calls by listing their cellular telephone numbers on the national Do Not Call Registry. (*See* Agreement ¶¶ 2.3(a)-(b).)

behall of Nuance when they voluntarily provided it with their cellular phone numbers at some point in the past—which courts in both this District and the Ninth Circuit have upheld. *See, e.g., Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.) N.A.*, No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*, No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 8, 2014).

Even if Plaintiff cleared those initial—not to mention, potentially dispositive—hurdles, Defendants would undoubtedly challenge any motion for class certification. (Balabanian Decl. ¶ 6.) Likewise, if the case proceeded to trial, other roadblocks—such as the need for expert testimony to establish whether Infinity's equipment meets the TCPA's definition of an ATDS— would stand between the Class and any ultimate recovery. (*Id.*) And given the amounts at stake, regardless of the outcome at the class certification stage or trial, the losing party would be almost guaranteed to appeal, thus further delaying and potentially foreclosing any relief to the Settlement Class.

Class Counsel initiated this Action aware of Defendants' defenses and these risks, and nonetheless aggressively prosecuted the Settlement Class's claims in the face of substantial opposition by experienced defense counsel, investing more than one thousand hours of attorney time and thousands of dollars in hard costs. (Balabanian Decl. ¶ 3.) In the end, after balancing the strength of the Settlement Class's claims against the legal, factual and procedural obstacles ahead, it is clear that there was significant risk that the Settlement Class (and with them, Class Counsel) may have recovered substantially less, if anything at all, thus further supporting the reasonableness of the requested fee award.

### 3. Class Counsel Skillfully Prosecuted this Action.

Next, the Court should take into account the quality of the work performed by Class Counsel in securing the proposed settlement. As in this case, the litigation of a complex, multiparty, nationwide class action "requires unique legal skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal 2008). Thus, the "single clearest factor

reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig.*, No. 02-ml-1475, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *Cohorst v. BRE Props., Inc.,* No. 10-cv-2666, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011) *report and recommendation adopted as modified,* No. 10-cv-2666, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012).

Here, as discussed above, Class Counsel skillfully litigated this case against two Defendants represented by some of the nation's best class action defense counsel, who themselves are extremely well-versed in the TCPA and related issues. Despite that and facing a formidable set of defenses, Class Counsel were still able to reach a favorable resolution for the Settlement Class—though, given defense counsels' advocacy for their clients, even that took two formal mediations with Judge Larson, multiple settlement conferences before Judge Corley, and months of additional arm's-length negotiations with opposing counsel.

### 4. The Contingent Nature of the Fee Supports its Approval.

Contingent fees allow competent counsel to accept cases and provide adequate representation in class actions and are a basis for providing a larger fee than if the matter was billed on a flat or hourly basis. *OmniVision*, 559 F. Supp. 2d at 1047 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299–1300 (9th Cir. 1994)). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299.

Here, Class Counsel agreed to undertake Plaintiff's case on a contingent fee basis (as the amount of individual recovery at issue would never justify retention on an hourly basis), and they knew from the outset that they would be required to spend hundreds of hours investigating and litigating Plaintiff's claims with absolutely no guarantee of success, while simultaneously foregoing other opportunities. (Balabanian Decl. ¶ 24.) Class Counsel have a proven record of

effectively and successfully prosecuting complex nationwide class actions, and they used that experience in prosecuting this case. (*Id.* ¶ 25.) Class Counsel have logged more than 1,600 hours representing Plaintiff and the Settlement Class without compensation, which does not take into account the work that must still be performed before the final fairness hearing, communicating with Settlement Class Members, obtaining their phone records from wireless carriers, and supervising the settlement's administration. (*Id.* ¶ 26.) Further, Class Counsel have advanced over $45,301.83 in litigation expenses prosecuting this case with considerable risk of non-return. (*Id.* ¶ 33.)

### 5. *Class Counsel's Fee Request is Consistent with Awards in Similar Cases.*

The award of attorneys' fees in TCPA class actions is consistently between 20-33% of the total fund available to the class. Although, as explained above, the Ninth Circuit has established a benchmark fee of 25%, it is not uncommon for courts in this Circuit to award fees even higher than 25% in common fund cases. *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786, 2013 WL 496358, at *7 (N.D. Cal. Feb. 6, 2013). Nonetheless, the Court need not consider the unique circumstances that would warrant a higher fee, as Class Counsel's fee request of $2,250,000 falls just below the benchmark, representing 25% of the Settlement Fund. In addition to falling in line with the Ninth Circuit's benchmark, the agreed-upon amount is also less than or consistent with awards in similar TCPA cases. *See, e.g., Satterfield*, No. 06-cv-02893, Dkt. 132 (N.D. Cal. Aug. 8, 2010) (awarding 25% of common fund to class counsel); *Kramer v. Autobytel, Inc.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. Jan. 27, 2012) (awarding 25% of common fund to class counsel); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846, Dkt. 105 (N.D. Cal. May 10, 2013) (awarding 24% of common fund to class counsel); *Pimental v. Google, Inc.*, No. 11-cv-02585-YGR, Dkt. 107 (N.D. Cal. June 26, 2013) (awarding 25% of common fund to class counsel).

Ultimately, the results achieved by Class Counsel, coupled with the contingent nature of their fees, the high degree of risk in prosecuting Plaintiff's claims, the requisite level of skill required, and the similarity to awards in other TCPA class actions, justify the requested fee award here.

**B.  The Requested Fee is Equally Reasonable Under the Lodestar Method.**

The requested fee of $2.25 million is also reasonable when applying the lodestar method, either as the primary method of calculation or as a "cross-check" to the percentage-of-the-fund approach. Either way, the lodestar amount is calculated by multiplying the number of hours Class Counsel reasonably expended on the litigation by a reasonable hourly rate that takes into consideration the geographic region and experience of the lawyer. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). When performing a lodestar cross-check, mathematical exactitude is not required and review of summaries of the attorneys' hours is sufficient. *See Thieriot v. Celtic Ins. Co.*, No. 10-cv-04462, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011); *Young v. Polo Retail, LLC*, No. 02-cv-4546, 2007 WL 951821, at *6 (N.D. Cal. Mar. 28, 2007) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours"). Rather, the guidelines set forth by this District encourage a holistic approach by viewing "the relationship between the amount of the award and the amount of common fund and counsel's lodestar calculation." *Procedural Guidance for Class Action Settlements*, U.S. Dist. Court for the N.D. Cal., http://www.cand.uscourts.gov/ClassActionSettlementGuidance.  Further, "[d]eclarations of class counsel as to hours spent on various categories of activities related to the action, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed." *Id.*

The reasonableness of the rates is judged in comparison to the prevailing rates in the community—which, in this case, is the Bay Area in the Northern District of California—for similar work performed by attorneys with similar skills and experience. *In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-01911, 2015 WL 428105, at *11 (N.D. Cal. Jan. 30, 2015) (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013)); *see also Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *18 (N.D. Cal. Apr. 1, 2011). "In fact, it is appropriate to both calculate attorneys' fees at prevailing rates to compensate for delay in receipt of payment as well as apply a multiplier to the lodestar calculation . . . to account for class counsel's substantial risk of non-payment in prosecuting the action." *In re Magsafe*, 2015

WL 428105, at *11 (citing *Vizcaino*, 290 F.3d at 1051). As this Court recently found, in the Bay Area "reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240." *Id.*

As reflected in the chart below, Class Counsel's adjusted-lodestar[11] to date is $754,515.50. (Balabanian Decl. ¶ 31.)

| ATTORNEY (Position) | YEARS OF EXPERIENCE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 19 | 79.0 | $685 | $54,115.00 |
| Rafey S. Balabanian (Partner) | 10 | 296.2 | $570 | $168,834.00 |
| Ryan D. Andrews (Partner) | 10 | 135.7 | $570 | $77,349.00 |
| Christopher L. Dore (Partner) | 6 | 259.5 | $450 | $116,775.00 |
| Benjamin H. Richman (Partner) | 6 | 198.4 | $450 | $89,190.00 |
| Roger Perlstadt (Associate) | 12 | 42.8 | $515 | $22,042.00 |
| Courtney C. Booth (Associate) | 2 | 334.3 | $295 | $98,618.50 |
| Law Clerks | n/a | 74.8 | $215 | $16,082.00 |
| | | | | |
| Stefan L. Coleman (Partner) | 9 | 247.8 | $450 | $111,510.00 |
| TOTAL | | 1,668.3 | | $754,515.50 |

Each attorney's hourly rate correlates to their respective experience, and as noted above, is reasonable in the Bay Area legal market and has been approved by state and federal courts in similar settlements. (*Id.* ¶ 30); *Kulesa v. PC Cleaner, Inc.*, No. 12-cv-725, Dkt. 101 (C.D. Cal. Aug. 26, 2014); *Robles*, No. 10-cv-04846, Dkt. 105 (N.D. Cal. May 10, 2013). Additionally, the hourly rates used to calculate the lodestar figure are the same as those charged to Edelson PC's hourly-paying clients. (Balabanian Decl. ¶ 28.)[12]

---

[11]     Class Counsel have reviewed the hours expended by the attorneys and staff working on the Action and reduced any hours deemed duplicative or excessive. (Balabanian Decl. ¶ 29.)

[12]     Notwithstanding the hours already expended, Class Counsel must still prepare briefing in support of final approval, contend with any objections and otherwise communicate with Settlement Class Members about the settlement, and continue to supervise the administration of the Settlement—including the management of the on-going subpoena requests and communication

While Class Counsel's lodestar is presumptively reasonable, the analysis does not end there. Instead, the base lodestar may be adjusted upward by a multiplier based on a host of "reasonableness factors." *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).[13] Although many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable rate," *Hensley*, 461 U.S. at 434, the most important of these factors remains the benefit obtained for the Class. *In re Bluetooth*, 654 F.3d at 942 (the reasonableness of fees "is determined primarily by reference to the level of success achieved by the plaintiff"). A historical review of class action settlements shows that the Ninth Circuit has approved multipliers in the range of 0.6 to 19.6, with most (83%) falling between 1 and 4. *See Vizcaino*, 290 F.3d at 1051 n.6 and Appendix; *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of one to four are frequently awarded).

Multiplying Class Counsel's total lodestar of $754,515.50 by approximately 2.98 results in the agreed upon fee of $2.25 million (notwithstanding the expenses of $45,301.83 Class Counsel incurred in litigating this action). This multiplier falls within the range of historical approval and is on par with or lower than multipliers awarded in similar cases within the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051; *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-00463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee with 4.3 multiplier); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award with 6.85 multiplier). Moreover, courts in this District and in this Circuit have recently approved similar TCPA settlements with multipliers falling between 2.69 and 5. *See, e.g., Kramer*, No. 10-cv-02722-CW,

with Settlement Class Members who have questions about filing claims. *See supra*, Section II.E. Accordingly, Class Counsel have not attached their detailed billing records to the instant briefing, but instead, will provide to the Court complete records detailing all of their time and work through final approval of the Settlement prior to the Final Fairness Hearing.

[13] The Ninth Circuit, in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), identified twelve relevant factors to take into consideration: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Dkt. 148 (approving a fee award with a multiplier of 2.69); *In re Jiffy Lube*, No. 11-md-2261, Dkt. 97 (approving a fee award with a multiplier of 3.58); *Gutierrez v. Barclays Group*, No. 10-cv-01012 (S.D. Cal. May 12, 2010) (approving a fee award with a multiplier of 4.55); *Adams v. AllianceOne Receivables Mgmt., Inc. et al.*, No. 08-cv-00248, Dkt. 137 (S.D. Cal. Sept. 28, 2012) (approving a fee award with a multiplier of 3.81); *McClintic v. Lithia Motors, Inc.*, No. 11-cv-00859, Dkt. 51 (W.D Wash. Oct. 23, 2012) (approving a fee award with a multiplier of 3.1). Thus the lodestar cross-check supports awarding attorneys' fees of 25% of the Settlement Fund or $2.25 million.

## IV.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD.

To compensate class representatives for the work they do on behalf of class members, courts typically grant requests for incentive awards. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Indeed, incentive awards are typical in class actions and are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action and, sometimes, to recognize their willingness to act as a private attorney general." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012). The Court has discretion to approve any incentive award and should consider relevant factors, including:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursuing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (citing *Staton*, 327 F.3d at 977).

Here, Plaintiff Hopwood seeks an incentive award of just $1,500, which is entirely reasonable considering that his involvement was essential to the ultimate success of the settlement and when compared to incentive awards in similar settlements. (Balabanian Decl. ¶ 36.) Plaintiff devoted his own time and effort in pursuing his claims, both for himself and for the benefit of the Settlement Class. (*Id.* ¶ 37.) From the moment the case began, he exhibited a willingness to participate and assume the responsibilities of a class representative, namely to ensure the protection of and benefit to the Settlement Class as a whole rather than simply furthering his own

interests. (*Id.*) More specifically, Plaintiff provided Class Counsel with critical information about his personal experiences in receiving telephone calls from Defendants and his registration with the national Do Not Call Registry, which ended up being important facts in the litigation. (*Id.* ¶ 38.)

Additionally, awards greater than this amount are commonly approved in this District. *See Bayat v. Bank of the West*, No. 13-cv-2376, 2015 WL 174434, at *10 (N.D. Cal. Apr. 15, 2015) (awarding $2,000 incentive payment for each of two named plaintiffs in a TCPA class action); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390, 2014 WL 427338, at *13 (N.D. Cal. Aug. 29, 2014) (awarding $2,000 incentive payment for each of seven named plaintiffs in a TCPA class action); *Nwabueze v. AT&T, Inc.*, No. 09-cv-01529, 2013 WL 6199596, at *11-12 (N.D. Cal. Nov. 27, 2013) (awarding $5,000 incentive payment for each of two named plaintiffs in a TCPA class action). Accordingly, the requested incentive award of $1,500 for Plaintiff Hopwood as Class Representative can appropriately be approved.

## V. CONCLUSION

For the reasons stated above, Plaintiff William Hopwood respectfully requests that the Court find that the agreed-upon attorneys' fees, expenses, and incentive award are reasonable and award such further relief the Court deems reasonable and just.

Respectfully Submitted,

**WILLIAM HOPWOOD**, individually and on behalf of the Settlement Class,

Dated: July 20, 2015

By: /s/ Rafey S. Balabanian
One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1394 Divisadero Street
San Francisco, California 94115
Tel: 415.212.9300
Fax: 415.373.9435

Stefan Coleman (Admitted *Pro Hac Vice*)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S. Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427